Bradley T. Cave, P.C. (Wyo. State Bar # 5-2792)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82001
Telephone: 307.778.4200
bcave@hollandhart.com

Yan Ge (pending admission *pro hac vice*)
Michael Amberg (pending admission *pro hac vice*)
Wenfeng Su (pending admission *pro hac vice*)
KING & WOOD MALLESONS LLP
535 Middlefield Road, Suite 245
Menlo Park, California 94025
Telephone: (650) 858-1285
geyan@us.kwm.com
michael.amberg@us.kwm.com
wenfeng.su@us.kwm.com

Bing Cheng (pending admission *pro hac vice*)
18th Floor, East Tower, World Financial Center
No.1 Dongsanhuan Middle Road
Chaoyang District Beijing 100020 P. R. China
Telephone: +86 (10) 5878-5187
chengbing@cn.kwm.com

COUNSEL FOR PETITIONER
WEIHAI TEXTILE GROUP IMPORT & EXPORT CO. LTD.

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2021 JUN 15  PM 2: 04

MARGARET BOTKINS, CLERK
CHEYENNE

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

WEIHAI TEXTILE GROUP IMPORT &
EXPORT CO., LTD.,

      Petitioner,

v.

ERUPTION HOLDINGS INC.,

      Respondent.

Case No.  21- mc - 147 - S

### PETITION TO CONFIRM AN INTERNATIONAL ARBITRAL AWARD

Petitioner Weihai Textile Group Import & Export Co., Ltd. ("Weihai"), by its

undersigned counsel, pursuant to the Federal Arbitration Act, 9 U.S.C. § 207 (the "FAA"),

respectfully requests that this Court enter an order confirming the arbitral award (the "Award")

issued by a China International Economic and Trade Arbitration Commission ("CIETAC")

arbitral tribunal on January 15, 2021, in an arbitration between Weihai and Eruption Holdings Inc. ("Eruption Holdings"). A duly certified copy of the Award (and a certified translation thereof) is attached as Exhibit 1. A letter from CIETAC (and a certified translation thereof) verifying the Award is attached as Exhibit 2. In support of this Petition, Weihai alleges:

## NATURE OF THE PETITION

1.      Weihai files this Petition to confirm the Award pursuant to 9 U.S.C. § 207 and the U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention").

2.      The Award arises out of an arbitration concerning Weihai's efforts to enforce its rights, and to obtain payment from Eruption Holdings, in connection with six sales contracts signed on October 12, 2018, November 1, 2018, and December 11, 2018 by and between Weihai and Eruption Holdings (the "Sales Contracts"). As set forth in more detail below, the Award orders Eruption Holdings to pay Weihai: (i) $566,937.10 plus interest from April 2, 2019 at 1% per annum for outstanding payments for certain goods under the Sales Contracts; (ii) RMB 98,000 for its legal fees; (iii) RMB 9,000 for its notarization fees; and (iv) RMB 142,439 as reimbursement for arbitration fees that should have been paid by Eruption Holdings.

## THE PARTIES

3.      Petitioner Weihai is a Chinese company domiciled in the city of Weihai at No. 16, Shichang Avenue, Huancui District, Weihai Municipality, Shandong Province, China. Petitioner is a party to all six Sales Contracts that are the subject of the Award. True and accurate copies of the Sales Contracts are attached as Exhibits to Declaration of Ning Cong, attached hereto as Exhibit 3.

4.      Respondent Eruption Holdings is incorporated in the state of Wyoming and has its principal office at 1603 Capitol Ave., Suite 314-957, Cheyenne, Wyoming 82001.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this proceeding pursuant to 9 U.S.C. § 203, which provides that actions or proceedings falling under the New York Convention arise under the laws and treaties of the United States and are subject to the original jurisdiction of the district courts of the United States. The United States is a party to the New York Convention (codified at 9 U.S.C. §§ 201 et seq.), and the recognition and enforcement of the Award in this matter is governed by that Convention. *See* 9 U.S.C. § 207. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

6.      Upon service, this Court will have personal jurisdiction over Eruption Holdings pursuant to Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure because it is incorporated in Wyoming and is therefore subject to the jurisdiction of a court of general jurisdiction in Wyoming. *See also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] ... bases for general jurisdiction.'") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

7.      Venue in this Court is proper pursuant to 9 U.S.C. § 204 and 28 U.S.C § 1391(b).

## STATEMENT OF FACTS

8.      Weihai and Eruption Holdings formed a business relationship on August 1, 2018, when they entered into a sales contract numbered 300118ERUP01Y ("Contract 01Y") for the sale of 6,447 garments at a total price $57,213.60. Ex. 1 at 12. Contract 01Y is not one of the six outstanding Sales Contracts.

3

9. To test its ability to pay by wire, Eruption Holdings wired Weihai $300 on August 30, 2018. Ex. 1 at 12.

10. Through its agent, Feimann Group, Inc, Eruption Holdings wired Weihai $59,042.40 in three installments on the 13th, 21st, and 24th of December 2018. All three wires specified that they were payments for invoice ZNS3001180913ERUPY. Ex. 1 at 12.

11. On October 12, 2018, Weihai and Eruption Holdings entered into three sales contracts for the sale and purchase of garments. The contracts were numbered 300118ERUP02Y ("Contract 02Y), 300118ERUP03Y ("Contract 03Y"), and 300118ERUP04Y ("Contract 04Y"), and their values were $126,000, $103,320, and $118,080, respectively. On December 6, Eruption Holdings made changes to its order, and the parties revised Contract 03Y and Contract 04Y to reflect the changes. Ex. 1 at 13.

9. On November 11, 2018, Weihai and Eruption Holdings entered into two more contracts for the sale of garments, numbered 300118ERUP05Y ("Contract 05Y") and 300118ERUP06Y ("Contract 06Y"), at prices of $54,960 and $132,340, respectively. Ex. 1 at 13.

10. On December 11, 2018, Weihai and Eruption Holdings entered into the last contract for the sale of garments, numbered 300118ERUP07Y ("Contract 07Y"). The price of the goods sold under Contract 07Y was $33,480. Ex. 1 at 13. Contract 02Y, Contract 03Y, Contract 04Y, Contract 05Y, Contract 06Y, and Contract 07Y are the Sales Contracts that led to the arbitration.

11. Apart from differing in terms of the quantities and styles of garments sold, the Sales Contracts contain identical provisions: (i) designating Los Angeles as the destination port for the goods; (ii) requiring Eruption Holdings to pay within 60 days after shipment by

4

telegraphic transfer; (iii) allowing a 3% variance, over or under, between the quantity of

garments shipped from the number agreed in the contracts; (iv) specifying that the only

documents Weihai was to provide with respect to each contract were a commercial invoice, a

packing list, and, depending on the method of shipping, either a bill of lading, an airway bill, or a

cargo receipt; and (v) requiring Eruption Holdings to raise any objections to the quality of the

garments within 20 days of their arrival in Los Angeles and any objections to the quantity within

15 days. *See* Exs. 1-6 to Exhibit 3.

12.    The Sales Contracts also contained the following arbitration clause:

> Any or all disputes arising from or in connection with the performance of the Contract shall be settled through negotiation by both parties, failing which they shall be submitted for arbitration. The arbitration shall tack place in China and shall be conducted by the China International Economic and Trade Arbitration Commission in accordance with the provisional rules of procedures of the said commission. The arbitration award shall be final and binding upon both Buyer and Seller. Unless otherwise awarded by the said arbitration commission, the arbitration fees shall be borne by the losing party. The Contract and all disputes concerning the contract shall be governed by laws of the People's Republic of China.

Exs. 1-6 to Exhibit 3.

13.    Weihai performed its obligations under the Sales Contracts by delivering the

goods to a freight forwarder designated by Eruption Holdings over the course of a month, from

December 31, 2018 to January 31, 2019. The total value of the garments delivered was

$577,237.10, which was greater than the total value of $568,180 provided in the contracts but

within the 3% variance allowed. Ex. 1 at 14-15.

14.    By February 20, 2019, Weihai had emailed Eruption Holdings all the invoices and

packing lists for the goods delivered. Ex. 1 at 15.

15.     On June 1, 2019, Feimann Group, Inc wired $10,000 to Weihai. The description of the wiring identified itself as payment for invoice ZNS3001190109ERUPY, which was an invoice issued under Contract 06Y. Ex. 1 at 11.

16.     Upon receiving the goods, Eruption Holdings did not raise any objections as to their quantity or quality within the objection period but requested extensions to pay when pressed by Weihai for payment. On June 13, 2019, Eruption Holdings stated in an email, "due to our products failed to meet with the requirement and regulation by CSPC (Consumer Safety Product Commission). We have to [send] ALL the merchandise we ordered from you to a local factory to fix the problems to comply with the CSPC regulations prior to any sales to any store in the U.S." Eruption Holdings provided nothing in support of the alleged defect. Ex. 1 at 16-17.

17.     On April 17, 2020, after two years of pressing Eruption Holdings for payment to no avail, Weihai initiated a CIETAC arbitration proceeding pursuant to the Independent Arbitration Clause in the Sales Contracts to seek payment on the goods sold. On May 6, 2020, CIETAC sent by express mail the arbitration notice, arbitration rules, and list of arbitrators to both parties at their respective addresses provided in the application for arbitration. CIETAC also sent Eruption Holdings the Application for Arbitration submitted by Weihai along with the supporting materials annexed to it. Ex. 1 at 4.

18.     The address of Eruption Holdings provided in the Application for Arbitration is 1603 Capitol Ave., Suite 314-957 Cheyenne, WY 82001, US, which is the same as that provided in the Sales Contracts. Exs. 1-6 to Exhibit 3.

19.     An arbitral tribunal was formed on September 24, 2020 to arbitrate the case. Ex. 1 at 4.

20.    On November 11, 2020, the tribunal held a hearing at which Weihai appeared through its arbitration representative, but Eruption Holdings failed to appear. At the hearing, Weihai argued its position and responded to questions from the tribunal. Ex. 1 at 4-5.

21.    On January 15, 2021, the tribunal issued the Award. Ex. 1 at 20. The tribunal found that Eruption Holdings' three installment payments in December 2018 totaling $59,042.40 were not payments under the Sales Contracts. Rather, because invoice ZNS3001180913ERUPY was not one of the invoices issued under the Sales Contract and because the payments were made before the time of payment provided in the Sales Contract, the tribunal found that three installment payments were payments under Contract 01Y. Ex. 1 at 17. The tribunal determined that Eruption Holdings had only made two payments totaling $10,300 under the Sales Contracts: (1) $300 wired on August 30, 2018 for testing; and (2) $10,000 wired on June 1, 2019 by Feimann Group, Inc under Contract 06Y. Ex. 1 at 17. Accordingly, after subtracting the amount paid by Eruption Holdings ($10,300) from the total value of the garments delivered under the Sales Contracts ($577,237.10), the tribunal ordered Eruption Holdings to pay the $566,937.10 still outstanding under the Sales Contracts. Ex. 1 at 17.

## ARGUMENT

22.    The confirmation of a foreign arbitral award is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), as implemented by the FAA, 9 U.S.C. § 201 et seq. The rules set forth in the New York Convention and the FAA result from the strong congressional policy favoring the resolution of disputes through arbitration. Weihai has satisfied all the applicable requirements. Accordingly, it respectfully requests that the Court confirm the Award and enter judgment accordingly.

7

23.     Under Article I of the New York Convention and 9 U.S.C. § 202, the New York

Convention governs the confirmation of an arbitral award when, as here, the arbitral award is

made in a country other than the one where enforcement is sought. New York Convention art.

I(1). The New York Convention also applies when the award is not considered a "domestic"

award in the country where its enforcement is sought. *Id.*; *Goldgroup Res., Inc. v. DynaResource*

*de Mexico, S.A. de C.V.*, 994 F.3d 1181, 1188 n.5 (10th Cir. 2021) ("a nondomestic award is one

that results from a dispute involving property located outside the United States or principally

involving conduct and contract performance outside the United States"); *see also* 9 U.S.C. § 202;

*Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 959 (10th Cir. 1992) (providing

that Article II of the New York Convention mandates recognition and enforcement of a written

commercial arbitral agreement involving a party that is not an American citizen) *(citing Ledee v.*

*Ceramiche Ragno*, 684 F.2d 184, 186-87 (1st Cir. 1982)); *Filanto, S.p.A. v. Chilewich Int'l*

*Corp.*, 789 F. Supp. 1229, 1237 (S.D.N.Y. 1992) (finding one criterion of the New York

Convention clearly satisfied where one of the parties was an Italian corporation); *Minister of*

*Defense of the Islamic Republic v. Gould, Inc.*, 887 F.2d 1357, 1362 (9th Cir. 1989) (finding that

the award at issue was "obviously not domestic in nature because Iran [was] one of the parties to

the agreement"); *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983) (holding

that the New York Convention governs awards "involving parties domiciled or having their

principal place of business outside the enforcing jurisdiction").

24.     Additionally, the New York Convention only applies to awards that arise out of

relationships considered "commercial" in nature and only to awards made in countries that are

parties to the New York Convention. New York Convention, art. I(3). The Award at issue was

the final result of a commercial contract dispute. *See* Ex. 1. Moreover, Weihai, a Chinese

company, submits this Petition to confirm a Chinese arbitral award entered against Eruption

Holdings, a United States company. Both China and the United States are signatories to the New

York Convention, so it therefore applies to the Award.

25.     "Any party to the arbitration may apply for an order confirming the award as

against any other party to the arbitration." 9 U.S.C. § 207. Federal district courts possess

jurisdiction to confirm such awards falling under the New York Convention, "within three years

after" they are made. *Id.* CIETAC made its ruling on January 15, 2021. Weihai is well within the

period of limitations to petition the Court for enforcement of the Award.

26.     The law governing the confirmation of foreign arbitral awards is clear and stems

from the strong congressional policy favoring the resolution of disputes through arbitration. *See*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)

("'[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy

favoring arbitration. … The Arbitration Act establishes that, as a matter of federal law, any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration … .'")

(quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983)). Federal

courts afford maximum deference to the arbitrators' decisions because "the standard of review is

among the narrowest known to the law," which makes an arbitrator's erroneous interpretations or

applications of law non-reversible. *CEEG (Shanghai) Solar Sci. & Tech. Co., Ltd v. LUMOS*

*LLC*, 829 F.3d 1201, 1206 (10th Cir. 2016) (internal quotations omitted). This body of law

leaves no doubt that the Court should grant Weihai's Petition and enter judgment confirming the

Award, "unless it finds one of the grounds for refusal or deferral of recognition or enforcement

of the award specified in the said Convention." *Id.* (citing 9 U.S.C. § 207).

27.    A petition to enforce an award is an expedited proceeding treated as a motion under the Federal rules. *See* 9 U.S.C. § 6 (petition to enforce non-New York Convention award treated as motion); *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 111 (2d Cir. 2016) ("The confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." (alterations and internal quotation marks omitted)); *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1287 (10th Cir. 2020) ("A confirmation action under the New York Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm.") (internal citation omitted).

28.    A court is required to confirm the award unless it finds one of the grounds for refusal or deferral or recognition or enforcement of the award specified in the New York Convention. *Compania de Inversiones Mercantiles, S.A*, 970 F.3d at 1286. The arbitrator's decision should be enforced if it draws its essence from the parties' agreements and is not merely the arbitrator's own brand of industrial justice. *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). The Respondent bears the burden of proving that the Court should refuse enforcement. *CEEG (Shanghai) Solar Sci. & Tech. Co., Ltd*, 829 F.3d at 1206.

29.    Under Article IV of the New York Convention, "[t]o obtain the recognition and enforcement" of an arbitral award, the petitioning party must simply provide "[t]he duly authenticated original award or a duly certified copy thereof," and "[t]he original agreement" or a duly certified copy thereof. *See* New York Convention, art. IV(1); *Estate. of Ke Zhengguang v. Yu Stephany*, No. 18-3546-PWG, 2020 WL 886146, at *9 (D. Md. Feb. 24, 2020) (finding

10

tribunal verified copy of arbitral award satisfied New York Convention requirement); *Qingdao Hisense Imp. & Exp. Co. v. Progressive Telecom, Inc.*, No. CV M-07-297, 2008 WL 11394401, at *2 (S.D. Tex. June 20, 2008) (accepting copy of arbitration agreement authenticated by Vice General Manager of plaintiff); *Linsen Int'l Ltd. v. Humpuss Sea Transp. PTE LTD*, No. 09-CV-10393-GBD, 2011 WL 1795813, at *2 (S.D.N.Y. Apr. 29, 2011) (finding attorney-verified copy of agreement satisfied New York Convention requirement); *Arbitration between Overseas Cosmos, Inc. & NR Vessel Corp.*, No. 97-CV-5898-DC, 1997 WL 757041, at *5 (S.D.N.Y. Dec. 8, 1997) (same).

30.    Here, Weihai has provided the required certified copies of the Award and the underlying arbitration agreement, Exhibit 1 and Exhibits 1-6 to Declaration of Ning Cong (Exhibit 3), and Eruption Holdings cannot demonstrate that any ground for refusing to enforce the Award applies. Accordingly, the Court should enter judgment confirming the Award pursuant to the New York Convention and the FAA.

## REQUEST FOR RELIEF

WHEREFORE, Weihai respectfully requests that this Court:

(a)    enter an order pursuant to 9 U.S.C. § 207 and Article III of the New York Convention confirming, recognizing, and enforcing the Award against Eruption Holdings;

(b)    enter judgment in favor of Weihai and against Eruption Holdings in the amount of $566,937.10, plus accumulated interest at 1% per annum accruing from April 2, 2019;

11

(c)     enter judgment in favor of Weihai and against Eruption Holdings for the costs ordered in the Award, amounting to RMB 249,439 (RMB 98,000 + RMB 9,000 + RMB 142,439).

(d)     award Weihai its costs incurred in bringing this proceeding, including its reasonable attorneys' fees;

(e)     enter an order retaining jurisdiction of this Court over the matter for any proceedings as may be necessary to enforce the Award and any further awards or judgments, which may be obtained by Weihai against Eruption Holdings; and

(f)     grant any other relief that this Court may deem necessary and proper.

Dated: June 15, 2021.

Respectfully Submitted,

Bradley T. Cave, P.C. (Wyo. State Bar # 5-2792)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82001
Telephone: 307.778.4200
bcave@hollandhart.com

Yan Ge (pending admission *pro hac vice*)
Michael Amberg (pending admission *pro hac vice*)
Wenfeng Su (pending admission *pro hac vice*)
KING & WOOD MALLESONS LLP
535 Middlefield Road, Suite 245
Menlo Park, California 94025
Telephone: (650) 858-1285
geyan@us.kwm.com
michael.amberg@us.kwm.com
wenfeng.su@us.kwm.com

Bing Cheng (pending admission *pro hac vice*)
18th Floor, East Tower, World Financial Center
No.1 Dongsanhuan Middle Road
Chaoyang District Beijing 100020 P. R. China
Telephone: +86 (10) 5878-5187
chengbing@cn.kwm.com

COUNSEL FOR PETITIONER
WEIHAI TEXTILE GROUP IMPORT & EXPORT
CO. LTD.

16889882_v1

13

Exhibit 1



# 北京思必锐®翻译有限责任公司

## Beijing Spirit Translation Co., Ltd.

## **Declaration**
### 声明

We, Beijing Spirit Translation Co., Ltd., hereby declare the following:

北京思必锐翻译有限责任公司，特此证明：

1.  We are a legally established English translation professional service company and deemed to be qualified to handle the translation service from Chinese to English;

    思必锐翻译公司是合法成立的专业英语翻译服务公司，有资格进行中译英翻译服务；

2.  Files in the attached files are the product of our translation service;

    附件中确为我公司的翻译作品；

3.  All the translation done by our company is the true, accurate and correct translation of the original; but the source language shall prevail.

    我公司的所有翻译作品为原件的真实、准确和正确的译文；但以源语言内容为准；

4.  We certify that the above-mentioned declaration is true and correct to our best knowledge.

    特此证明上述声明内容真实准确。

Name of company (seal): Beijing Spirit Translation Co., Ltd.

公司名称（章）：北京思必锐翻译有限责任公司

Name of principal (signature):

负责人（签字）：刘丽晔

Date:

日期： 2021. 1. 8

地址： 北京市朝阳区东三环中路 39 号建外 SOHO 七号楼 1703 室，100022

Address: Room 1703, Tower 7, Jianwai SOHO, No. 39, East 3rd Ring Middle Road, District Chaoyang, Beijing, China, 100022

电话： (010) 58696855/56/57/06

Tel: (010) 58696855/56/57/06

传真： (010) 58696700

Fax: (010) 58696700

**www.bjspirit.com**



# Arbitral Award





**China International Economic and Trade Arbitration Commission**

3

## China International Economic and Trade Arbitration Commission

### Arbitral Award

Claimant: Weihai Textile Group Import & Export Co., Ltd.

Address: No. 16, Shichang Avenue, Huancui District, Weihai City, Shandong Province, P.R. China

Arbitration Representatives: Wang Liwei and Chen Ruizhi of Shandong Oriental Future Law Firm

Respondent: Eruption Holdings Inc.

Address: 1603 Capital Ave., Suite 314-957, Cheyenne, WY 82001, US



Beijing

January 15, 2021

**Arbitral Award**

**[2021] China Mao Zhong Jing Cai Zi No. 0151**

In accordance with the arbitration clauses of the six Sales Contracts ("**Sales Contract**") numbered 300118ERUP02Y, 300118ERUP03Y, 300118ERUP04Y, 300118ERUP05Y, 300118ERUP06Y and 300118ERUP07Y (FMGSP2019F-DS) signed by and between Weihai Textile Group Import & Export Co., Ltd. ("**Claimant**") and Eruption Holdings Inc. ("**Respondent**"), as well as a written application for arbitration submitted by the Claimant on April 17, 2020, China International Economic and Trade Arbitration Commission ("**CIETAC**" or "**the Arbitration Commission**") accepted this arbitral dispute case ("**the Case**") regarding the six Sales Contracts. The case number is G20200765.

The *China International Economic and Trade Arbitration Commission (CIETAC) Arbitration Rules* effective as from January 1, 2015 ("**the Arbitration Rules**") apply to the arbitration procedure of the Case. Pursuant to Article 56 of the Arbitration Rules, the Case is subject to the Summary Procedure prescribed by Chapter IV of the Arbitration Rules, as the amount in dispute does not exceed RMB 5 million, and the rules in other chapters will apply to the matters that cannot be covered by Chapter IV.

On May 6, 2020, the arbitration court of CIETAC ("**the Arbitration Court**") sent an arbitration notice, a copy of the Arbitration Rules and Panel of Arbitrators to the Claimant and the Respondent separately via express mail service. Additionally, the Arbitration Court also sent the arbitration application and the attached evidence submitted by the Claimant to the Respondent. It has been confirmed that the said mail sent to the Respondent was delivered on July 14, 2020.

As the Claimant and the Respondent failed to jointly nominate or jointly entrust the chairman of the Arbitration Commission to appoint a sole arbitrator within the specified period, the chairman of the Arbitration Commission appointed Ms. Wei Ziping as the sole arbitrator for the Case according to the Arbitration Rules. After signing a declaration to accept the appointment, Ms. Wei Ziping organized an Arbitral Tribunal ("**the Arbitral Tribunal**") on September 24, 2020 to examine the Case. After consulting the Arbitration Court, the Arbitral Tribunal decided to hold a hearing in Beijing on November 11, 2020 to hear the merits of the Case.

The Arbitration Court sent a notice of formation of the Arbitral Tribunal, the declaration signed by the arbitrator and a notice of hearing to the Claimant and the Respondent separately via express mail service on September 24, 2020. It has been confirmed that the said documents sent to the Respondent were delivered on September 30, 2020.

On November 11, 2020, the Arbitral Tribunal held the hearing in Beijing as scheduled. An arbitration representative of the Claimant attended the hearing on its behalf. Despite effective notification, the Respondent neither attended the hearing nor showed sufficient cause for its absence. According to Section 2, Article 39 of the Arbitration Rules, the Arbitral Tribunal

proceeded with the arbitration without the participation of the Respondent. During the hearing, the Claimant stated its claims and supporting facts and reasons, produced evidence and gave explanations, presented the originals of the relevant evidence, and answered questions from the Arbitral Tribunal.

On November 20, 2020, the Claimant submitted a *List of Documents Submitted by the Claimant* and its attachments.

On November 30, 2020, the Arbitration Court forwarded the above documents to the Respondent and sent a written letter informing the Respondent of the hearing and notifying the Respondent that any of its opinions on or objections to the procedural or substantive issues of the Case, or any justified cause for a subsequent hearing, shall be submitted within a set period. It has been confirmed that the above mail sent to the Respondent was delivered on December 7, 2020. However, the Respondent did not submit any opinions, objections, or documents within the set period.

Due to the needs of the arbitration proceeding, upon the application of the Arbitral Tribunal, the president of the Arbitration Court agreed and decided to extend the period for rendering the award in the Case until January 25, 2021.

All arbitration documents in relation to the Case have been duly served to the Claimant and the Respondent according to Article 8 of the Arbitration Rules. During the arbitration process, the Respondent did not submit any written opinion or evidentiary material.

The Case has already been heard. The Arbitral Tribunal rendered this default award based on the written documents provided by the Claimant, the facts determined during the hearing, the contracts, and the relevant rules.

The facts of the Case, the opinions of the Arbitral Tribunal and the arbitral award are separately stated as below.

## I. Facts of the Case

(I) Claims, supporting facts and grounds

The arbitration claims submitted by the Claimant in the Case are as follows:

1. The Respondent shall make the payment for goods amounting to USD 566,937.10 to the Claimant.

2. The Respondent shall compensate the Claimant for the loss in interest borne from April 2, 2019 to the date that the Respondent pays off the entire cost of goods, of which the loss in interest from April 2, 2019 to August 19, 2019 calculated at the annual loan interest rate of the People's Bank of China for the same period of 4.35% is USD 9,459.31; the loss in interest from August 20, 2019 to the date when the Respondent pays off the entire cost of goods, shall be calculated based on the principal of outstanding payments for goods with the loan prime rate published by the National Interbank Funding Center.

3. The Respondent shall be liable for Claimant's attorney's fees, which amount to RMB 98,000.

4. The Respondent shall be liable for Claimant's notarization fee, which amounts to RMB 9,000.

5. The Respondent shall bear the arbitration fees of the Case.

Background of the Transaction:

On October 12, 2018, the Claimant and the Respondent signed the Sales Contracts respectively numbered 300118ERUP2Y ("**02Y Contract**"), 300118ERUP3Y ("**03Y Contract**") and 300118ERUP4Y ("**04Y Contract**"), and agreed that the Respondent would purchase garments from the Claimant for USD 126,000, USD 103,320 and USD 118,080; the payment would be made via telegraphic transfer within 60 days after shipment, and the destination port was Los Angeles. On December 6, 2018, as the Respondent changed the garments' style numbers, trademarks and colors, the parties amended 03Y Contract and 04Y Contract accordingly.

On November 11, 2018, the Claimant and the Respondent signed the Sales Contracts numbered 300118ERUP5Y ("**05Y Contract**") and 300118ERUP6Y ("**06Y Contract**"), pursuant to which the Respondent would purchase garments from the Claimant for USD 54,960 and USD 132,340, the payment would be made via telegraphic transfer within 60 days after shipment, and the destination port was Los Angeles.

On December 11, 2018, the Claimant and the Respondent signed the Sales Contract numbered 300118ERUP7Y ("**07Y Contract**"), pursuant to which the Respondent would purchase garments from the Claimant for USD 33,480, the payment would be made by telegraphic transfer within 60 days after shipment, and the destination port was Los Angeles.

The shipping status of the garments was as follows:

1. On December 31, 2018, the Claimant delivered all 17,176 garments under the 03Y Contract and a portion of the garments under the 04Y Contract, which amounted to 17,089 units, to the carrier designated by the Respondent. Including the 70 sample units that had been delivered to the Respondent before then, the value of the delivered goods amounted to a total of USD 211,144.50.

2. On January 14, 2019, the Claimant delivered a portion of the garments under the 06Y Contract, which amounted to 8,320 units, to the carrier designated by the Respondent. Including the 20 sample units that had been delivered to the Respondent before then, the value of the delivered goods amounted to a total of USD 50,040.00.

3. On January 15, 2019, the Claimant delivered the remaining 2,456 garments under the 04Y Contract to the carrier designated by the Respondent. Including the 5 sample units that had been delivered to the Respondent before then, the value of the delivered goods amounted to a total of USD 15,139.70.

4. On January 24, 2019, the Claimant delivered all 7,360 garments under the 05Y contract, a portion of the garments under the 06Y Contract, which amounted to 9,904 units, and all 4,928 garments under the 07Y Contract to the carrier designated by the Respondent. Including the 54 sample units that had been delivered to the Respondent before then, the value of the delivered goods amounted to a total of USD 175,068.30.

5. On January 31, 2019, the Claimant delivered all 11,952 garments under the 02Y Contract to

3

the carrier designated by the Respondent. Including the 30 sample units that had been delivered to the Respondent before then, the value of the delivered goods amounted to a total of USD 125,844.60.

Delivery of relevant documents:

1. On January 8, 2019, the Claimant sent one packing list (packing 8,320 units, 260 boxes and 20 samples) and one commercial invoice (No. ZNS3001190109ERUPY, 8,340 units, payment of USD 50,040.00) under the 06Y Contract to the Respondent via email.

2. On January 19, 2019, the Claimant sent three packing lists and three commercial invoices under the 05Y Contract, the 06Y Contract and the 07Y Contract to the Respondent via email. The details are as follows: the packing list (packing 7,360 units, 231 boxes and 18 samples), the commercial invoice (No. ZNS3001190122ERUPY-1, 7,378 units, payment of USD 56,294.20); the packing list (packing 9,904 units, 310 boxes and 24 samples), the commercial invoice (No. ZNS3001190122ERUPY-2, 9,928 units, payment of USD 84,317.60); the packing list (packing 4,928 units, 156 boxes and 12 samples), the commercial invoice (No. ZNS3001190122ERUPY-3, 4,940 units, payment of USD 34,456.50)

3. On January 28, 2019, the Claimant sent one packing list (packing 11,952 units) and one commercial invoice (No. ZNS3001190128ERUPY, 11,982 units, payment of USD 125,844.60) under the 02Y Contract to the Respondent via email.

4. On February 20, 2019, the Claimant sent three packing lists, three commercial invoices and two bills of lading under the 03Y Contract and the 04Y Contract to the Respondent via email. The details are as follows: the packing list under the 04Y Contract (packing 2,456 units, 5 samples), the commercial invoice (No. ZNS3001181231ERUPY, 2,461 units, payment of USD 15,139.70); the packing list under the 04Y Contract (packing 17,089 units, 721 boxes and 35 samples), the commercial invoice (No. ZNS3001181231ERUPY, 17,124 units, payment of USD 105,312.60); the packing list under the 03Y Contract (packing 17,176 units, 725 boxes and 35 samples), the commercial invoice (No. ZNS3001181231ERUPY, 17,211 units, payment of USD 105,831.90); one bill of lading numbered XME18120331 and another one numbered XME19010193.

The bills of lading for the above garments were all telex release bills of lading.

The Respondent had received all garments mentioned above, the value of which amounts to USD 577,237.10, but failed to pay the purchase price as agreed in the contracts. For this reason, the Claimant has urged the Respondent to pay multiple times, yet the Respondent delayed the payment for various reasons. After deducting the USD 10,300 already paid by the Respondent, the remaining payment has not yet been paid. The Respondent's failure to perform constitutes a material breach of the contracts, which has seriously infringed upon the legitimate rights and interests of the Claimant.

### (II) Claimant's post-hearing submission

First, the explanation with regard to the Claimant's claim for sample payment:

1. The Claimant and the Respondent have reached an agreement on working out the payment for samples, and thus the Claimant has contractual grounds for such payment.

Section (6) of the 02Y Contract, which is the sample approval clause, stipulates that "[the] seller need[s] to provide fit samples 2 pcs per color in size 7 to [the] buyer within 10 days after both sides signed in the contract; and to provide TOP samples 5 pcs per color in size 7 to [the] buyer within 30 days after both sides signed in the contract. All samples are provided for payment. This part will be paid together with the bulk goods."[1]

Section (6) of the 03Y Contract and the 04Y Contract, which is the sample approval clause, stipulates that "[the] seller need[s] to provide fit samples per style per col[or] 2 pcs in size 7 to [the] buyer within 10 days after both sides signed in the contract; and to provide TOP sample per style per col[or] 5 pcs in size 7 to [the] buyer within 30 days after both sides signed in the contract. All samples are provided for payment. This part will be paid together with the bulk goods."[2]

Section (6) of the 05Y Contract, the 06Y Contract and the 07Y Contract, which is the sample approval clause, stipulates that "[the] seller need[s] to provide fit samples per style per col[or] 2 pcs in 10 size to [the] buyer within 10 days after both sides signed in the contract; and to provide TOP samples per style per col[or] 5 pcs in 10 size to [the] buyer within 30 days after both sides signed in the contract. All samples are provided for payment. This part will be paid together with the bulk goods."[3]

According to the above contracts, the number of samples required to be delivered under the six Sales Contracts is as follows:

Under the 02Y Contract, as there are three colors (medium blue, dark blue and light blue), the number of samples needs to be delivered is calculated as $(2+5)\times3=21$.

Under the 03Y Contract, as there are three colors (medium blue, dark blue and black) and seven styles, the number of samples needs to be delivered is calculated as $(2+5)\times7=49$.

Under the 04Y Contract, as there are four colors (light blue, medium blue, dark blue and medium black) and eight styles, the number of samples needs to be delivered is calculated as $(2+5)\times8=56$.

Under the 05Y Contract, as there are three colors (white, black and grey) and three styles, the number of samples needs to be delivered is calculated as $(2+5)\times3=21$.

Under the 06Y Contract, as there are seven colors (pink, red, coral, yellow, white, black and grey), the number of samples needs to be delivered is calculated as $(2+5)\times7=49$.

Under the 07Y Contract, as there are three colors (white, black and grey) and six styles, the number of samples needs to be delivered is calculated as $(2+5)\times6=42$.

In sum, a total of 238 samples have been agreed upon. The Claimant delivered 179 samples, which did not exceed the contractual agreement.

---

[1]Translator's Note: The contracts were prepared in Chinese and English. The arbitrator quoted the Chinese in the original Chinese award. Here, the translator is quoting the language of the original English contract while adding minor grammar fixes.

[2]See supra n.1.

[3]See supra n.1.

2. The evidence of mails and attachments submitted by the Claimant establish that the Claimant has indeed delivered the samples to the Respondent. The details are as follows.

   (1) On December 28, 2018, Claimant's employee, Yang Tao (Elain), sent an email with the subject "2018-1-27 packing list. pdf" to Francis, one of Respondent's employees. Yang Tao informed that "The balance of all styles top samples have sent out to you today." The two packing lists attached to the email both were marked, at the bottom left of the pages, "PLS NOTED: TOP SAMPLES EVERY STYLE JUNIORS STYLE: SIZE 7/2PCS; X-LARGE STYLE: SIZE 14/2PCS&SIZE 18/1PCS TOTAL 35PCS", the text was highlighted in gray.

   On December 29, 2018, at 12:58, Yang Tao informed Francis of the tracking number (KAS 00008103359) of the delivered samples.

   The samples mentioned above are under the 03Y Contract and the 04Y Contract.

   (2) On January 8, 2019, Yang Tao (Elain), a Claimant's employee, sent an email to Francis, a Respondent's employee, with the subject "RE: RE: RE: about 300118EURP04Y style NO.FMGFSP1917J/FSP1917J&FMGFSP1917X/FSP1917X good shipmentur" (see on page 144). Yang Tao informed that "We also sent the TOP samples FMGFSP1917J/FSP1917J&FMGFSP1917X/FSP1917X/BSP19101/BSP 19102/BSP19105/BSP19106/BSP19108/BSP19110/BSP19113 to Annie." According to the style numbers, the samples mentioned above are under the 02Y Contract and the 04Y Contract.

   For delivery and communication of the samples under the 05Y Contract, the 06Y Contract and the 07Y Contract, the relevant written documents could not be found, as the business personnel of the Claimant had been dismissed.

   (3) The Claimant has indicated and informed the Respondent of the details of the samples under the six Sales Contracts involved in the Case, i.e., the style numbers of the samples, the quantity of samples for each style and the quantity of all the provided samples, by highlighting the packing lists, and has accurately specified the payment for goods which also covers the samples on the issued commercial invoices. After receiving the packing lists and the commercial invoices, the Respondent never raised any objections. The Claimant submitted the said packing lists and the commercial invoices as evidence to the Arbitral Tribunal and the Respondent, and the Respondent again did not raise any objections.

Second, although there were errors lying in the overseas shipper and the contract number in the customs declaration form ending with 1844 (evidence P64), it does not affect the statement of fact that the Claimant has delivered the said batch of garments under the contracts involved in the Case to the Respondent.

The customs declaration form ending with 1844 (evidence P64) was used when the Claimant delivered its first batch of garments to the Respondent to perform the six Sales Contracts signed with the Respondent in the Case. The overseas shipper and the contract number in the customs declaration form were incorrectly filled out by the customs clearance agency. In order not to affect the delivery time of the garments, the Claimant did not insist on requiring the customs clearance

agency to correct the mistakes.

The Claimant is not able to confirm whether there were any written communication documents about these errors, as the then-business operator Yang Tao (Elain) has been dismissed.

Despite the said errors in the customs declaration form, the fact that the Claimant has already delivered the said batches of garments under the contracts involved in the case to the Respondent can still be established.

The Claimant delivered the garments to the Respondent in five batches and had five customs declaration forms correspondingly. Based on the packing list, the commercial invoice, and the bill of lading of the first batch of garments, the critical information of this batch has been summarized as follows:

| No. | Contract Number | Number of Boxes | Number of Garments | Gross Weight (kg) | Net Weight (kg) |
|---|---|---|---|---|---|
| 1 | 300118ERUP03Y | 725 | 17176 | 8949.5 | 8224.5 |
| 2 | 300118ERUP04Y | 721 | 17089 | 8980.5 | 8259.5 |
| Total | | 1446 | 34265 | 17930 | 16484 |

The number of boxes, number of garments, gross weight and net weight listed in the customs declaration form ending with 1844 (evidence P64) are exactly the same as the numbers given in the packing list, the commercial invoice, and the bill of lading. In addition, the departure port and product name of the garments are also consistent.

Additionally, combined with other evidential materials submitted by the Claimant, it would be sufficient to confirm that the batch of garments has already been delivered. Details are as follows:

1. The email exchange (see P150-152) with the subject 300118ERUP03Y&300118ERUP04Y/Yantian to Long Breach C/ERUPTION HOLDINGS INC. 1*45HQ XME18120331 between the employee of the Claimant and the business personnel of the carrier, Shenzhen Shining Ocean International Logistics Co., Ltd. which was designated by the Respondent, discussing the shipment and matters regarding the bill of lading, shows that the batch of garments has indeed been delivered to the carrier designated by the Respondent, and the consignee was the Respondent.

2. On January 1, 2019, at 8:59 am, the Claimant's employee, Yang Tao, sent an email to Francis, the Respondent's employee, with the subject "Re: Re: about 300118ERUP04Y style NO.FMGFSP1917J/FSP1917J&FMGFSP1917X/FSP1917X goods shipment" (see P144), in which the Claimant required the Respondent to arrange the transportation for the balance of last shipment after the first batch had been delivered under the 04Y Contract.

On January 3, 2019, at 03:55:54, Francis replied "Annie of Feimann Group will contact you to make the arrangement" (see P144).

The above two emails can prove that the Claimant had shipped the first batch of garments under the 04Y Contract to the Respondent before the two emails were sent, and the Respondent

admitted such facts.

3. The Claimant sent the packing lists, the commercial invoices of all the five batches to the Respondent, and the Respondent never raised any objections.

4. On April 12, 2019, at 2:22 pm, the Claimant urged the Respondent for the payment via email. The Respondent replied "I am sorry for not being able to make the payments for goods of 03Y04Y as scheduled" on April 16, 2019, at 9:20:29 (see P197). The above email can prove that the Respondent admits its receipt of the garments under the 03Y Contract and the 04Y Contract, and the corresponding payments for the garments are delayed.

Third, the Respondent failed to pay the Claimant for the garments in accordance with the contracts, which harmed the Claimant's legitimate rights and interests, for which the Respondent shall be held accountable for its breach of contract.

The Claimant delivered a total of USD 577,237.10 worth of garments to the Respondent, but the Respondent only paid USD 10,000 on June 10, 2019 after the receipt of the mentioned garments. Deducting the USD 300 that the Respondent paid for testing its account during the first business transaction between the two parties, the Respondent still owes the Claimant USD 566,937.10 for the payment. The failure of the Respondent to pay severely infringes upon the Claimant's legitimate rights and interests and results in a financial loss of the Claimant due to overdue payment. Thus, the Claimant has the right to ask the Respondent to assume the liability for breach of contract.

To make it easier to calculate, the Claimant chooses April 2, 2019 (the 61st day after the last shipment on January 31, 2019 by the Claimant) as the starting day for the loss of all payments and calculates the interest loss according to the annual loan interest rate of the People's Bank of China at 4.35% or the loan prime rate published by the National Interbank Funding Center, which is lawfully recognized.

In addition, as the Respondent failed to pay the Claimant for the garments as agreed, the Claimant applied for arbitration and incurred attorney fees of RMB 98,000 and notarization fees of RMB 9,000. The costs mentioned above are all caused by the breach of contract of the Respondent, and thus the Respondent should compensate the Claimant for all of these expenses.

## II. Opinion of the Arbitral Tribunal

In the Case, upon effective service, the Respondent did not attend the hearing without justifiable reasons, submit any Statement of Defense or evidential materials to the Arbitral Tribunal, or provide any examination opinions on the evidentiary documents submitted by the Claimant. The Arbitral Tribunal finds that the Respondent has waived its rights of defense, producing evidence, arguments and examination, and shall bear the adverse legal consequences that arise as a result.

### (I) Evidence of the Claimant

The Arbitral Tribunal notes that the evidence submitted by the Claimant for the Case are as follows:

1. The Notarial Certificate ([2020] Lu Weihai Huancui Zheng Min Zi No. 120) issued by Shandong Weihai Huancui Notary Office ("the Notary Office"), and the notarized documents include the six Sales Contracts in the Case, packing lists, commercial invoices, bills of lading,

customs declaration forms, and e-mail exchanges between the two parties, etc.;

2. The Notarial Certificate ([2020] Lu Weihai Huancui Zheng Min Zi No. 136) issued by the Notary Office, and the notarized documents include bank customer receipts and special value-added tax invoices, etc.; and

3. An agency agreement.

Among the above evidence, the two Notarial Certificates are original documents issued by the Notary Office; as for the Agency Agreement, the Claimant handed in the original copy after the hearing, and it has been verified that the copy was consistent with the original agreement. Without evidence to the contrary that suffices for rebuttal, the Arbitral Tribunal hereby accepts the evidence submitted by the Claimant.

## (II)   Facts of the Case

Based on the statements of the Claimant and its submitted evidence, and through oral hearing of the Case, the Arbitral Tribunal has established the facts of the Case as follows:

1. The business relationship between the Claimant and the Respondent began with the 300118ERUP01Y Sales Contract ("01Y Contract") signed by both parties via e-mail on August 1, 2018. Because the signing process, contact operator and follow-up goods receipt, logistical arrangements and warehousing agent information of the six Sales Contracts in the Case are identical to those of the 01Y Contract, the process of signing and implementing the 01Y Contract is described as follows and will not be repeated again:

On August 1, 2018, through the email address francis@eruptioninc.com, Francis, the business operator of the Respondent sent an email with the subject (Re: Contract#ERP180801) to the Claimant's then business operator, Yang Tao ("Elain"). The 01Y Contract was an attachment to the email.

Based on the 01Y Contract, the Respondent bought 6,477 garments from the Claimant, the total value of the garments was USD 57,213.60, and the payment requirement was telegraphic transfer within 60 days after shipment.

On August 30, 2018, the Respondent transferred USD 300 from its account to the Claimant's to test its own account.

On December 12, 2018, the Respondent issued a Letter of Authorization authorizing Francis to handle the garments business with Chinese entities on behalf of the Respondent, and authorizing Feimann Group, Inc to handle the Respondent's logistics, warehousing and payment matters.

On December 13, 2018, December 21, 2018 and December 24, 2018, the Respondent paid the Claimant USD 20,000, USD 20,000 and USD 19,042.40, respectively, USD 59,042.40 in total. The foresaid payments were paid through the account of Feimann Group, Inc and the details of remittance indicated that they were the payments for goods under the ZNS30011809113ERUPY invoice.

9

On December 27, 2018, the business operator of the Claimant, Yang Tao, sent an email to the Respondent's business operator, Francis, confirming that all payments for goods under the 01Y Contract had been received.

2.  The signing process of the six Sales Contracts under the Case

On October 12, 2018, the Claimant and the Respondent concluded three Sales Contracts which were the 02Y Contract, the 03Y Contract and the 04Y Contract, and agreed that the Respondent would purchase garments worth USD 126,000, USD 103,320 and USD 118,800 from the Claimant under the said three contracts, respectively.

On December 6, 2018, because the Respondent changed the garments style numbers, trademarks and colors, both parties amended the 03Y Contract and the 04Y Contract accordingly, but the contract prices remained unchanged.

On November 11, 2018, the Claimant and the Respondent signed the 05Y Contract and the 06Y Contract, and agreed that the Respondent would separately purchase USD 54,960, and USD 132,340 worth of garments from the Claimant.

On December 11, 2018, the Claimant and the Respondent signed the 07Y Contract, and agreed that the Respondent would purchase USD 33,480 worth of garments from the Claimant.

The value of the goods subject to the six Sales Contracts amount to USD 568,180 in total. The contract numbers of the six Sales Contracts in the Case are continuations of the contract number of the 01Y Contract. Except the difference in garments style numbers, colors, quantities and manufacture dates, other terms in the Sales Contracts are the same as those of the 01Y Contract, which are as follows:

Quantity Allowance: +/-3%;

Destination Port: Los Angeles;

Payment Conditions: Telegraphic transfer within 60 days after shipment;

Sample Approval: The Seller (the Claimant in the Case, same as follows – comments from the Arbitral Tribunal) needs to provide fit samples per style per color * pcs in * size to the Buyer (the Respondent in the Case, same as follows – comments from the Arbitral Tribunal) within 10 days after both sides sign the contract and it becomes effective; and to provide TOP samples per style per color * pcs in * size to the Buyer within 30 days after both sides sign the contract and it becomes effective. All samples are provided for a fee and will be factored into the overall quantity (* varies due to the different goods style numbers under each contract – comments from the Arbitral Tribunal);

Documents: The Seller shall only provide the Buyer with the following documents for the payment;

1) Ocean bill of lading in case of sea freight or airway bill in case of air freight, cargo receipt in case of rail freight;

2) Commercial invoice;

3) Packing list;

If any additional documents, such as certificate of origin, consular invoice etc., are required, the Seller may provide as requested for the buyer's account.

Quality/Quantity discrepancy: In case of quality discrepancy, claims shall be filed by the Buyer within 20 days after the arrival of the commodity at the port of destination, while for quantity discrepancy, claims shall be filled by the Buyer within 15 days after the arrival of the commodity at the port of the destination. Otherwise, no claim shall be accepted.

Arbitration clause: Any disputes arising from or in connection with the performance of the Contract shall be settled through negotiation by both parties, failing which they shall be submitted for arbitration. The arbitration shall take place in China and shall be conducted by the China International Economic and Trade Arbitration Commission in accordance with the provisional rules of arbitration procedures of the said commission. The arbitration award shall be final and binding upon both parties. Unless otherwise awarded by the said arbitration commission, the arbitration fees shall be borne by the losing party. The contract and all disputes concerning the contract shall be governed by laws of the People's Republic of China. And contract clauses in Chinese shall prevail.

3.  Claimant's goods delivery

After signing the six Sales Contracts involved in the Case, the Claimant fulfilled its delivery obligation of garments under the six contracts in five batches. According to the time of delivery, the details are as follows:

(1) On December 31, 2018, the Claimant delivered all 17,176 garments under the 03Y Contract and a portion of the garments under the 04Y Contract, which was 17,089, to the carrier designated by the Respondent. In addition to the 35 samples delivered to the Respondent under each contract, 70 samples altogether, the goods' value totaled USD 211,144.50.

(2) On January 14, 2019, the Claimant delivered a portion of the garments under the 06Y Contract, which was 8,320, to the carrier designated by the Respondent. In addition to the 20 samples delivered to the Respondent before, the goods' value totaled USD 50,040.00.

(3) On January 15, 2019, the Claimant delivered all the remaining 2,456 garments under the 04Y Contract to the carrier designated by the Respondent. In addition to the 5 samples delivered to the Respondent before, the goods' value totaled USD 15,139.70.

(4) On January 24, 2019, the Claimant delivered all 7,360 garments under the 05Y Contract, a portion of the garments under the 06Y Contract, which was 9,904, and all 4,928 garments under the 07Y Contract to the carrier designated by the Respondent. In addition to the 54 samples delivered to the Respondent before, the goods' value totaled USD 175,068.30.

(5) On January 31, 2019, the Claimant delivered all 11,925 garments under the 02Y Contract to the carrier designated by the Respondent. In addition to the 30 samples delivered to the Respondent before, goods value totaled USD 125,844.60.

The total value of the garments mentioned above is USD 577,237.10.

To prove the delivery, the Claimant submitted the corresponding customs declaration forms, bills of lading, packing lists and commercial invoices for the delivery status of each batch of the goods. After verification by the Arbitral Tribunal, the aforementioned evidence supports each other.

4. Claimant's documents delivery

According to the contracts, the Claimant was also required to send bills of lading, commercial invoices and packing lists. The details of documents delivery are as follows:

(1) On January 28, 2019, the Claimant sent one packing list (packing 11,952 units) and one invoice (No. ZNS3001190128ERUPY, 11,982 units and payment of USD 125,844.60) under the 02Y Contract to the Respondent via email.

(2) On February 20, 2019, the Claimant sent three packing lists, three invoices and two bills of lading under the 03Y Contract and the 04Y Contract to the Respondent via email, specifically including the packing list (packing 2,456 units, 5 samples) and the invoice (No. ZNS3001181231ERUPY, 2,461 units and payment of USD 15,139.70) under the 04Y Contract; the packing list (packing 17,089 units, 721 boxes and 35 samples) and the invoice (No. ZNS3001181231ERUPY, 17,124 units and payment of USD 105,312.60) under the 04Y Contract; the packing list (packing 17,176 units, 725 boxes and 35 samples) and the invoice (No. ZNS3001181231ERUPY, 17,211 units and payment of USD 105,831.90) under the 03Y Contract; one bill of lading numbered No. XME18120331 and another one numbered No.XME19010193.

(3) On January 19, 2019, the Claimant sent three packing lists and three invoices under the 05Y Contract, the 06Y Contract and the 07Y Contract to the Respondent via email, specifically including: the packing list (packing 7,360 units, 231 boxes and 18 samples) and the invoice (No. ZNS3001190122ERUPY-1, 7,378 units and payment of USD 56,294.20) under the 05Y Contract; the packing list (packing 9,904 units, 310 boxes and 24 samples) and the invoice (No. ZNS3001190122ERUPY-2, 9,928 units and payment of USD 84,317.60) under the 06Y Contract; packing list (packing 4,928 units, 156 boxes and 12 samples) and the invoice (No. ZNS3001190122ERUPY-3, 4,940 units and payment of USD 34,456.50) under the 07Y Contract.

(4) On January 8, 2019, the Claimant sent one packing list (packing 8,320 units, 260 boxes and 20 samples) and one invoice (No. ZNS3001190109ERUPY, 8,340 units and payment of USD 50,040.00) under the 06Y Contract to the Respondent via email.

In addition, the Arbitral Tribunal notes that the five bills of lading corresponding to the five deliveries of goods from the Claimant all indicated the garments had been sent by telex release to the Respondent, except for the bill of lading XME18120331, which was sent via email.

5. The payment of Respondent

The evidence submitted by the Claimant indicates that the Respondent made five payments to the Claimant, including a direct payment of USD 300 from the Respondent on August 30, 2018; three payments of USD 20,000, USD 20,000, and USD 19.042.40, USD 59,042.40 in gross, made by Feimann Group, Inc on December 13, 21 and 24, 2018, respectively, with remittance detailing that

they were payments for goods under the invoice ZNS3001180913ERUPY; the payment of USD 10,000 made by Feimann Group, Inc, with remittance detailing that it was the payment for goods under the invoice ZNS3001190109ERUPY. This invoice number is exactly the same as that of the invoice under the 06Y Contract involved in the Case.

## (III) Governing Laws

The Arbitral Tribunal notes that the Case is an international sale of goods dispute. According to Article 41 of the *Law of the People's Republic of China on the Laws Applicable to Foreign-related Civil Relations*, "The parties may by agreement choose the law applicable to their contract. Absent any choice by the parties, the law of the habitual residence of the party whose performance of obligation is most characteristic of the contract or the law that is most closely connected with the contract shall be applied," and the parties clearly agreed in the six Sales Contracts in the Case that the contract and all disputes concerning the contract shall be governed by laws of the People's Republic of China. Therefore, the Arbitral Tribunal concludes that it shall apply the laws of the People's Republic of China to solve the disputes in the Case.

## (IV) Effect of the Contracts in the Case

The Arbitral Tribunal notices that, both parties signed the six Sales Contracts in the Case by emails, with the Claimant signing the contracts via its authorized representative and stamping them with its company seal, and the Respondent also signing the contracts. Because the Respondent, despite due notification, neither attended the hearing nor submitted any defense opinions or objections, and the six Sales Contracts had been actually performed, thus the Arbitral Tribunal finds that, the six Sales Contract are all the genuine intentions of both parties and their contents do not violate the mandatory provisions of laws and administrative regulations of China. Thus, the Arbitral Tribunal holds that the six contracts in this Case are valid and legally binding on both parties.

## (V) Regarding Claimant's Arbitration Claims

1. Regarding the arbitration claim that the Respondent shall pay the Claimant for goods the value of which amounts to USD 566,937.10

First of all, as to the question whether the garments tendered by the Claimant conform to the contracts:

Based on the established facts aforementioned, the Claimant has delivered garments with a total value of USD 577,237.10 to the Respondent under the six contracts in the Case. Compared with the goods value of USD 568,180 stipulated in the six contracts, the amount of garments delivered is within the quantity allowance range of +/-3% provided in the contracts.

The Arbitral Tribunal also notes that, after receiving the garments under the six Sales Contracts in the Case, the Respondent simply asked for a postponement of payment for various reasons after multiple demands by the Claimant without raising any objections to the quantity or quality of the goods to the Claimant within the objection period provided in the contracts. After repeated requests by the Claimant, the Respondent mentioned in an email on June 13, 2019 that "due to our products failed to meet with the requirement and regulation by [the] CSPC (Consumer Safety Product

Commission). We have to sen[d] ALL the merchandise we ordered from you to a local factory to fix the problem to comply with the CSPC regulations prior to any sales to any store in the U.S.", but the objection was not accompanied by any CSPC regulations or any inspection report, nor did it specify the discrepancies in the garments shipped by the Claimant; meanwhile, the Respondent has not raised any objection to the quality of the goods, nor has it submitted any evidence to prove that the goods had quality problems during the arbitration proceedings in the Case. Therefore, the Arbitral Tribunal is unable to find that the quality of the goods delivered by the Claimant under the six Sales Contracts in the Case is defective, which can otherwise be a potential ground on which the Respondent is entitled to reject the demand from the Claimant under the contracts of the Case.

Based on the above, the Arbitral Tribunal holds that, the Claimant has delivered the garments conforming to the quantity and quality requirements in the contracts to the Respondent, so the Claimant has a right to claim the corresponding payment from the Respondent.

Second, regarding the payment already made by the Respondent in the Case:

The Arbitral Tribunal notes that the evidence submitted by the Claimant shows that the Respondent made five payments to the Claimant in total, three of which totaling USD 59,042.40 were payments under the ZNS3001180913ERUPY invoice, and the Claimant claimed that it was the payment under the 01Y Contract. Since the invoice numbers indicated in the three payments are not included in the invoices of the six contracts in the Case, and the payment dates of the three payments were all before the payment dates agreed in the six contracts in the Case, the Arbitral Tribunal recognizes the Claimant's argument that the three payments totaling USD 59,042.40 were not the payments under the six contracts in the Case.

In view of the above, the Arbitral Tribunal confirms that the amounts of payments already made by the Respondent under the six contracts in the Case are the USD 10,000 under the 06Y Contract paid on June 10, 2019 and the USD 300 for testing the Respondent's account paid on August 30, 2018, totaling USD 10,300. Under the Case, the Respondent still has USD 566,937.10 unpaid. Therefore, the Arbitral Tribunal finds in Claimant's favor on this claim.

2. Regarding the arbitration claim that the Respondent shall compensate the Claimant for its interest loss from April 2, 2019 to the date when the Respondent pays off all defaulted amounts, of which the interest loss from April 2, 2019 to August 19, 2019 is USD 9,459.31 based on an annual loan interest rate of the People's Bank of China for the same period at 4.35%; the interest loss from August 20, 2019 to the date when the Respondent pays off all defaulted amounts shall be calculated on the basis of the principal of outstanding payments for goods with the loan prime rate published by the National Interbank Funding Center

The Arbitral Tribunal holds that since the Respondent's failure to make the payments in time constituted a breach of contract in the Case, the Claimant has the right to demand compensation for its loss of capital interest caused by the Respondent's breach of contract.

In terms of the starting date of the interest, considering the fact that the last shipment under the contracts in the Case was January 31, 2019, and the contracts provide that a telegraphic transfer should be conducted within 60 days after shipment, the Arbitral Tribunal holds that it is reasonable

and thus accepts that the Claimant sets April 2, 2019, the 61st day after the last shipment, as the starting date to calculate the interest loss of all payments.

Regarding the rate of the interest, the Claimant claims that the interest loss shall be calculated from April 2, 2019 to August 19, 2019 at 4.35% of the annual loan interest rate of the People's Bank of China for the same period. From August 20, 2019 to the date when all outstanding payments are made, the interest loss shall be calculated based on the principal of outstanding payment with loan prime rate published by the National Interbank Funding Center. For this, the Arbitral Tribunal holds that the payments in the Case are in US dollars, and it is inappropriate for the Claimant to calculate the corresponding interest loss with RMB loan interest rate. However, in view of the facts that China has reformed the deposit and loan interest rate management system of foreign currency since September 2000, the People's Bank of China no longer stipulates loan interest rates and overdue interest rates of foreign currency, as well as the average cost of financing in China, the Arbitral Tribunal holds that it is more reasonable that the Respondent pay the corresponding interest loss to the Claimant at an annual interest rate of 1%.

Thus, the Arbitral Tribunal holds that the Respondent shall compensate the Claimant for its interest loss, of which the principal shall be USD 566,937.10 with an annual interest rate of 1%, calculated from April 2, 2019 to the date when the Respondent pays off all unpaid payments.

3. Regarding the arbitration claim that the Respondent shall compensate the Claimant for the attorney's fees paid by the Claimant, which amount to RMB 98,000

For this, the Claimant provided the corresponding Agreement of Agency, receipt of money transfer and the invoice of the actual payment for the attorney's fees costing RMB 98,000. Because the Claimant actually authorized attorneys to attend the Case and the Case resulted from the Respondent's breach of contract, the Arbitral Tribunal holds that the attorney's fees should also be borne entirely by the Respondent.

4. Regarding the arbitration claim that the Respondent shall compensate the Claimant for the notarization fee paid by the Claimant, which amounts to RMB 9,000

In view of the corresponding invoice for notarization fee provided by the Claimant, the Arbitral Tribunal holds that, based on the fact that the Case is caused by the Respondent's breach of contract, the notarization cost should also be borne entirely by the Respondent.

5. The Respondent shall bear all the arbitration fees of the Case.

Based on the responsibilities determined in the Case and the sustained arbitration claim, and according to Article 52 of the Arbitration Rules, the Arbitral Tribunal finds that the Respondent shall bear all the arbitration fees of the Case.

### III. Arbitral Award

Overall, the Arbitral Tribunal makes the following award:

1. The Respondent shall pay the Claimant for goods, the value of which amounts to USD

566,937.10.

2. The Respondent shall compensate the Claimant for the interest loss from April 2, 2019 to the date when the Respondent pays off all defaulted amount, and the interest loss shall be calculated on the basis of the principal of unpaid payments for goods in accordance with an annual interest rate of 1%.

3. The Respondent shall compensate the Claimant for the attorney's fees incurred by the Claimant, which amount to RMB 98,000.

4. The Respondent shall compensate the Claimant for the notarization fee incurred by the Claimant, which amounts to RMB 9,000.

5. The arbitration fees of the Case are RMB 142,439 and the Respondent shall bear all of the arbitration fees of the Case. The fees were prepaid in full to the Arbitration Commission by the Claimant, so the Respondent shall pay an additional RMB 142,439 to the Claimant to reimburse the arbitration fees prepaid by the Claimant in advance.

The Respondent shall pay the aforesaid amounts to the Claimant within 30 days of the issuance of this Arbitral Award.

The Arbitral Award is final and is effective as of the date of issuance.



[The remainder of this page left blank]

Sole Arbitrator: Wei Ziping

January 15, 2021 in Beijing

**China International Economic and
Trade Arbitration Commission**

**1100000135001**



# 裁 决 书

## Arbitral Award



**CIETAC**

**中 国 国 际 经 济 贸 易 仲 裁 委 员 会**

CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

# 中国国际经济贸易仲裁委员会

# 裁 决 书

申　请　人：威海纺织集团进出口有限责任公司

地　　　址：中国山东省威海市环翠区世昌大道 16 号

仲裁代理人：王丽伟、陈瑞志　山东东方未来律师事务所

被 申 请 人：Eruption Holdings Inc.

地　　　址：1603 Capitol Ave., Suite 314-957

　　　　　　Cheyenne, WY 82001, US

北　京

二〇二一年一月十五日

# 裁 决 书

〔2021〕中国贸仲京裁字第 0151 号

中国国际经济贸易仲裁委员会（以下简称“仲裁委员会”）根据申请人威海纺织集团进出口有限责任公司（以下简称“申请人”）与被申请人 Eruption Holdings Inc.（以下简称“被申请人”）分别签订的合同编号为 300118ERUP02Y、300118ERUP03Y、300118ERUP04Y、300118ERUP05Y、300118ERUP06Y、300118ERUP07Y（FMGSP2019F-DS）的六份《销售合同》（SALES CONTRACT）中仲裁条款的约定，以及申请人于 2020 年 4 月 17 日提交仲裁委员会的书面仲裁申请，受理了上述六份合同项下的本争议仲裁案。本案案件编号为 G20200765。

本案仲裁程序适用自 2015 年 1 月 1 日起施行的《中国国际经济贸易仲裁委员会仲裁规则》（以下简称“《仲裁规则》”）。鉴于本案争议金额未超过人民币 500 万元，根据《仲裁规则》第五十六条的规定，本案适用《仲裁规则》第四章“简易程序”的规定；该章没有规定的事项，适用《仲裁规则》其他各章的规定。

2020 年 5 月 6 日，仲裁委员会仲裁院（以下简称“仲裁院”）按照申请人在仲裁申请书中提供的地址，以特快专递的方式向申请人和被申请人分别寄送了仲裁通知、《仲裁规则》和《仲裁员名册》，并随函向被申请人寄送了申请人提交

的仲裁申请书及其所附的证据材料。经查，上述寄送被申请人的邮件于 2020 年 7 月 14 日妥投。

由于双方当事人未能在规定期限内共同选定或共同委托仲裁委员会主任指定一名独任仲裁员，仲裁委员会主任根据《仲裁规则》之规定指定魏子平女士担任本案独任仲裁员。上述独任仲裁员在签署接受指定的《声明书》后，于 2020 年 9 月 24 日成立仲裁庭，审理本案。仲裁庭经商仲裁院，决定于 2020 年 11 月 11 日在北京开庭审理本案。

2020 年 9 月 24 日，仲裁院以特快专递的方式向双方当事人分别寄送了本案组庭通知及所附仲裁员签署的《声明书》和开庭通知。经查，上述寄送被申请人的邮件于 2020 年 9 月 30 日妥投。

2020 年 11 月 11 日，仲裁庭如期对本案进行了开庭审理。申请人委派仲裁代理人参加了庭审。被申请人经有效通知未出席庭审，亦未说明理由，仲裁庭根据《仲裁规则》第三十九条第（二）款之规定，对本案进行了缺席审理。庭审中，申请人就仲裁请求及事实和理由进行了陈述，对证据进行了举证和说明、出示了相关证据原件，并回答了仲裁庭提出的问题。

2020 年 11 月 20 日，申请人提交"申请人提交材料明细"及附件。

2020 年 11 月 30 日，仲裁院将上述材料转寄被申请人，书面函告被申请人开庭审理情况，并通知被申请人：如对本案已进行的程序或对本案实体问题有任何意见或异议，或有正当理由要求再次开庭的，均应于规定期限内提出。经查，

上述寄送被申请人的邮件于 2020 年 12 月 7 日妥投。但在规定期限内，被申请人未提交任何意见或材料。

由于仲裁程序进行的需要，经仲裁庭申请，仲裁院院长同意并决定将本案裁决作出的期限延长至 2021 年 1 月 25 日。

本案所有文件均已按照《仲裁规则》第八条的有关规定有效送达双方当事人。在本案仲裁程序中，被申请人未提交任何书面意见及证据材料。

本案现已审理终结。仲裁庭根据申请人提交的书面材料及庭审中查明的事实，依据合同约定和法律规定，作出本缺席裁决。

现将本案案情、仲裁庭意见以及裁决结果分述如下：

# 一、案　情

（一）申请人的仲裁请求及所依据的事实与理由

申请人在本案中提出仲裁请求如下：

1. 被申请人向申请人支付货款 566,937.10 美元；

2. 被申请人赔偿申请人自 2019 年 4 月 2 日起至被申请人付清全部货款之日止的利息损失，其中自 2019 年 4 月 2 日至 2019 年 8 月 19 日按中国人民银行同期贷款年利率 4.35%计算利息损失为 9,459.31 美元；自 2019 年 8 月 20 日起至被申请人付清货款之日止，以欠付货款本金为基数按照全国银行间同业拆借中心公布的贷款市场报价利率计算利息损

失；

3．被申请人承担申请人律师费损失人民币 98,000 元；

4．被申请人承担申请人公证费损失人民币 9,000 元；

5．本案仲裁费用由被申请人承担。

交易背景如下：

2018 年 10 月 12 日，申请人与被申请人签订合同编号分别为 300118ERUP02Y 号、300118ERUP03Y、300118ERUP04Y 的《销售合同》（以下分别简称为"02Y 合同""03Y 合同""04Y 合同"）各一份，约定被申请人从申请人处购买服装，货值分别为 126,000 美元、103,320 美元、118,080 美元；发货后 60 天内电汇付款，目的口岸洛杉矶。2018 年 12 月 6 日，因被申请人变更了服装款号、商标和颜色，双方就 03Y、04Y 合同进行了相应变更。

2018 年 11 月 11 日，申请人与被申请人签订合同编号分别为 300118ERUP05Y 号、300118ERUP06Y《销售合同》（以下分别简称为"05Y 合同""06Y 合同"）各一份，约定被申请人从申请人处购买服装，货值分别为 54,960 美元、132,340 美元；发货后 60 天内电汇付款，目的口岸洛杉矶。

2018 年 12 月 11 日，申请人与被申请人签订合同编号为 300118ERUP07Y 号《销售合同》（以下简称为"07Y 合同"）一份，被申请人从申请人处购买服装，货值 33,480 美元；发货后 60 天内电汇付款，目的口岸洛杉矶。

发货情况如下：

1. 2018 年 12 月 31 日，申请人将 03Y 合同项下全部服

4

装 17176 件和 04Y 合同项下部分服装 17089 件交运被申请人指定承运人，加上之前交付给被申请人的 70 件样品，货值共计 211,144.50 美元；

2. 2019 年 1 月 14 日，申请人将 06Y 合同项下部分服装 8320 件交运被申请人指定承运人，加上之前交付给被申请人的 20 件样品，货值共计 50,040.00 美元；

3. 2019 年 1 月 15 日，申请人将 04Y 合同项下余下服装 2456 件交运被申请人指定承运人，加上之前交付给被申请人的 5 件样品，货值共计 15,139.70 美元；

4. 2019 年 1 月 24 日，申请人将 05Y 合同项下全部服装 7360 件、06Y 合同项下部分服装 9904 件、07Y 合同项下全部服装 4928 件交运被申请人指定承运人，加上之前交付给被申请人的 54 件样品，货值共计 175,068.30 美元；

5. 2019 年 1 月 31 日，申请人将 02Y 合同项下全部服装 11952 件交运被申请人指定承运人，加上之前交付给被申请人的 30 件样品，货值共计 125,844.60 美元；

相关单据交付情况：

1. 2019 年 1 月 8 日，申请人将 06Y 合同项下装箱单（装箱 8320 件、260 箱、样品 20 件）和发票（编号 ZNS3001190109ERUPY，8340 件，货款 50,040.00 美元）各一份通过电子邮件发送给被申请人；

2. 2019 年 1 月 19 日，申请人将 05Y、06Y、07Y 合同项下装箱单和发票各三份通过电子邮件发送给被申请人，具体如下：装箱单（装箱 7360 件、231 箱、样品 18 件），发票（编号 ZNS3001190122ERUPY-1、7378 件、货款 56,294.20 美

元）。装箱单（装箱 9904 件、310 箱、样品 24 件），发票（编号 ZNS3001190122ERUPY-2、9928 件、货款 84,317.6 美元）。装箱单（装箱 4928 件、156 箱、样品 12 件），发票（编号 ZNS3001190122ERUPY-3、4940 件、货款 34,456.50 美元）；

3．2019 年 1 月 28 日，申请人将 02Y 合同项下装箱单（装箱 11952 件）和发票（编号 ZNS3001190128ERUPY、11982 件、货款 125,844.6 美元）各一份通过电子邮件发送给被申请人；

4．2019 年 2 月 20 日，申请人将 03Y、04Y 合同项下装箱单三份、发票三份、提单两份通过电子邮件发送给被申请人，具体如下：04Y 合同项下装箱单（装箱 2456 件、样品 5 件），发票（编号 ZNS3001181231ERUPY、2461 件、货款 15,139.70 美元）；04Y 合同项下装箱单（装箱 17089 件、721 箱、样品 35 件），发票（编号 ZNS3001181231ERUPY、17124 件、货款 105,312.60 美元）。03Y 合同下装箱单（装箱 17176 件、725 箱、样品 35 件），发票（编号 ZNS3001181231ERUPY、17211 件、货款 105,831.90 美元）编号为 XME18120331 及 XME19010193 的提单各一份。

上述服装的提单均为电放提单。

被申请人已收到上述全部服装，货值共计 577,237.10 美元，但未能按照合同约定支付货款。为此，申请人多次催要，被申请人总以各种理由拖延支付。扣除被申请人已支付的 10,300 美元货款，余下货款被申请人至今未予支付。被申请人所为属于严重违约，严重损害了申请人的合法权益。

（二）申请人的庭后说明和代理意见

首先，关于申请人主张样品货款的说明

1. 申请人与被申请人就样品计算货款达成了合意，申请人主张样品货款具有合同依据。

02Y 销售合同第（6）条样板确认条款约定："销售方在双方签字合同生效后 10 日内提供试身样 7 码每色 2 件给买方；30 天内提供 TOP 样 7 码每色 5 件给买方，所提供样衣为有偿提供，数量并入大货数量。"

03Y、04Y 合同第（6）条样板确认条款约定："销售方在双方签字合同生效后 10 日内提供试身样 7 码每款每色 2 件给买方；30 天内提供 TOP 样 7 码每款每色 5 件给买方，所提供样衣为有偿提供，数量并入大货数量。"

05Y、06Y、07Y 合同第（6）条样板确认条款约定："销售方在双方签字合同生效后 10 日内提供试身样 10 码每款每色 2 件给买方；30 天内提供 TOP 样 10 码每款每色 5 件给买方，所提供样衣为有偿提供，数量并入大货数量。"

根据上述合同约定，六个销售合同需要交付的样品数量如下：

02Y 合同共 medium blue、dark blue、light blue 三个颜色，故需要样品计算为（2+5）×3=21 件；

03Y 合同共 medium blue、dark blue、black 三个颜色，七个款，故需要样品计算为（2+5）×7=49 件；

04Y 合同共 light blue、medium blue、dark blue、medium black 四个颜色，八个款，故需要样品计算为（2+5）×8=56 件；

05Y 合同共 white、black、grey 三个颜色，三个款，故需要样品计算为（2+5）×3=21 件；

06Y 合同共 pink、red、coral、yellow、white、black、grey 三个颜色，故需要样品计算为（2+5）×7=49 件；

07Y 合同共 white、black、grey 三个颜色，六个款，故需要样品计算为（2+5）×6=42 件；

以上约定样品共计 238 件。申请人交付样品 179 件，未超出合同约定。

2. 申请人提交的邮件及附件证据能够证明申请人确向被申请人交付了样品，具体如下：

（1）2018 年 12 月 28 日，申请人工作人员杨涛（Elain）给被申请人 Francis 发送的主题为 "2018-1-27 packing list.pdf" 的电子邮件，杨涛告知 "The balance of all styles top samples have sent out to you today"，该邮件两个装箱单附件的左下角均载明 "PLS NOTED:TOP SAMPLES EVERY STYLE JUNIORS STYLE:SIZE 7/2PCS;X-LARGE STYLE:SIZE 14/2PCS&SIZE 18/1PCS TOTAL 35PCS"，该部分文字均用阴影进行了提示性标注。

2018 年 12 月 29 日 12:58，杨涛将邮寄样品的快递单号（KAS 00008103359）告知 francis。

上述样品是 03Y、04Y 合同项下样品。

（2）2019 年 1 月 8 日，申请人工作人员杨涛（Elain）给被申请人 Francis 发送的主题为 "Re:RE:Re:about 300118EURP04Y style NO.FMGFSP1917J/FSP1917J&FMGFSP1917X/

FSP1917X good shipmentur"的电子邮件（见P144），杨涛告知"We also sent the TOP samples FMGFSP1917J/FSP1917J&FMGFSP1917X/FSP1917X/BSP19101/BSP 19102/BSP19105/BSP19106/BSP19108/BSP19110/BSP19113 to Annie"，根据服装款号，上述样品系02Y、04Y合同项下样品。

对于05、06、07Y合同项下样品的交付及沟通情况，因申请人业务人员已被辞退，未能找到相关书面材料。

3.申请人已将案涉六个销售合同项下样品的详细情况，即样品的款号、每个款号的样品数量及样品的总数量，通过装箱单用阴影标注的方式提示并告知了被申请人，并在发票中准确列明了加上样品数量的货款数。被申请人收到装箱单及发票后，从未提出任何异议；申请人将上述装箱单及发票作为本案仲裁证据提交仲裁庭和被申请人，被申请人亦未提出任何异议。

其次，关于证据P64尾号为1844的报关单中的境外发货人及合同协议号存在错误，但并不能影响申请人向被申请人交付案涉合同项下该批服装的事实认定的说明。

P64尾号为1844的报关单系申请人履行与被申请人签订的案涉六个销售合同，申请人向被申请人交付第一批服装时的报关单，该报关单的境外发货人及合同协议号因报关代理公司的原因填错了。为了不影响服装交期，申请人没有坚持让报关代理公司予以更正。

因申请人当时的业务经办人杨涛（Elain）已被辞退，申请人现无法落实就该错误是否有书面的沟通材料。

尽管报关单存在上述错误，但并不能影响申请人是向被

9

申请人交付案涉合同项下服装的事实认定。

申请人先后分五批向被申请人交货，相应有五份报关单。根据第一批服装发货的装箱单、发票、提单，该批服装重要信息汇总如下：

| 序号 | 合同号 | 箱数 | 服装件数 | 毛重（千克） | 净重（千克） |
|------|--------|------|----------|--------------|--------------|
| 1 | 300118ERUP03Y | 725 | 17176 | 8949.5 | 8224.5 |
| 2 | 300118ERUP04Y | 721 | 17089 | 8980.5 | 8259.5 |
| 合计 | | 1446 | 34265 | 17930 | 16484 |

P64尾号为1844的报关单载明的箱数、服装件数、毛重、净重与装箱单、发票、提单中的相应信息完全一致，此外，服装的离境口岸、商品名称信息也一致。

另外，结合申请人提交的其他证据材料，也足以认定该批服装已经交付给被申请人的事实。具体证据如下：

1. 申请人的工作人员与被申请人指定的承运人深圳海光物流集团公司的业务人员之间就主题为300118ERUP03Y&300118ERUP04Y/Yantian to Long Breach C/ERUPTION HOLDINGS INC.1×45HQ XME18120331进行装运及签发提单进行沟通的电子邮件（见P150-152），可以证实该批服装确已交运被申请人指定承运人，收货人为被申请人。

2. 2019年1月1日早上8:59，申请人工作人员杨涛给被申请人Francis发送的主题为"Re:Re:about 300118ERUP04Y style NO.FMGFSP1917J/FSP1917J&FMGFSP1917X/FSP1917X goods

10

shipment"的电子邮件（见P144），就04Y销售合同项下第一批发货后逾下未发货的服装（the balance of last shipment），申请人要求被申请人安排运输。

2019年1月3日03:55:54，Francis回复"Annie of Feimann Group will contact you to make the arrangement"（见P144）。

上述两个邮件，能够证实在该两个邮件发送时间之前，申请人已向被申请人发运了04Y销售合同项下的第一批服装，被申请人予以认可。

3. 申请人已将全部五批发货的装箱单、发票等发送给被申请人，被申请人从未提出任何异议。

4. 2019年4月12日下午2:22，申请人通过邮件向被申请人催要货款，被申请人2019年4月16日 9:20:29回复"I am sorry for not being able to make the payments for goods of 03Y04Y as scheduled"（ 见P197），上述邮件可以证实被申请人认可收到03Y、04Y销售合同项下货物，相应的货款付款迟延。

第三，被申请人未按约向申请人支付货款，损害了申请人的合法权益，构成违约，应向申请人承担违约责任。

申请人向被申请人交付了总计577,237.10美元的服装，但被申请人在收到上述服装后，仅于2019年6月10日支付1万美元，加上双方第一次进行业务往来时为测试被申请人账户，被申请人支付的300美元，被申请人至今仍欠付申请人货款 566,937.10美元。被申请人所为严重损害了申请人的合法权益，给申请人造成逾期付款的资金损失。为此，申

请人有权要求被申请人承担违约责任。

为方便计算起见，申请人将 2019 年 4 月 2 日（为申请人 2019 年 1 月 31 日最后一次发货后的第 61 天）作为所有货款的资金损失起算点，按照中国人民银行同期贷款年利率 4.35%/全国银行间同业拆借中心公布的贷款市场报价利率计算利息损失，合法有据。

另外，被申请人未按约向申请人支付货款，导致申请人申请仲裁并为此支出律师费人民币 98,000 元及公证费人民币 9,000 元，上述费用支出均因被申请人违约产生，应全部由被申请人赔偿。

## 二、仲裁庭意见

本案中，被申请人经有效送达，无正当理由未出席庭审，亦未向仲裁庭提交任何答辩意见及证据材料，对申请人提交的证据材料也未发表任何质证意见。仲裁庭视为其放弃了答辩、举证、辩论和质证等权利，并应承担由此产生的不利法律后果。

（一）申请人的证据

仲裁庭注意到，申请人在本案中所交证据如下：

1. 山东省威海市环翠公证处出具的（2020）鲁威海环翠证民字第 120 号《公证书》，经公证的文件包含本案案涉六份合同、装箱单、发票、提单、报关单、双方的电子邮件往来等；

2. 山东省威海市环翠公证处出具的（2020）鲁威海环翠证民字第 136 号《公证书》，经公证的文件包含银行客户回单、增值税专用发票等；

3. 委托代理合同。

上述证据中，两份《公证书》均为公证处出具的原件；关于委托代理合同，申请人庭后补交了该证据原件，经核对原件与复印件内容一致。鉴此，在没有相反证据推翻申请人证据的情况下，仲裁庭对申请人所交上述证据均予以采信。

（二）本案事实

根据申请人的陈述及其提交的证据，并经开庭审理，仲裁庭查明以下事实：

1. 申请人与被申请人之间的业务往来始于 2018 年 8 月 1 日双方通过电子邮件方式签订的 300118ERUP01Y 销售合同（以下简称 "01Y 合同"）。由于案涉六份合同的签署过程、联系人员以及后续接收货物、办理物流和仓储等代理人信息均与 01Y 合同相同，故将 01Y 合同的签署和履约过程引述如下，后续不再赘述：

2018 年 8 月 1 日，被申请人的业务人员 Francis 通过其电子邮箱 francis@eruptioninc.com 给申请人的业务人员杨涛 Elain 发送了主题为（Re:Contract#ERP180801）的电子邮件，01Y 合同即为该邮件的附件。

根据 01Y 合同，被申请人从申请人处购买 6477 件服装，货值 57,213.60 美元，付款条件为：发货后 60 天内电汇。

2018 年 8 月 30 日，被申请人通过其账户给申请人支付

300 美元，该款项的支付是为了测试被申请人的账户。

2018 年 12 月 12 日，被申请人出具授权委托书，授权 Francis 代表被申请人办理其与中国的服装业务，同时授权 Feimann Group, Inc 公司办理被申请人物流、仓储及付款事宜。

2018 年 12 月 13 日、2018 年 12 月 21 日和 2018 年 12 月 24 日，被申请人分别向申请人支付 2 万美元、2 万美元和 19,042.40 美元，共计 59,042.40 美元。上述三笔款项均是通过 Feimann Group, Inc 的账户支付，汇款详情均显示为 ZNS3001180913ERUPY 发票项下货款。

2018 年 12 月 27 日，申请人业务人员杨涛给被申请人业务人员 francis 发送电子邮件，确认已收到 01Y 合同项下的全部货款。

2. 案涉六份合同的签订情况

2018 年 10 月 12 日，申请人与被申请人签订 02Y、03Y 和 04Y 三份合同，约定被申请人从申请人处购买货值分别为 126,000 美元、103,320 美元、118,080 美元的服装。

2018 年 12 月 6 日，因被申请人变更服装款号、商标和颜色，双方就 03Y、04Y 合同的服装款号、商标和颜色进行了相应的变更，合同价款未变。

2018 年 11 月 11 日，申请人与被申请人签订 05Y 和 06Y 两份合同，约定被申请人从申请人处购买货值分别为 54,960 美元、132,340 美元的服装。

2018 年 12 月 11 日，申请人与被申请人签订 07Y 合同，

约定被申请人从申请人处购买货值为 33,480 美元的服装。

六份合同货值共计 568,180 美元。案涉六份合同的合同编号延续双方之前签订的 01Y 合同，合同内容除与货物有关的服装款号、颜色、数量和出厂日期等不同以外，其余条款内容均一致，主要如下：

允许溢短装：+-3%；

目的口岸：洛杉矶；

付款条件：发货后 60 天内电汇；

样板确认：卖方（即本案申请人，以下同——仲裁庭注）在双方签字合同生效日后 10 天内提供试身样*码每色*件给买方（即本案被申请人，以下同——仲裁庭注）；30 天内提供 TOP 样*码每色*件给买方，所提供样衣为有偿提供，数量并入大货数量（其中*因每份合同项下货物款号不同有所区别——仲裁庭注）；

单据：卖方只向买方提供以下单据：（1）海运时，海运提单；空运时，空运单；铁路运输时，货物承运单据；（2）商业发票；（3）装箱单。倘若需要其他单据，如产地证、领事发票等，卖方可以根据要求提供，但费用应由买方承担；

品质/数量异议：如买方提出异议，凡属品质异议应于货到目的口岸之日 20 天内提出，凡属数量异议应于货到目的口岸之日起 15 天内提出，过期不受理。……

仲裁条款：在执行本合同中所产生的或与合同有关的一切争议，由双方协商解决。如果协商后仍不能解决时，得提请仲裁。仲裁在中国进行，由中国国际经济贸易仲裁委员会

根据委员会的仲裁程序暂行规则进行仲裁。仲裁决定为最终决定，双方都应服从。除仲裁委员会另有决定外，仲裁费用由败诉一方负担。本合同或与本合同相关的法律纠纷适用中华人民共和国法律。本合同条款以中文文本为准。

3．申请人的交货情况

案涉六份合同签订后，申请人分五次履行了六份合同项下的服装交付义务，按照交付时间顺序，具体交付情况如下：

（1）2018 年 12 月 31 日，申请人将 03Y 合同项下全部服装 17176 件和 04Y 合同项下部分服装 17089 件交付被申请人指定承运人，加上之前申请人每个合同项下分别交付的 35 件共计 70 件的样品，货值共计 211,144.50 美元；

（2）2019 年 1 月 14 日，申请人将 06Y 合同项下部分服装 8320 件交付被申请人指定承运人，加上之前交付的 20 件样品，货值共计 50,040.00 美元；

（3）2019 年 1 月 15 日，申请人将 04Y 合同项下余下全部服装 2456 件交付被申请人指定承运人，加上之前交付给被申请人的 5 件样品，货值共计 15,139.70 美元；

（4）2019 年 1 月 24 日，申请人将 05Y 合同项下全部服装 7360 件、06Y 合同项下部分服装 9904 件、07Y 合同项下全部服装 4928 件交付被申请人指定承运人，加上之前交付给被申请人的 54 件样品，货值共计 175,068.30 美元；

（5）2019 年 1 月 31 日，申请人将 02Y 合同项下全部服装 11952 件交付被申请人指定承运人，加上之前交付给被申请人的 30 件样品，货值共计 125,844.60 美元。

以上服装货值总计 577,237.10 美元。

为证明上述交货情况，申请人就每批货物的发送情况分别提交了相应的报关单、提单、装箱单和发票。经仲裁庭核对，上述证据均能一一相互印证。

4．申请人的交单情况

按照合同约定，申请人还需向被申请人交付提单、商业发票和装箱单等单据，具体交付情况如下：

（1）2019 年 1 月 28 日，申请人将 02Y 合同项下装箱单（装箱 11952 件）和发票（编号 ZNS3001190128ERUPY、11982 件、货款 125,844.6 美元）各一份通过电子邮件发送给被申请人。

（2）2019 年 2 月 20 日，申请人将 03Y、04Y 合同项下装箱单三份、发票三份、提单两份通过电子邮件发给被申请人，具体包括：04Y 合同项下装箱单（装箱 2456 件、样品 5 件），发票（编号 ZNS3001181231ERUPY、2461 件、货款 15,139.70 美元）；04Y 合同项下装箱单（装箱 17089 件、721 箱、样品 35 件），发票（编号 ZNS3001181231ERUPY、17124 件、货款 105,312.60 美元）；03Y 合同项下装箱单（装箱 17176 件、725 箱、样品 35 件），发票（编号 ZNS3001181231ERUPY、17211 件、货款 105,831.90 美元）；编号为 XME18120331 及 XME19010193 的提单各一份。

（3）2019 年 1 月 19 日，申请人将 05Y、06Y、07Y 合同项下装箱单和发票各三份通过电子邮件发送给被申请人，具体包括：05Y 合同项下装箱单（装箱 7360 件、231 箱、样品 18 件），发票（编号 ZNS3001190122ERUPY-1、7378 件、货款

56,294.20 美元）；06Y 合同项下装箱单（装箱 9904 件、310 箱、样品 24 件），发票（编号 ZNS3001190122ERUPY-2、9928 件、货款 84,317.6 美元）；07Y 合同项下装箱单（装箱 4928 件、156 箱、样品 12 件）、发票（编号 ZNS3001190122ERUPY-3、4940 件、货款 34,456.50 美元）。

（4）2019 年 1 月 8 日，申请人将 06Y 合同项下装箱单（装箱 8320 件、260 箱、样品 20 件）和发票（编号 ZNS3001190109ERUPY，8340 件，货款 50,040.00 美元）各一份通过电子邮件发送给被申请人。

另外，仲裁庭注意到，申请人分五次发货所对应的五份提单中，除了通过电子邮件发送的 XME18120331 提单外，其余提单均显示，已电放发送被申请人。

5. 被申请人的支付情况

申请人提交的证据显示，被申请人共向申请人支付过五笔款项，其中包括：2018 年 8 月 30 日由被申请人直接支付的 300 美元；2018 年 12 月 13 日、2018 年 12 月 21 日和 2018 年 12 月 24 日由 Feimann Group, Inc 支付的 2 万美元、2 万美元和 19,042.40 美元，共计 59,042.40 美元，该三笔汇款详情均注明为 ZNS3001180913ERUPY 发票项下货款；2019 年 6 月 1 日由 Feimann Group, Inc 支付的 1 万美元，汇款详情注明该笔款项为 ZNS3001190109ERUPY 发票项下货款。该发票序号与案涉 06Y 合同项下发票序号相同。

（三）法律适用

仲裁庭注意到，本案争议为国际货物买卖争议，根据《中华人民共和国涉外民事关系法律适用法》第四十一条关于

18

"当事人可以协议选择合同适用的法律。当事人没有选择的，适用履行义务最能体现该合同特征的一方当事人经常居所地法律或者其他与该合同有最密切联系的法律"之规定，且鉴于双方当事人在涉案六份合同中明确约定：本合同或与本合同相关的法律纠纷适用中华人民共和国法律。故，仲裁庭认定，解决本案争议应适用中国法律。

（四）案涉合同效力

仲裁庭注意到，双方系通过电子邮件的方式签署的涉案六份合同，其中，申请人在合同上由授权代表签字并加盖了公司印章，被申请人亦予以签署。鉴于被申请人虽经有效通知，未能出席庭审，也未提交任何答辩意见和异议，且涉案六份合同均已实际履行，故，仲裁庭认为，涉案六份合同均为双方当事人的真实意思表示，且合同内容不违反中国法律和行政法规的强制性规定，因此，仲裁庭认定，本案六份合同合法有效，对双方当事人均具有法律约束力。

（五）关于申请人的仲裁请求

1. 关于被申请人向申请人支付货款 566,937.10 美元的仲裁请求

首先，关于申请人所交服装是否符合合同约定的问题

根据前述认定，申请人在案涉六份合同项下共向被申请人交付了货值共计 577,237.10 美元的服装。与六份合同约定的货值 568,180 美元相比，在合同约定的溢短装+-3%范围内。

仲裁庭另注意到，被申请人在收到案涉六份合同项下服装后，并未在合同约定的异议期内向申请人提出数量或质量

异议，而仅在申请人多次催款后提出因种种原因要求延迟付款。后经申请人再三催款，被申请人曾于 2019 年 6 月 13 日在电子邮件中提及 "due to our products failed to meet with the requirement and regulation by CSPC (Consumer Safety Product Commission). We have to sent ALL the merchandise we ordered from you to a local factory to fix the problems to comply with the CSPC regulations prior to any sales to any store in the U.S."，但是其所提异议并未附具任何 CSPC 的规定或任何检验报告，也未说明申请人所交服装的具体不符之处；同时，在本案仲裁程序进行过程中，被申请人亦未就货物质量问题提出任何异议，也未提交任何证据材料证明货物存在质量问题。因此，仲裁庭无法认定申请人在案涉六份合同项下交付的货物存在质量问题，从而使得被申请人享有拒绝支付案涉合同项下货款的抗辩理由。

鉴于上述，仲裁庭认定，申请人已向被申请人交付了与合同约定数量与质量相符的服装，其有权向被申请人主张相应的货款。

其次，被申请人在本案项下已支付的货款。

仲裁庭注意到，申请人提交的证据显示，被申请人共向申请人支付了五笔汇款，其中注明为 ZNS3001180913ERUPY 发票项下的三笔货款共计 59,042.40 美元，申请人主张为 01Y 合同项下货款。鉴于该三笔款项注明的发票编号不在案涉六份合同的发票之内，且该三笔汇款的付款时间均在案涉六份合同约定的付款时间之前，因此，仲裁庭认可申请人的主张，即该三笔付款共计 59,042.40 美元不是案涉六份合同项下货

款。

鉴此，仲裁庭确认，被申请人在案涉六份合同项下已支付的货款为：2019 年 6 月 10 日支付的 06Y 合同项下的 1 万美元与 2018 年 8 月 30 日双方为测试被申请人账户支付的 300 美元，共计 10,300 美元。本案项下，被申请人尚有 566,937.10 美元未付。因此，仲裁庭支持申请人的此项仲裁请求。

2. 关于被申请人赔偿申请人自 2019 年 4 月 2 日起至被申请人付清全部货款之日止的利息损失，其中自 2019 年 4 月 2 日至 2019 年 8 月 19 日按中国人民银行同期贷款年利率 4.35%计算利息损失为 9,459.31 美元；自 2019 年 8 月 20 日起至被申请人付清货款之日止，以欠付货款本金为基数按照全国银行间同业拆借中心公布的贷款市场报价利率计算利息损失的仲裁请求。

仲裁庭认为，由于被申请人未能及时支付货款构成涉案合同项下的违约，申请人有权要求被申请人就其违约行为给申请人造成的资金占用利息损失予以赔偿。

关于利息的起算时间，鉴于案涉合同项下最后一次发货时间为 2019 年 1 月 31 日，根据合同关于发货后 60 天内电汇付款的约定，申请人将 2019 年 4 月 2 日，即最后一次发货后的第 61 天作为所有货款的资金损失起算点，仲裁庭认为是合理的，并予以采纳。

关于利率，申请人主张按照自 2019 年 4 月 2 日至 2019 年 8 月 19 日按中国人民银行同期贷款年利率 4.35%计算，自 2019 年 8 月 20 日起至被申请人付清货款之日止，以欠付货

款本金为基数按照全国银行间同业拆借中心公布的贷款市场报价利率计算利息损失。对此，仲裁庭认为，本案货款为美元，申请人以人民币贷款利率计算相应利息损失不妥，但鉴于自2000年9月开始我国改革外币存贷款利率管理体制，人民银行不再规定外币贷款利率及逾期利率的情况，以及申请人在中国融资所需平均成本等因素，仲裁庭酌定被申请人按照1%年利率向申请人支付相应的利息损失是比较适当的。

因此，仲裁庭裁定，被申请人应向申请人支付以货款566,937.10美元为基数，自2019年4月2日起至实际支付之日止，按照1%年利率计算的利息损失。

3．关于被申请人承担申请人律师费损失人民币98,000元的仲裁请求。

为此，申请人提供了相应的委托代理合同和已实际支付律师费人民币98,000元的转账凭证和发票。鉴于申请人实际委托律师参与了本案仲裁，且本案系由被申请人违约所致，故，仲裁庭认为，该部分律师费应全部由被申请人承担。

4．关于被申请人承担申请人公证费损失人民币9,000元的仲裁请求

鉴于申请人提供了相应的公证费发票，仲裁庭认为，鉴于本案系由被申请人违约所致，故，该部分费用亦应全部由被申请人承担。

5．本案仲裁费用由被申请人承担。

基于本案的责任认定以及仲裁请求的支持情况，根据《仲裁规则》第五十二条之规定，仲裁庭认为，本案仲裁费全部应由被申请人承担。

# 三、裁　决

综上，仲裁庭对本案裁决如下：

（一）被申请人向申请人支付货款 566,937.10 美元；

（二）被申请人赔偿申请人以货款 566,937.10 美元为基数，按照年利率 1%自 2019 年 4 月 2 日起计算至被申请人付清全部货款之日止的利息损失；

（三）被申请人承担申请人律师费损失人民币 98,000 元；

（四）被申请人承担申请人公证费损失人民币 9,000 元；

（五）本案仲裁费为人民币 142,439 元，全部由被申请人承担。该笔款项已由申请人全额仲裁委员会预缴予以冲抵，故被申请人还应向申请人支付人民币 142,439 元，以补偿申请人代其垫付的仲裁费。

以上被申请人应向申请人支付之款项，应于本裁决作出之日起 30 日内支付完毕。

**本裁决为终局裁决，自作出之日起生效。**

（此页无正文）

独任仲裁员：



二O二四年一月十五日于北京

Exhibit 2

1

北京思必锐®翻译有限责任公司
Beijing Spirit Translation Co., Ltd.

## **Declaration**
声明

We, Beijing Spirit Translation Co., Ltd., hereby declare the following:
北京思必锐翻译有限责任公司，特此证明：

1.  We are a legally established English translation professional service company and deemed to be qualified to handle the translation service from Chinese to English;
    思必锐翻译公司是合法成立的专业英语翻译服务公司，有资格进行中译英翻译服务；

2.  Files in the attached files are the product of our translation service;
    附件中确为我公司的翻译作品；

3.  All the translation done by our company is the true, accurate and correct translation of the original; but the source language shall prevail.
    我公司的所有翻译作品为原件的真实、准确和正确的译文，但以源语言内容为准；

4.  We certify that the above-mentioned declaration is true and correct to our best knowledge.
    特此证明上述声明内容真实准确。

Name of company (seal): Beijing Spirit Translation Co., Ltd.
公司名称（章）：北京思必锐翻译有限责任公司

Name of principal (signature):
负责人（签字）：刘迎

Date:
日期： 2021.6.8

地址： 北京市朝阳区东三环中路 39 号建外 SOHO 七号楼 1703 室，100022
Address: Room 1703, Tower 7, Jianwai SOHO, No. 39, East 3rd Ring Middle Road, District Chaoyang, Beijing, China, 100022
电话： (010) 58696855/56/57/06                           传真： (010) 58696700
Tel: (010) 58696855/56/57/06                             Fax: (010) 58696700

**www.bjspirit.com**

中国国际经济贸易仲裁委员会

**CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION**

**地址**: 北京市西城区桦皮厂胡同 2 号国际商会大厦六层
**邮编**: 100035
**电话**: (86-10) 82217788
**传真**: (86-10) 82217766, 64643500
**电子信箱**: info@cietac.org

**Add**: 6/F CCOIC Building, 2 Huapichang Hutong, Xicheng District, Beijing, 100035, P.R. China
**Tel**: (86-10) 82217788
**Fax**: (86-10) 82217766, 64643500
**Email**: info@cietac.org

(2021) China Mao Zhong Jing Zi No. 026417

**Regarding No. G20200765 Sales Contracts Dispute Case**

Claimant: Weihai Textile Group Import & Export Co., Ltd.

Arbitration Representative: Cheng Bing

With reference to the arbitration dispute case mentioned in the title, we now confirm that we received your mailed letter of application to issue a certificate of effectiveness of the award on April 14, 2021. Our reply is as follows:

The Arbitral Tribunal of this case had issued the Arbitral Award ([2021] China Mao Zhong Jing Cai Zi No.0151) on January 15, 2021, which took effect from the day it was issued based on Article 57 of the *Arbitration Law of the People's Republic of China*. On the same day, the Arbitration Court of CIETAC sent the letter ([2021] China Mao Zhong Jing Zi No.003231) to both parties by express mail, enclosed therewith were the Arbitral Award ([2021] China Mao Zhong Jing Cai Zi No.0151) in duplicate. It is confirmed that the Arbitral Award of this case sent to both parties has been duly delivered.

We send you herewith each of the following documents in one copy, please find:

1. A copy of the letter ([2021] China Mao Zhong Jing Zi No.003231), consistent with the original.
2. A copy of express waybill and shipment tracking form of the Arbitral Award sent to both parties, consistent with the originals.
3. A copy of the Arbitral Award ([2021] China Mao Zhong Jing Cai Zi No.0151) consistent with the original.
4. A notice of extending the period for issuing an arbitral award ([2020] China Mao Zhong Jing Zi No.116594) made on December 24, 2020.

Hereby reply the above.

Exhibit: As Mentioned Hereinabove.

CHINA INTERNATIONAL
ECONOMIC AND TRADE
ARBITRATION COMMISSION
Arbitration Court
April 16, 2021
1100000156402



中国国际经济贸易仲裁委员会

**CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION**

地址: 北京市西城区桦皮厂胡同 2 号国际
商会大厦六层
邮编: 100035
电话: （86-10）82217788
传真: （86-10）82217766，64643500
电子信箱: info@cietac.org

**Add**: 6/F CCOIC Building, 2 Huapichang
Hutong, Xicheng District, Beijing, 100035,
P.R. China
**Tel**: (86-10) 82217788
**Fax**: (86-10) 82217766, 64643500
**Email**: info@cietac.org

(2021) China Mao Zhong Jing Zi No. 003231

Enclosed No. G20200765 Sales Contract Dispute Case

Arbitral Award

Claimant: Weihai Textile Group Import & Export Co., Ltd.

Arbitration Representative: Wang Liwei, Chen Ruizhi

Respondent Eruption Holdings Inc.:

With reference to the arbitration dispute case mentioned in the title, we send you herewith the Arbitral Award ([2021] China Mao Zhong Jing Cai Zi No.0151) made by the Arbitral Tribunal on January 15, 2021 in duplicate, please find and forward them to your principal for their compliance.

In the meantime, enclosed herewith is a copy of the Opinion Feedback Form of China International Economic and Trade Arbitration Commission sent to both parties, please find and reply in time (please fill in the feedback form and mail it to us or scan the QR code at the top of the feedback form, fill in your opinions directly online). The opinions and suggestions of the parties will provide beneficial help to improve and enhance CIETAC's work going forward.

Hereby notify the above.

Exhibit: As Mentioned Hereinabove.

CHINA INTERNATIONAL
ECONOMIC AND TRADE
ARBITRATION COMMISSION
Arbitration Court
January 15, 2021
1100000156402

This copy is the same as the original.
CHINA INTERNATIONAL
ECONOMIC AND TRADE
ARBITRATION COMMISSION
CIETAC ⟨5⟩

4

CHINA EXPRESS INTERNATIONAL EXPRESS WAYBILL CT598604850CN

| | | | |
|---|---|---|---|
| POSTING DATE<br>January 15, 2021 | SHIPPING GATEWAY | | TO:<br>CITY: Cheyenne    COUNTRY: US |
| FROM:<br>Li Xuefei | PHONE (VERY IMPORTANT):<br>0086 82217788 | | COMPANY: Eruption Holdings Inc. |
| CITY: | | | ADDRESS:<br>1603 Capital Ave, Suite 314-957<br>Cheyenne, WY, 82001 US. |
| COMPANY: | COUNTRY: | | POST CODE:    PHONE (VERY IMPORTANT):<br>307-222-8069 |
| ADDRESS: | | | |
| POSTAL CODE: | CUSTOMER CODE: | | |

| | | | |
|---|---|---|---|
| IF SHIPMENT IS UNDELIVERABLE, ☐RETURN  ☐ABANDONED<br>I AGREE THAT IT SHOULD BE:<br>AND I ASSURE TO PAY FOR THE CHARGE OF RETURN | | VOLUME<br>L.    * H    *W    =    / cm³ | |
| TYPE OF SHIPMENT ☐GLOBAL EXPRESS  ☐ECONOMY EXPRESS<br>☐OTHER (PLS SPECIFY) | | DIMENSION<br>WEIGHT: | NO. OF PACKAGE | TOTAL<br>WEIGHT<br>/KG |
| ☑DOCUMENT  ☐PARCEL<br>FOR PARCEL PLEASE PROVIDE COMMERCIAL INVOICE OR PROFORMA INVOICE<br>AND CAREFULLY COMPLETE THE ITEMS BELOW IN ENGLISH. | | CHARGE:<br>¥ | ADD CHARGE:<br>¥ | TOTAL<br>CHARGE:<br>¥ |

| NAME AND DESCRIPTION<br>OF CONTENTS: | NO OF PCS | WEIGHT | DECLARED<br>VALUE | ORIGIN | ACCEPTED BY<br>(SIGNATURE)<br>January 18, 2021 | RECEIVER'S NAME<br>YEAR MONTH DAY HOUR<br>MINUTE |
|---|---|---|---|---|---|---|
| G20200765<br>NO. 003231 Letter, Arbitral Award and Opinion Feedback Form. | | | | | 01.22, 11:08, Duly Delivered!<br>CT598604850CN | |
| I ASSURE THE TRUTH OF THE ABOVE<br>INFORMATION AND I GUARANTEE THAT THE<br>SHIPMENT DOES NOT CONTAIN ANY DANGEROUS<br>AND PROHIBITED GOODS. | | SENDERS SIGNATURE<br><br>Li Xuefei | | | | |

PLEASE TYPE WITH TYPEWRITER. PLEASE READ CAREFULLY INSTRUCTIONS ON THE BACK OF THE BILL BEFORE THE COMPLETION.

*(left margin, vertical):* Beijing Yingge Bar Code Technology Development Co., Ltd  Tel: 010  81765597    Web: http://www.ems.com.cn
China Postal Express & Logistics Co., Ltd  Supervise the production

*(right margin, vertical):* First Couplet: FOR DATA INPUT

This copy is the same as the original.
CHINA INTERNATIONAL ECONOMIC AND
TRADE ARBITRATION COMMISSION
CIETAC

*(seal):* BEIJING SPIRIT TRANSLATION CO.  翻译专用章  TRANSLATION SEAL  <5>

# EMS WORLDWIDE EXPRESS MAIL SERVICE

SHIPMENT TRACKING SERVICES

| SHIPPER'S COMPANY & ADDRESS<br><br>CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION (CIETAC)<br><br>Li Xuefei | CONSIGNEE'S COMPANY & ADDRESS<br><br>US |
|---|---|
| country:<br>US | TRACKING NUMBER: GJ2021-54<br>DATE NO |
| Mail No.: CT598604850CN | POSTING DATE: January 18, 2021 |
| STATUS:<br>The mail has been duly delivered on January 22, 2021, at 11:08. | DELIVERY INFORMATION:<br>The package is delivered intactly. |
| Reason for delay/loss/others | Beijing Zizhuyuan Sales Department 2<br><br>2021 01.26.20 |

This copy is the same as the original.
CHINA INTERNATIONAL ECONOMIC AND
TRADE ARBITRATION COMMISSION
CIETAC



| 1197895662949 | EMS | |
|---|---|---|
| | Print time: January 15, 2021 12:01:3 | |
| Recipient: Wang Liwei, Chen Ruizhi    18060379380 | | Sender: Li Xuefei |
| Shandong Oriental Future Law Firm | | 010-82217788 |
| No.77 Qingdao Middle Road, Changfeng Commercial Plaza Block A | | 6/F CCOIC Building, 2 Huapichang Hutong, Xicheng District, |
| 4th Floor, Huancui District, Weihai. | | Beijing, 100035, P.R. China |
| Case Number: G20200765 | Package Number: | Weight (KG): 0.3 |
| Package Information: NO. 003231 Letter, Arbitral Award and Opinion Feedback Form | | |
| Web: www.ems.com.cn    Customer Tel: 11183 | | |

This copy is the same as the original.
CHINA INTERNATIONAL ECONOMIC AND
TRADE ARBITRATION COMMISSION
CIETAC



# Express Mail Service Domestic Tracking

## Withdrawal or Tracking Application

### Jing Su Di Ju No. 261998

| |
|---|
| Application Matters: (The Applicant should choose the application matters and complete clearly)<br>√Track the following mails<br>□Withdraw the following mails<br>Mail Program: (Completed by the Applicant)<br>Mail Number: -1197895662949 Express Receipt & Delivery Bureau |
| Date of Mail Delivery: 01/18/2021<br>Recipient: Wang Liwei, Chen Ruizhi<br>Mailing Address: No.77 Qingdao Middle Road, Changfeng Commercial Plaza Block A 4th Floor, Huancui District, Weihai. |
| Address and Name of The Sender:<br>Li Xuefei<br>CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION/China Beijing |
| Please Complete When Applying For Tracking:<br>(Only fills in the applicant part when the applicant himself is the sender.)<br><br>Applicant Signature/Stamp: Li Xuefei 1/18/2021 |
| (Endorsement by The Acceptance Bureau)<br>√ The applicant has been informed of the tracking result.<br>Case Number: G20200765 (NO. 003231 Letter, Arbitral Award and Opinion Feedback Form) |
| -1197895662949 The details indicated by this application:<br>This mail has been duly delivered on 01.21.2021, at 9:49:11 AM. |
| Beijing Zizhuyuan Sales Department 2<br><br>2021 01.25.20 |

This copy is the same as the original.
CHINA INTERNATIONAL
ECONOMIC AND TRADE
ARBITRATION COMMISSION

中国国际经济贸易仲裁委员会

## CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

地址：北京市西城区桦皮厂胡同 2 号国际
商会大厦六层
邮编：100035
电话：（86-10）82217788
传真：（86-10）82217766，64643500
电子信箱：info@cietac.org

**Add**: 6/F CCOIC Building, 2 Huapichang
Hutong, Xicheng District, Beijing, 100035,
P.R. China
**Tel**: (86-10) 82217788
**Fax**: (86-10) 82217766, 64643500
**Email**: info@cietac.org

(2020) China Mao Zhong Jing Zi No. 116594

### G20200765 Sales Contract Dispute Case

### Notice of Extending the Period for Issuing Arbitral Award

Claimant: Weihai Textile Group Import & Export Co., Ltd.

Arbitration Representative: Wang Liwei, Chen Ruizhi

Respondent Eruption Holdings Inc.:

With reference to the arbitration dispute case mentioned in the title, due to the need of the arbitration procedure, the Arbitral Tribunal is unable to issue an award within the period stipulated in the Arbitration Rules, that is, before December 24, 2020. Therefore, the Arbitral Tribunal requests the President of the Arbitration Court of CIETAC to extend the period for issuing an arbitral award in this case.

The President of the Arbitration Court of CIETAC considers after study that the request of extending the period for issuing the arbitral award initiated by the Arbitral Tribunal is necessary and justified, therefore agrees and decides to extend the period for issuing an award in this case to January 25, 2021.

Hereby notify the above.

CC: Sole Arbitrator Wei Ziping.

CHINA INTERNATIONAL
ECONOMIC AND TRADE
ARBITRATION COMMISSION
翻译专用章
December 24, 2020
1100000135001

# 中国国际经济贸易仲裁委员会
## CHINA INTERNATIONAL ECONOMIC AND TRADE ARBITRATION COMMISSION

| | |
|---|---|
| 地址: 北京市西城区桦皮厂胡同2号国际商会大厦六层 | Add: 6/F CCOIC Building, 2 Huapichang Hutong, |
| 邮编: 100035 | Xicheng District, Beijing, 100035, P. R. China |
| 电话: (86-10)82217788 | Tel: (86-10)82217788 |
| 传真: (86-10)82217766, 64643500 | Fax: (86-10)82217766, 64643500 |
| 电子信箱: info@cietac.org | E-mail: info@cietac.org |

(2021) 中国贸仲京字第026417号

### 关于G20200765号销售合同争议案

申　请　人　威海纺织集团进出口有限责任公司
仲裁代理人　程冰

　　关于题述争议仲裁案, 兹确认于2021年4月14日收到你方通过邮件提交的申请开具裁决生效证明的函。本会现答复如下:

　　本案仲裁庭已于2021年1月15日作出 (2021) 中国贸仲京裁字第0151号裁决书, 根据《中华人民共和国仲裁法》第五十七条规定, 该裁决书自作出之日起生效。本会仲裁院于当日随 (2021) 中国贸仲京字第003231号函, 以特快专递方式向双方当事人寄送了本案 (2021) 中国贸仲京裁字第0151号裁决书各一式两份。经查, 向双方当事人寄送的本案裁决书均已妥投。

　　随函向你方转去下列文件各一式一份, 请查收:

　　1. 与原件无异的 (2021) 中国贸仲京字第003231号函复印件;

　　2. 与原件无异的向双方当事人寄送本案裁决书的快递单、查询单复印件;

　　3. 与原件无异的 (2021) 中国贸仲京裁字第0151号裁决书复印件;

　　4. 2020年12月24日的 (2020) 中国贸仲京字第116594号延长裁决作出期限的通知。

　　此复。

附件: 如文

# 中国国际经济贸易仲裁委员会
## CHINA INTERNATIONAL ECONOMIC AND TRADE
## ARBITRATION COMMISSION

| | |
|---|---|
| 地址: 北京市西城区桦皮厂胡同 2 号国际商会大厦六层 | Add: 6/F  CCOIC  Building,  2  Huapichang  Hutong, |
| 邮编: 100035 | Xicheng District, Beijing, 100035, P. R. China |
| 电话: (86-10)82217788 | Tel: (86-10)82217788 |
| 传真: (86-10)82217766, 64643500 | Fax: (86-10)82217766, 64643500 |
| 电子信箱: info@cietac.org | E-mail: info@cietac.org |

(2021) 中国贸仲京字第 003231 号

### 函寄 G20200765 号销售合同争议案
### 裁决书

申请人 威海纺织集团进出口有限责任公司

仲裁代理人 王丽伟 陈瑞志

被申请人 Eruption Holdings Inc.：

关于题述仲裁案,随函分别寄去仲裁庭于 2021 年 1 月 15 日作出的〔2021〕中国贸仲京裁字第 0151 号裁决书一式二份, 请查收并转交你方当事人, 请其遵照执行。

随函同时向双方当事人附寄《中国国际经济贸易仲裁委员会意见反馈表》一份, 请查收并及时反馈 (请填妥反馈表邮寄本会或请扫描反馈表上方的二维码后直接在线填写您的意见)。当事人的意见和建议将为本会今后工作的完善和提高提供有益的帮助。

特此通知。

附件: 如文





CHINA EXPRESS

中国速递国际快件发递单
INTERNATIONAL EXPRESS WAYBILL

CT598604850CN

收寄日期／POSTING DATE: 2021 年Y 1 月M 15 日D

出口口岸／SHIPPING GATEWAY

寄件人／FROM: 李雪飞

电话(非常重要)／PHONE (VERY IMPORTANT): 0086 82217788

城市／CITY

国家／COUNTRY

公司／COMPANY

地址／ADDRESS

邮政编码／POSTAL CODE

用户编码／CUSTOMER CODE

收件人／TO

城市／CITY: Cheyenne

国家(地区)／COUNTRY: US

公司／COMPANY: Eruption Holding Inc.

地址／ADDRESS: 1603 Capitol Ave, Suite 314-957 Cheyenne, WY. 82001, US

邮政编码／POSTAL CODE

电话(非常重要)／PHONE(VERY IMPORTANT): 307-222-8069

如快件无法投递，按选择 IF SHIPMENT IS UNDELIVERABLE, I AGREE THAT IT SHOULD BE: ☐ 退回 RETURNED 我保证支付退回的费用 AND I ASSURE TO PAY FOR THE CHARGE OF RETURN ☐ 放弃 ABANDONED

体积／VOLUME 长L x 高H x 宽W = 立方厘米／$cm^3$

快递种类 TYPE OF SHIPMENT: ☐ 全球快递 GLOBAL EXPRESS ☐ 经济快递 ECONOMY EXPRESS ☐ 其它(请详列) OTHERS (PLS SPECIFY)

体积重量／DIMENSION WEIGHT

件数／NO. OF PACKAGES

总重量／TOTAL WEIGHT 千克／KG

☑ 文件资料 DOCUMENT ☐ 物品 PARCEL

对于物品，寄件人须提供商业发票或形式发票并用英文详细填写以下栏目 FOR PARCEL, PLEASE PROVIDE COMMERCIAL INVOICE OR PROFORMA INVOICE AND CAREFULLY COMPLETE THE ITEMS BELOW IN ENGLISH

资费／CHARGE ¥

其它费用／ADD CHARGE ¥

费用总计／TOTAL CHARGE ¥

| 内件品名及详细说明 NAME & DESCRIPTION OF CONTENTS | 件数 NO. OF PCS | 重量 WEIGHT | 申报价值 DECLARED VALUE | 原产地 ORIGIN |
|---|---|---|---|---|
| G20200765<br>0032231号函、裁决书及意见反馈表 | | | | |

千克／KG 美元／USD

收寄人员签名／ACCEPTED BY (SIGNATURE): 2021 年Y 1 月M 18 日D

收件人签名／RECEIVER'S NAME 年Y 月M 日D 时H 分M

1.22 11:08 签收!

CT598604850CN

我保证上述申报内容真实及该件内未夹寄禁寄物品 I ASSURE THE TRUTH OF THE ABOVE DECLARATION AND I GUARANTEE THAT THE SHIPMENT DOES NOT CONTAIN ANY DANGEROUS AND PROHIBITED GOODS

寄件人签名／SENDER'S SIGNATURE: 李雪飞

请用打字机填写／PLEASE TYPE WITH TYPEWRITER 填写前请仔细阅读寄件人联后的说明／PLEASE READ CAREFULLY INSTRUCTION ON THE BACK OF THE BILL BEFORE THE COMPLETION

第1联：信息录入联／FOR DATA INPUT

中国邮政速递物流股份有限公司监制 网址：http://www.ems.com.cn

与原件无异

11

12



全球邮政特快专递
WORLDWIDE EXPRESS MAIL SERVICE

## 国际特快专递查询单
### SHIPMENT TRACKING SERVICES

| 寄件人姓名地址：<br>SHIPPER`S COMPANY & ADDRESS<br><br>中国国际经济贸易仲裁委员会(CIETAC)<br>李雪飞 | 收件人姓名地址：<br>CONSIGNEE`S COMPANY & ADDRESS |
|---|---|
| country: | US |
| US | 查询编号：GJ2021-54<br>DATE NO |
| 邮件号码:CT598604850CN | 收寄日期：2021-1-18 |
| STATUS<br>此邮件已于：<u>2021-1-22 11:08 妥投</u> | 妥投信息：<u>货物完好派送</u> |
| 延误/丢失/其它原因：<br>Reason for delay/loss/others | 北京<br>2021.01.26.20<br><br>此件与原件无异<br>经办单位签章：<br>C l |



**1197895662949**

打印时间: 2021-01-15 12:01: 3

收件: 王雷伟 陈瑞志 18660370300
山东众方永农装饰服务所
威海市环翠区青岛中路77号长盛商业广
场A座四楼

寄件: 李霞飞
010-82217788
北京市西城区钟鼓 广
胡同2号国际商会;
座六层

案件编号: G202(0765

件数:  重量(KB): 3

邮件信息: 000231号函、裁决书及意见反馈表

网址: www.ems.com.cn     客服电话: 11183

与原件无异
中国国际经济贸易仲裁委员会
C I E T A C

## 国内特快专递查邮件

### 撤回、查询申请书

京速递局第 261998 号

| |
|---|
| 申请事项：（申请人选择所申请事项并清楚填写）<br><br>√ 查询下列邮件<br><br>□ 撤回下列邮件<br><br>邮件节目：（由申请人填写）<br><br>邮件号码：-1197895662949 速递收寄局 |
| 邮件交寄日期：　-1/18/2021<br><br>收件人姓名：-王丽伟 陈瑞志<br><br>收件地址：　-威海市环翠区青岛中路 77 号长峰商业广场 A 座四楼 |
| 寄件人地址姓名：-李雪飞<br><br>　　　　　中国国际经济贸易仲裁委员会/中国　　北京 |
| 申请查询时请填写<br><br>（申请人为寄件人本人时只填写申请人项目）<br><br>申请人签章：　　李雪飞 1/18/2021 |
| （受理局批注）<br><br>√ 查询结果已通知申请人<br><br>案号：G20200765(003231 号函、裁决书及意见反馈表) |
| -1197895662949 此件传达的详细信息：<br><br>此票邮件已于-1/21/2021 9:49:11 AM 妥投 |





# 中国国际经济贸易仲裁委员会
## CHINA INTERNATIONAL ECONOMIC AND TRADE
## ARBITRATION COMMISSION

地址：北京市西城区桦皮厂胡同 2 号国际商会大厦六层 **Add**: 6/F  CCOIC  Building,  2  Huapichang  Hutong,
邮编：100035　　　　　　　　　　　　　　　　　　　　 Xicheng District, Beijing, 100035, P. R. China
电话：(86-10)82217788　　　　　　　　　　　　　　 **Tel**: (86-10)82217788
传真：(86-10)82217766, 64643500　　　　　　　 **Fax**: (86-10)82217766, 64643500
电子信箱：info@cietac.org　　　　　　　　　　　 **E-mail**: info@cietac.org

(2020) 中国贸仲京字第 116594 号

### G20200765 号销售合同争议案
### 延长裁决作出期限的通知

申请人 威海纺织集团进出口有限责任公司
仲裁代理人 王丽伟 陈瑞志

被申请人 Eruption Holdings Inc.:

　　关于题述争议仲裁案，因仲裁程序进行的需要，仲裁庭无法在《仲裁规则》规定的期限内，即在 2020 年 12 月 24 日以前作出裁决。因此，仲裁庭请求本会仲裁院院长将本案裁决作出的期限延长。

　　本会仲裁院院长经研究认为，仲裁庭要求延长裁决作出期限的请求确有必要且理由正当，故同意并决定将本案裁决作出的期限延长至 2021 年 1 月 25 日。

　　特此通知。





抄送：独任仲裁员 魏子平

Exhibit 3

1

# 北京思必锐®翻译有限责任公司
## Beijing Spirit Translation Co., Ltd.

### **Declaration**
声明

We, Beijing Spirit Translation Co., Ltd., hereby declare the following:
北京思必锐翻译有限责任公司，特此证明：

1.  We are a legally established English translation professional service company and deemed to be qualified to handle the translation service from Chinese to English;
    思必锐翻译公司是合法成立的专业英语翻译服务公司，有资格进行中译英翻译服务；

2.  Files in the attached files are the product of our translation service;
    附件中确为我公司的翻译作品；

3.  All the translation done by our company is the true, accurate and correct translation of the original; but the source language shall prevail.
    我公司的所有翻译作品为原件的真实、准确和正确的译文；但以源语言内容为准；

4.  We certify that the above-mentioned declaration is true and correct to our best knowledge.
    特此证明上述声明内容真实准确。

Name of company (seal): Beijing Spirit Translation Co., Ltd.
公司名称（章）：北京思必锐翻译有限责任公司

Name of principal (signature):
负责人（签字）：

Date:
日期：2021.6.4

地址： 北京市朝阳区东三环中路 39 号建外 SOHO 七号楼 1703 室，100022
Address: Room 1703, Tower 7, Jianwai SOHO, No. 39, East 3rd Ring Middle Road, District Chaoyang, Beijing, China, 100022
电话： (010) 58696855/56/57/06          传真： (010) 58696700
Tel: (010) 58696855/56/57/06            Fax: (010) 58696700

**www.bjspirit.com**

I, Ning Cong, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am the vice general manager of Weihai Textile Group Import & Export Co., Ltd. ("Weihai").

2.      I am familiar with the six Sales Contracts executed by Weihai and Eruption Holdings Inc. between October and December 2018.

3.      Annexed hereto are true and correct copies of the following documents:

**Exhibit 1**:     Contract 300118ERUP02Y dated October 10, 2018, between Weihai and Eruption Holdings Inc.

**Exhibit 2**:     Contract 300118ERUP03Y dated October 10, 2018, between Weihai and Eruption Holdings Inc.

**Exhibit 3**:     Contract 300118ERUP04Y dated October 10, 2018, between Weihai and Eruption Holdings Inc.

**Exhibit 4**:     Contract 300118ERUP05Y dated November 9, 2018, between Weihai and Eruption Holdings Inc.

**Exhibit 5**:     Contract 300118ERUP06Y dated November 9, 2018, between Weihai and Eruption Holdings Inc.

**Exhibit 6**:     Contract 300118ERUP07Y dated December 1, 2018, between Weihai and Eruption Holdings Inc.

I declare under penalty of perjury under the laws of the United States of America and the State of Wyoming that the foregoing is true and correct.

Executed on May 25, 2021, in Weihai, People's Republic of China.





3

本人，丛宁，根据美国法典第 28 卷第 1746 节规定作出如下证言：

1.　我在威海纺织集团进出口有限责任公司（"威海"）担任副总经理。

2.　本人熟悉威海与 Eruption Holdings Inc. 于 2018 年 10 月至 12 月之间签署的 6 份销售合同。

3.　随附为以下文件真实并准确的副本：

**附件 1：**　编号为 300118ERUP02Y 的合同，日期为 2018 年 10 月 10 日，由威海与 Eruption Holdings Inc. 签署。

**附件 2：**　编号为 300118ERUP03Y 的合同，日期为 2018 年 10 月 10 日，由威海与 Eruption Holdings Inc. 签署。

**附件 3：**　编号为 300118ERUP04Y 的合同，日期为 2018 年 10 月 10 日，由威海与 Eruption Holdings Inc. 签署。

**附件 4：**　编号为 300118ERUP05Y 的合同，日期为 2018 年 11 月 9 日，由威海与 Eruption Holdings Inc. 签署。

**附件 5：**　编号为 300118ERUP06Y 的合同，日期为 2018 年 11 月 9 日，由威海与 Eruption Holdings Inc. 签署。

**附件 6：**　编号为 300118ERUP07Y 的合同，日期为 2018 年 12 月 1 日，由威海与 Eruption Holdings Inc. 签署。

根据美国和怀俄明州的法律项下对伪证的规定，我声明上述证言是真实和准确的。

2021 年 5 月 25 日在中国威海签署。



# Exhibit 1

5

威海纺织集团进出口有限责任公司
## WEIHAI TEXTILE GROUP IMPORT AND EXPORT CO.,LTD
NO.16 SHICHANG AVENUE, WEIHAI, 264200 CHINA

TEL:     +86-631-5655381
FAX:     +86-631-5658088

## 销 售 合 同 / SALES CONTRACT

买方：
BUYER:   ERUPTION HOLDINGS INC.
TEL:     307-222-8069
FAX:     307-222-8069
ADD:     1603 CAPITOL AVE SUITE 314-957 CHEYENNE ,WY 82001

CONTRACT NO:   300118ERUP02Y
DATE:
2018/10/10
WEIHAI，CHINA

PAYS FREIGHT:   BUYER
EXIT FACTORY DATE: 25/12/2018
FIT SAMPLE DUE BY:  10 DAYS AFTER CONFIRM
T.O.P. DUE BY:  30 DAYS AFTER CONFIRM
MUST SUBMIT ALL TRIMS FOR APPROVAL
MUST SUBMIT ALL LAP DIPS FOR APPROVAL

经双方确认订立本合同，其条款如下：
THIS SALES CONTRACT IS MADE OUT AS PER THE FOLLOWING TERMS AND CONDITIONS
MUTUALLY CONFIRMED BY BOTH PARTIES

| 款号 STYLE | 标牌 LABEL | 颜色 COLOR | 商品描述 DESCRIPTION | SIZE RATIO PER/BOX | JUNIOR | | | | | | INSEAM | 单价 UNIT PRICE | 总价 TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 3 1 2% | 5 2 4% | 7 3 6% | 9 3 6% | 11 2 4% | 13 1 2% | | | |
| | | | | | | | 24PCS/BOX | | | | | | |
| BSP19101 | ESCOLOUR | MEDIUM BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD11.20 | USD13440.00 |
| BSP19102 | ESCOLOUR | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD12.60 | USD15120.00 |
| BSP19105 | ESCOLOUR | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD10.70 | USD12840.00 |
| BSP19106 | ESCOLOUR | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD11.50 | USD13800.00 |
| BSP19108 | ESCOLOUR | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD9.40 | USD11280.00 |
| BSP19110 | ESCOLOUR | LIGHT BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD9.80 | USD11760.00 |
| BSP19113 | ESCOLOUR | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD9.80 | USD11760.00 |
| | | | | SIZE | S | M | L | XL | XXL | XXXL | | | |
| BSP19200 | ESCOLOUR | MEDIUM BLUE | LADIES DENIM JACKET | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD10.00 | USD12000.00 |
| BSP19202 | ESCOLOUR | DARK BLUE | LADIES DENIM JACKET | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD10.00 | USD12000.00 |
| BSP19203 | ESCOLOUR | DARK BLUE | LADIES DENIM JACKET | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD10.00 | USD12000.00 |
| | | | TOTAL | 12000PCS | | | | | | | | | USD126000.00 |
| | | | (允许溢短装 QUANTITY ALLOWANCE +-3%) | | | | | | | | | | |

如按本合同条款运输工具由买方选订，卖方将在上述交货日期将货物备好,送至港口。

If a carrier is selected and booked by the Buyer itself in accordance with the terms of this contract, the seller will have the commodity ready for shipment

by such time of delivery .

(1) 装运标记：  按买方要求
SHIPPING MARK: As buyer require.

(2) 装运口岸 工厂就近港口
LOADING PORT :nearby the factory

1 -3   300118ERUP02Y

078

6

(3) 目的口岸： 洛杉矶

*DESTINATION PORT：LOS ANGELES*

(4) 付款条件： 发货后60天内电汇

*PAYMENT：  TT afer shipment 60days*

(5)包装： 按买方要求配比1-2-3-3-2-1，24件一箱，箱规见附件，单独包装袋，装上有要求警语. 如果对包装其他要求，买方应征得卖方同意并承担由此

增加的一切额外费用.

Packing:  As buyer required size Ratio: 1-2-3-3-2-1. case pack:24pcs. carton requirement see attachment.Individually poly-bagged with  child

suffocation warning printed, if buyer want to add other request on packing ,pls inform seller,and  buyer wwill bear the additional costs thus

incurred .

(6) 样板确认： 销售方在双方签字合同生效日后10天内提供试身样7码每色2件给买方；30天内提供TOP样7码每色5件给买方，所提供样衣为有偿提供，数量并入大货数量.

Sample  seller need to provide fit samples 2 pcs per color in size 7 to buyer  within 10 days after both sides signed in the contract;and to

approval:  provide TOP samples 5 pcs per color in size 7 to buyer within 30 days after both sides signed in the contract.All samples are provided for

payment. This part will be paid together with the bulk goods.

(7)单据： ~~卖方只向买方提供以下单据：~~

~~a)海运提单，空运单、空运时、空运时、铁路运输时、货物承运单据；~~     不续过输保险

~~b)商业发票；~~

~~c)装箱单；~~

倘若需要其他单据，如产地证、领事发票等，卖方可以根据要求提供，但费用应由买方承担.

Documents:  11

a)ocean bill of lading in case of shipment by sea or airway bill in case of shipment by air of cargo receipt in case of shipment by ral;

b)commerical invoice;

c)packing list;

If any additional document,such as certificate of origin,etc,is required,the Seller may provide as requested for the Buyer's account.

(8)风险： ~~货物的风险在贝付时候转移至买方：~~

~~a)海运时在其越过船胶、抛下挂钩时；~~

b)空运时在其移交空运承运人或代理人保管时；

c) 铁路运输时在其已交铁路保管时.

Risk of loss:  The risk of the commodity shall transfer to the buyer:

a)when it has passed over the rail of the vessel and been released from tackle in case of shipment by sea.

b)when it has been delivered into the custody of the air carrier or agent in case of shipment by air.

c)when it has been delivered into the custody of the railway.

2 -3   300118ERUP02Y

079

7

| (8) 品质/<br>数量异议: | 如买方提出异议，凡属品质异议应于货到目的口岸之日20天内提出，凡属数量异议应于货到目的口岸之日15天内提出，过期不受理。对所装货物所属任何异议，属于保险公司、轮船公司、其它有关运输机构或邮递机构的负责者，卖方不负任何责任。理赔只限于卖方在收到买方所在地声誉良好的商检机构或商会出具的商品品质检查报告，证明货物与合同不符后，对品质不符的货物按一比一更换或按照货物的损失程度和损耗折价将货物贬值。对数量不符的货物给予补足。无论哪种情况下，买方均不对货物的可销性或适用性负责，也不对任何损失赔偿负责包括但又不限于宜接的、间接的、附带的损失。如买方不能在合同规定的期限内将信用证开到或将开来的信用证不符合合同规定，而在按到卖方通知后，不能按期办妥改证，卖方有权撤销合同或延期交货，并有权提出索赔 |
|---|---|

Quality/Quantity Discrepancy: In case of quality discrepancy, claims shall be filed by the Buyer within 20 days after the arrival of the commodity at the port of destination, while for quantity discrepancy, claims shall be filed by the Buyer within 15 days after the arrival of the commodity at the port of destination. Otherwise no claim will be accepted. It is understood that the Seller shall not be liable for any discrepancy of the commodity shipped due to causes for which the insurance company, other transportation organization or post office are liable. The settlement of such claims is restricted to replacement of the non-conforming commodity on a one-to-one basis or devaluation of the commodity according to degree of inferiority and extent of damage in case of quality discrepancy or supply for the shortage in case of quantity discrepancy, after the Seller has received an inspection report on the commodity by sampling issued by a reputable inspection organization or chamber of commerce at the place where the Buyer is located,certifying the non-conformity thereof. In no event shall the Seller be held liable for the merchantability or fitness for any purpose,  nor shall it have any liability or reponsibility for damages of any kind whatsoever, including but not limited to any direct, indirect or collateral damages. In case the L/C or the advance payment does not reach the Seller within the time stipulated in the Contract or does not correspond to the Contract terms and the Buyer fails to amend its terms within the time limit after being notified by the Seller, the Seller has the right to cancel the Contract or to delay the delivery of the commodity as well as to lodge claims against the Buyer.

Objection to quality and quantity

(10)不可抗力:　本合同内所述全部或部分货物，如因不可抗力的原因，以致不能规约或不得不延期交货，卖方不负责任。但需向买方提供证明。

Force Majeure:　The Seller shall not be held liable for failure or delay in delivery of the entire lot or a portion of the commodity under this Contract in consequence of any force majeure incidents.But the seller must be provide relevant proof to buyer.

(11)仲裁条款:　在执行本合同中所产生的或者与合同有关的一切争执，由双方协商解决。如果协商后仍不能解决时，得提请仲裁。仲裁在中国进行，由中国国际经济贸易仲裁委员会，根据委员会得仲裁程序暂行规则进行仲裁。仲裁决定为最终决定，买卖双方都应服从。除仲裁委员会另有决定外，仲裁费用由败诉一方负担。本合同或与本合同相关的法律纠纷适用中华人民共和国法律，本合同条款以中文字为准。

Independent Arbitration Clause:　Any or all disputes arising from or in connection with the performance of the Contract shall be settled through negotiation by both parties, failing which they shall be submitted for arbitration.The arbitration shall tack place in China and shall be conducted by the China.International Economic and Trade Arbitration Commission in accordance with the provisional rules of procedures of the sadi commission. The arbitration award shall be final and binding upon both Buyer and Seller. Unless otherwise awarded  by the said arbitration commission, the arbitration fees shall be borne by the losing party. The Contract and all disputes concerning the contract shall be governed by laws of the People's Republic of China. And Contract in Chinese shall prevail.

(12)其他条款:　买方未付款时，货权仍然属于卖方所有。

Other Conditions:Before Buyer arrange the payment,the commodity still belong to Seller.

CONTRACTUAL TERMS AGREED BY BOTH SELLER & BUYER(PLEASE SIGN &E-MAIL TO elain.yang@dishang.com

买方(BUYER PLEASE SIGN):　　　　　　　　　　　卖方(SELLER):

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

PRESIDENT

3 - 3    300118ERUP02Y

# Exhibit 2

9

威海纺织集团进出口有限责任公司
## WEIHAI TEXTILE GROUP IMPORT AND EXPORT CO.,LTD
### NO.16 SHICHANG AVENUE, WEIHAI, 264200 CHINA

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

**TEL:** +86-631-5655381
**FAX:** +86-631-5658088

PRESIDENT

## 销售合同 / SALES CONTRACT

**BUYER:** ERUPTION HOLDINGS INC.
**TEL:** 307-222-8069
**FAX:** 307-222-8069
**ADD:** 1603 CAPITOL AVE SUITE 314-957 CHEYENNE ,WY 82001

**CONTRACT NO:** 300118ERUP03Y
**DATE:** 2018/10/10
WEIHAI，CHINA

PAYS FREIGHT: BUYER
EXIT FACTORY DATE: 30/12/2018
FIT SAMPLE DUE BY: 10 DAYS AFTER CONFIRM
T.O.P. DUE BY: 30 DAYS AFTER CONFIRM

经双方确认立本合同，具体条款如下：
THIS SALES CONTRACT IS MADE OUT AS PER THE FOLLOWING TERMS AND CONDITIONS MUTUALLY CONFIRMED BY BOTH PARTIES

| 款号 STYLE | 标牌 LABEL | 颜色 COLOR | 商品描述 DESCRIPTION | SIZE RATIO PER BOX | 1 | 3 | 5 | 7 | 9 | 11 | 13 | INSEAM | 单价 UNIT PRICE | 总价 TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | JUNIOR | | | | | | | | | |
| | | | | | | | | 24PCS/BOX | | | | | | | |
| FMGL0018J/L0018J | ESCOLOUR/GAZOZ | MEDIUM BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | | USD5.80 | USD6960.00 |
| FMGL0021J/L0021J | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | | USD5.80 | USD6960.00 |
| FMGL0022BJ/L0022BJ | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | | USD5.80 | USD6960.00 |
| FMGL0023J/L0023J | ESCOLOUR/GAZOZ | BLACK | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | | USD5.80 | USD6960.00 |
| FMGL0025J/L0025J | ESCOLOUR/GAZOZ | MEDIUM BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | | USD5.80 | USD6960.00 |
| FMGL0029J/L0029J | ESCOLOUR/GAZOZ | BLACK | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | | USD5.80 | USD6960.00 |
| FMGL0036J/L0036J | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | | USD5.80 | USD6960.00 |
| | | | | | | PLUS | | | | | | | | | |
| | | | | SIZE | 12 | 14 | 16 | 18 | 20 | 22 | 24 | | | |
| FMGL0018X/L0018X | ESCOLOUR/GAZOZ | MEDIUM BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | | USD6.50 | USD7800.00 |
| FMGL0021X/L0021X | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | | USD6.50 | USD7800.00 |
| FMGL0022BX/L0022BX | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | | USD6.50 | USD7800.00 |
| FMGL0023X/L0023X | ESCOLOUR/GAZOZ | BLACK | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | | USD6.50 | USD7800.00 |
| FMGL0026X/L0026X | ESCOLOUR/GAZOZ | MEDIUM BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | | USD6.50 | USD7800.00 |
| FMGL0029X/L0029X | ESCOLOUR/GAZOZ | BLACK | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | | USD6.50 | USD7800.00 |
| FMGL0036X/L0036X | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | | USD6.50 | USD7800.00 |
| | | | TOTAL | 16800PCS | | | | | | | | | | USD103320.00 |
| | | | 允许溢短装 QUANTITY ALLOWANCE +-3 % | | | | | | | | | | | |

如按本合同条款运输工具由买方选订，卖方将在上述交货日期将货物备好，运至港口。

1 -3   300118ERUP03Y

Δ= 10255.5


060

10

If a carrier is selected and booked by the Buyer itself in accordance with the terms of this contract, the seller will have the commodity ready for shipment by such time of delivery .

(1) 装运标记:  按买方要求

SHIPPING MARK: As buyer require.

(2) 装运口岸:工厂就近港口

LOADING PORT :nearby the facrory

(3) 目的口岸:  洛杉矶

DESTINATION PORT LOS ANGELES

(4) 付款条件:  发货后60天内电汇

PAYMENT : TT afer shipment 60days

(5)包装:  按买方要求配比1-2-3-3-2-1,24件一箱,箱规见附件,单独包装袋,袋上有要求警语.如果对包装其他要求,买方应征得卖方同意并承担由此增加的一切额外费用.

Packing: As buyer required size Ratio: 1-2-3-3-2-1. case pack:24pcs. carton requirement see attachment.Individually poly-bagged with child suffocation warning printed, if buyer want to add other request on packing ,pls inform seller,and  buyer wwill bear the additional costs thus incurred .

(6) 样板确认:  销售方在双方签字合同生效日后10天内提供试身样7码每款每色2件给买方; 30天内提供TOP样7码每款每色5件给买方, 所提供样衣为有偿提供, 数量并入大货数量.

Sample approval: seller need to provide fit samples per style per col 2 pcs in size 7 to buyer  within 10 days after both sides signed in the contract;and to provide TOP sample per style per col 5 pcs in size 7 to buyer within 30 days after both sides signed in the contract.All samples are provided for payment. This part will be paid together with the bulk goods.

(7)单据:  卖方只向买方提供以下单据:

a)海运时, 海运提单; 空运时, 空运单; 铁路运输时, 货物承运单据;

b)商业发票;

c)装箱单;

倘若需要其他单据,如产地证、领事发票等, 卖方可以根据要求提供, 但费用应由买方承担。

Documents: The Seller will only provide the Buyer with the following documents for the payment:

a)ocean bill of lading in case of shipment by sea or airway bill in case of shipment by air of cargo receipt in case of shipment by ral;

b)commerical invoice;

c)packing list;

If any additional document,such as certificate of origin,etc,is required,the Seller may provide as requested for the Buyer's account.

(8)风险:  货物的风险自以下时候转移至买方:

a)海运时在其越过船舷,摘下�011钩时;

b)空运时在其移交空运承运人或代理人保管时;

c)铁路运输时在其已交铁路保管时。

Risk of loss: The risk of the commodity shall transfer to the buyer:

a)when it has passed over the rail of the vessel and been released from tackle in case of shipment by sea.

b)when it has been delivered into the custody of the air carrier or agent in case of shipment by air.

c)when it has been delivered into the custody of the railway.

WUHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

PRESIDENT

2 -3  300118ERUP03Y

091
96

11

**(9) 品质/数量异议:** 如买方提出异议，凡属品质异议应于货到目的口岸之日起20天内提出，凡属数量异议应于货到目的口岸之日起15天内提出，过期不受理。对所装货物所提任何异议属于保险公司、轮船公司、其它有关运输机构或邮递机构所负责者，卖方不负任何责任。理赔只限于卖方在收到买方所在地声誉良好的商检机构或商会出具的商品抽样检查报告，证明货物与合同不符者，对品质不符的货物按一比一更换或按照货物的疵劣程度和损坏的范围将货物贬值，对数量不符的货物给于补足。无论哪种情况下，卖方均不对货物的可销性或适用性负责，也不对任何损失赔偿负责包括但又不限于直接的、间接的、附带的损失，如买方不能在合同规定的期限内将信用证开到或将预付款汇到，或者开来的信用证不符合合同规定，而在接到卖方通知后，不能按期办妥改证，卖方有权撤销合同或延期交货，并有权提出索赔。

**Objection to quality and quantity**

Quality/Quantity Discrepancy: In case of quality discrepancy, claims shall be filed by the Buyer within 20 days after the arrival of the commodity at the port of destination, while for quantity discrepancy, claims shall be filed by the Buyer within 15 days after the arrival of the commodity at the port of destination. Otherwise no claim will be accepted. It is understood that the Seller shall not be liable for any discrepancy of the commodity shipped due to causes for which the insurance company, other transportation organization or post office are liable. The settlement of such claims is restricted to replacement of the non-conforming commodity on a one-to-one basis or devaluation of the commodity according to degree of inferiority and extent of damage in case of quality discrepancy or supply for the shortage in case of quantity discrepancy, after the Seller has received an inspection report on the commodity by sampling issued by a reputable inspection organization or chamber of commerce at the place where the Buyer is located,certifying the non-conformity thereof. In no event shall the Seller be held liable for the merchantability or fitness for any purpose, nor shall it have any liability or reponsibility for damages of any kind whatsoever, including but not limited to any direct, indirect or collateral damages. In case the L/C or the advance payment does not reach the Seller within the time stipulated in the Contract or does not correspond to the Contract terms and the Buyer fails to amend its terms within the time limit after being notified by the Seller, the Seller has the right to cancel the Contract or to delay the delivery of the commodity as well as to lodge claims against the Buyer.

**(10)不可抗力:** 本合同内所述全部或部分货物，如因不可抗力的原因，以致不能履约或不得不延期交货，卖方不负责任。但需向买方提供证明。

**Force Majeure:** The Seller shall not be held liable for failure or delay in delivery of the entire lot or a portion of the commodity under this Contract in consequence of any force majeure incidents.But the seller must be provide relevant proof to buyer.

**(11)仲裁条款:** 在执行本合同中因产生的或者与合同有关的一切争执，由双方协商解决。如果协商后仍不能解决时，得提请仲裁。仲裁在中国进行，由中国国际经济贸易仲裁委员会，根据委员会得仲裁程序暂行规则进行仲裁。仲裁决定为最终决定，买卖双方都应服从。除仲裁委员会另有决定外，仲裁费用由败诉一方负担。本合同或与本合同相关的法律纠纷适用中华人民共和国法律，本合同条款以中文文本为准。

**Independent Arbitration Clause:**

Any or all disputes arising from or in connection with the performance of the Contract shall be settled through negotiation by both parties, failing which they shall be submitted for arbitration.The arbitration shall tack place in China and shall be conducted by the China.International Economic and Trade Arbitration Commission in accordance with the provisional rules of procedures of the sadi commission. The arbitration award shall be final and binding upon both Buyer and Seller. Unless otherwise awarded by the said arbitration commission, the arbitration fees shall be borne by the losing party. The Contract and all disputes concerning the contract shall be governed by laws of the People's Republic of China. And Contract in Chinese shall prevail.

**(12)其他条款:** 买方未付款时，货权仍然属于卖方所有。

Other Conditions:Before Buyer arrange the payment,the commodity still belong to Seller.

CONTRACTUAL TERMS AGREED BY BOTH SELLER & BUYER(PLEASE SIGN &E-MAIL TO

elain.vang@dishang.com

买方(BUYER PLEASE SIGN):

卖方(SELLER)



WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.LTD

PRESIDENT

3 -3   300118ERUP03Y



080

# Exhibit 3

13

威海纺织集团进出口有限责任公司
**WEIHAI TEXTILE GROUP IMPORT AND EXPORT CO.,LTD**
NO.16 SHICHANG AVENUE, WEIHAI, 264200 CHINA

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

TEL: +86-631-5655381
FAX: +86-631-5658088

PRESIDENT

BUYER: ERUPTION HOLDINGS INC.
TEL: 307-222-8069
FAX: 307-222-8069
ADD: 1603 CAPITOL AVE SUITE 314-957 CHEYENNE ,WY 82001

销售合同 / **SALES CONTRACT**
CONTRACT NO:  300118ERUP04Y
DATE:  2018/10/10
WEIHAI，CHINA

PAYS FREIGHT:  BUYER
EXIT FACTORY DATE: 20/12/2018
FIT SAMPLE DUE BY:  10 DAYS AFTER CONFIRM
T.O.P. DUE BY:  30 DAYS AFTER CONFIRM
MUST SUBMIT ALL TRIMS FOR APPROVAL
MUST SUBMIT ALL LAP DIPS FOR APPROVAL

经双方确认订立本合同，具体条款如下：
THIS SALES CONTRACT IS MADE OUT AS PER THE FOLLOWING TERMS AND CONDITIONS MUTUALLY CONFIRMED BY BOTH PARTIES

| 款号 STYLE | 标号 LABEL | 原色 COLOR | 商品描述 DESCRIPTION | 尺码比例 SIZE RATIO PER BOX | | | | | | | INSEAM | 单价 UNIT PRICE | 总价 TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | JUNIOR 24PCS/BOX | | | | | | | | | |
| FMGFSP1910J/FSP1910J | ESCOLOUR/GAZOZ | LIGHT BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD5.80 | USD6960.00 |
| FMGFSP1911J/FSP1911J | ESCOLOUR/GAZOZ | MEDIUM BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD5.80 | USD6960.00 |
| FMGFSP1912J/FSP1912J | ESCOLOUR/GAZOZ | MEDIUM BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD5.80 | USD6960.00 |
| FMGFSP1914J/FSP1914J | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD5.80 | USD6960.00 |
| FMGFSP1915J/FSP1915J | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD5.80 | USD6960.00 |
| FMGFSP1916J/FSP1916J | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD5.80 | USD6960.00 |
| FMGFSP1917J/FSP1917J | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD5.80 | USD6960.00 |
| FMGFSP1918J/FSP1918J | ESCOLOUR/GAZOZ | MEDIUM BALCH | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD5.80 | USD6960.00 |
| | | | | PLUS | | | | | | | | | |
| FMGFSP1910X/FSP1910X | ESCOLOUR/GAZOZ | LIGHT BLUE | LADIES DENIM PANTS | 1200 | 100 | 200 | 300 | 300 | 200 | 100 | | USD6.50 | USD7800.00 |
| FMGFSP1911X/FSP1911X | ESCOLOUR/GAZOZ | MEDIUM BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | USD6.50 | USD7800.00 |
| FMGFSP1912X/FSP1912X | ESCOLOUR/GAZOZ | MEDIUM BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | USD6.50 | USD7800.00 |
| FMGFSP1914X/FSP1914X | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | USD6.50 | USD7800.00 |
| FMGFSP1915X/FSP1915X | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | USD6.50 | USD7800.00 |
| FMGFSP1916X/FSP1916X | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | USD6.50 | USD7800.00 |
| FMGFSP1917X/FSP1917X | ESCOLOUR/GAZOZ | DARK BLUE | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | USD6.50 | USD7800.00 |
| FMGFSP1918X/FSP1918X | ESCOLOUR/GAZOZ | MEDIUM BALCH | LADIES DENIM PANTS | 1200 | 100 | 100 | 100 | 100 | 100 | 100 | | USD6.50 | USD7800.00 |
| | | | TOTAL | 19200PCS | | | | | | | | | USD118080.00 |

ESCOLOUR AND YAE EACH 9600PCS

(允许溢短数 QUANTITY ALLOWANCE +3 %)

1 -3 300118ERUP04Y

093

14

如按本合同条款运输工具由买方选订，买方将在上述交货日期将货物备好，送至港口。

If a carrier is selected and booked by the Buyer itself in accordance with the terms of this contract, the seller will have the commodity ready for shipment by such time of delivery .

**(1) 装运标记：** 按买方要求

SHIPPING MARK: As buyer require.

**(2) 装运口岸：** 工厂就近港口

LOADING PORT :nearby the facrory

**(3) 目的口岸：** 洛杉矶

DESTINATION POR' LOS ANGELES

**(4) 付款条件：** 发货后60天内电汇

PAYMENT : TT afer shipment 60days

**(5)包装：** 按买方要求配比1-2-3-3-2-1,24件一箱,箱规见附件,单独包装袋, 袋上有要求警语。如果对包装其他要求, 买方应征得卖方同意并承担由此增加的一切额外费用.

Packing: As buyer required size Ratio: 1-2-3-3-2-1. case pack:24pcs. carton requirement see attachment.Individually poly-bagged with  child suffocation warning printed, if buyer want to add other request on packing ,pls inform seller,and  buyer wwill bear the additional costs thus incurred .

**(6) 样板确 认： Sample approval:** 销售方在双方签字合同生效日10天内提供试身样7码每款每色2件给买方; 30天内提供TOP样7码每款每色5件给买方, 所提供样衣为有偿提供, 数量并入大货数量

seller need to provide fit samples per style per col 2 pcs in 7 size to buyer  within 10 days after both sides signed in the contract;and to provide TOP samples per style per col 5 pcs in 7 size to buyer within 30 days after both sides signed in the contract.All samples are provided for payment.  This part will

**(7)单据：** 卖方只向买方提供以下单据：

a) 海运时, 海运提单; 空运时, 空运单; 铁路运输时, 货物承运单据;

b) 商业发票;

c) 装箱单;

倘若需要其他单据, 如产地证、领事发票等, 卖方可以根据要求提供, 但费用应由买方承担.

Documents: The Seller will only provide the Buyer with the following documents for the payment:

a)ocean bill of lading in case of shipment by sea or airway bill in case of shipment by alr of cargo receipt in case of shipment by ral;

b)commerical invoice;

c)packing list;

If any additional document,such as certificate of origin,etc,is required,the Seller may provide as requested for the Buyer's account.

**(8)风险：** 货物的风险在以下时候转移至买方:

a) 海运时在其越过船舷, 摘下挂钩时;

b) 空运时在其移交空运承运人或代理人保管时;

c) 铁路运输时在其已交铁路保管时.

Risk of loss: The risk of the commodity shall transfer to the buyer:

a)when it has passed over the rail of the vessel and been released from tackle in case of shipment by sea.

b)when it has been delivered into the custody of the air carrier or agent in case of shipment by air.

c)when it has been delivered into the custody of the railway.

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

PRESIDENT

2 -3 300118ERUP04Y

15

(9) 品质/
数量异议：

如买方提出异议，凡属品质异议应于货到目的口岸之日20天内提出，凡属数量异议应于货到目的口岸之日起15天内提出，过期不受理。对所装货物所退任何异议，属于保险公司一轮船公司一其它有关运输机构或邮递机构所负责者，卖方不负任何责任。理赔只限于卖方在收到买方在地声誉良好的商检机构或商会出具的商品抽样检查报告，证明货物与合同不符合，对品质不符的货物按一比一更换或按照货物的疵劣程度和损坏的范围将货物贬值，对数量不符的货物给予补足。无论哪种情况下，买方均不对货物的可销性或适用性负责，也不对任何损失赔偿负责包括直又不限于直接的、同接的、附带的损失，如买方不能在合同规定的期限内将信用证开到或将预付款汇到，或者办开的信用证不符合合同规定，而在接到买方通知后，不能按期办买改证，卖方有权撤销合同或延期交货，并有权提出索赔

Objection to
quality and
quantity

Quality/Quantity Discrepancy: In case of quality discrepancy, claims shall be filed by the Buyer within 20 days after the arrival of the commodity at the port of destination, while for quantity discrepancy, claims shall be filed by the Buyer within 15 days after the arrival of the commodity at the port of destination. Otherwise no claim will be accepted. It is understood that the Seller shall not be liable for any discrepancy of the commodity shipped due to causes for which the insurance company, other transportation organization or post office are liable. The settlement of such claims is restricted to replacement of the non-conforming commodity on a one-to-one basis or devaluation of the commodity according to degree of inferiority and extent of damage in case of quality discrepancy or supply for the shortage in case of quantity discrepancy, after the Seller has received an inspection report on the commodity by sampling issued by a reputable inspection organization or chamber of commerce at the place where the Buyer is located,certifying the non-conformity thereof. In no event shall the Seller be held liable for the merchantability or fitness for any purpose, nor shall it have any liability or reponsibility for damages of any kind whatsoever, including but not limited to any direct, indirect or collateral damages. In case the L/C or the advance payment does not reach the Seller within the time stipulated in the Contract or does not correspond to the Contract terms and the Buyer fails to amend its terms within the time limit after being notified by the Seller, the Seller has the right to cancel the Contract or to delay the delivery of the commodity as well as to lodge claims against the Buyer.

(10) 不可抗力：

本合同内所述全部或部分货物，如因不可抗力的原因，以致不能履约或不得不延期交货，卖方不负责任。但需向买方提供证明。

Force Majeure:

The Seller shall not be held liable for failure or delay in delivery of the entire lot or a portion of the commodity under this Contract in consequence of any force majeure incidents.But the seller must be provide relevant proof to buyer.

(11) 仲裁条款：

在执行本合同中所产生的或者与合同有关的一切争执，应双方协商解决。如果协商后仍不能解决时，得提请仲裁。仲裁在中国进行，由中国国际经济贸易仲裁委员会，根据委员会各哥仲裁程序暂行规则进行仲裁。仲裁决定为最终决定。买卖双方都应服从。除仲裁委员会另有决定外，仲裁费用由败诉一方负担。本合同或与本合同相关的的法律纠纷适用于中华人民共和国法律，合同条款以中文文本为准。

Independent
Arbitration
Clause:

Any or all disputes arising from or in connection with the performance of the Contract shall be settled through negotiation by both parties. failing which they shall be submitted for arbitration The arbitration shall tack place in China and shall be conducted by the China.International Economic and Trade Arbitration Commission in accordance with the provisional rules of procedures of the said Commission. The arbitration award shall be final and binding upon both Buyer and Seller. Unless otherwise awarded  by the said arbitration commission, the arbitration fees shall be borne by the losing party. The Contract and all disputes concerning the contract shall be governed by laws of the People's Republic of China. And Contract in Chinese shall prevail.

(12) 其他条款：     买方未付款前，货权仍然属于卖方所有。

Other Conditions Before Buyer arrange the payment,the commodity still belong to Seller.

CONTRACTUAL TERMS AGREED BY BOTH SELLER & BUYER (PLEASE SIGN &E-MAIL TO

elain vang@dishang.com

买方(BUYER PLEASE SIGN):

卖方(SELLER):

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

PRESIDENT

3  -3  300118ERUP04Y


095

# Exhibit 4

17

威海纺织集团进出口有限责任公司
**WEIHAI TEXTILE GROUP IMPORT AND EXPORT CO.,LTD**
NO.16 SHICHANG AVENUE, WEIHAI, 264200 CHINA

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

PRESIDENT

TEL: +86-631-5655381
FAX: +86-631-5658088

销售合同 / **SALES CONTRACT**

| | |
|---|---|
| BUYER: **ERUPTION HOLDINGS INC.** | CONTRACT NO: 300118ERUP05Y |
| TEL: 307-222-8069 | DATE: 2018/11/9 |
| FAX: 307-222-8069 | WEIHAI, CHINA |
| ADD: 1603 CAPITOL AVE SUITE 314-957 CHEYENNE ,WY 82001 | |

PAYS FREIGHT: BUYER
EXIT FACTORY DATE: 15/01/2019
FIT SAMPLE DUE BY: 10 DAYS AFTER CONFIRM
T.O.P. DUE BY: 30 DAYS AFTER CONFIRM
MUST SUBMIT ALL TRIMS FOR APPROVAL
MUST SUBMIT ALL LAP DIPS FOR APPROVAL

经双方确认订立本合同，具体条款如下：
THIS SALES CONTRACT IS MADE OUT AS PER THE FOLLOWING TERMS AND CONDITIONS MUTUALLY CONFIRMED BY BOTH PARTIES

| 款号 STYLE | 标牌 LABEL | 颜色 COLOR | 货品描述 DESCRIPTION | SIZE RATIO PER BOX | JUNIOR | | | | | | | 单价 UNIT PRICE (USD) | 总价 TOTAL(USD) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 6 | 8 | 10 | 11 | 12 | 13 | 14 | | |
| | | | | | 32PCS/BOX | | | | | | | | |
| | | WHITE | PANTS | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $7.90 | $6,320.00 |
| KI19200 | KIZ | BLACK | PANTS | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $7.90 | $6,320.00 |
| | | GREY | PANTS | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $7.90 | $6,320.00 |
| | | WHITE | PANT WIDE LEG | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $7.40 | $5,920.00 |
| KI19201 | KIZ | BLACK | PANT WIDE LEG | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $7.40 | $5,920.00 |
| | | GREY | PANT WIDE LEG | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $7.40 | $5,920.00 |
| | | WHITE | LACE UP SIDE PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $7.60 | $6,080.00 |
| KI19202 | KIZ | BLACK | LACE UP SIDE PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $7.60 | $6,080.00 |
| | | GREY | LACE UP SIDE PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $7.60 | $6,080.00 |
| | | | TOTAL | 7200 | | | | | | | | | | $54,960.00 |
| | | | (允许溢短装 QUANTITY ALLOWANCE +-3 %) | | | | | | | | | | | |

如按本合同条款运输工具由买方选订，卖方将在上述交货日期将货物备好，送至港口。

If a carrier is selected and booked by the Buyer itself in accordance with the terms of this contract, the seller will have the commodity ready for shipment by such time of delivery .

(1) 装运标记： 按买方要求
SHIPPING MARK：As buyer require.

(2) 装运口岸： 工厂就近港口
LOADING PORT :nearby the facrory

(3) 目的口岸： 洛杉矶
DESTINATION PORT LOS ANGELES

1 -3 300118ERUP05Y

960

18

(4) 付款条件:  发货后60天内电汇

PAYMENT :   TT afer shipment 60days

(5)包装:   按买方要求配比1-2-2-3-3-2-2-1,32件一箱,箱规见附件,单独包装袋,袋上有要求窒语.如果对包装其他要求,买方应征得实方同意并承担由此增加的一切额外费用.

Packing:   As buyer required size Ratio: 1-2-2-3-3-2-2-1. case pack:32pcs. carton requirement see attachment.Individually poly-bagged with child suffocation warning printed, if buyer want to add other request on packing ,pls inform seller,and buyer wwill bear the additional costs thus incurred .

(6) 样板确认:   销售方在双方签字合同生效日10天内提供试身样10码每款每色2件给买方; 30天内提供TOP样10码每款每色5件给买方, 所提供样衣为有偿提供, 数量并入大货数量. 一箱销售人员的样品用荧色胶带封箱发往美国作为TOP样。RN号码为: 156590

Sample approval:   seller need to provide fit samples per style per col 2 pcs in 10 size to buyer  within 10 days after both sides signed in the contract;and to provide TOP samples per style per col 5 pcs in 10 size to buyer within 30 days after both sides signed in the contract.All samples are provided for payment. This part will be paid together with the bulk goods. One box of salesman sample shall be included per style and concealed with yellow tapes and ship to USA as T.O.P  RN. code :156590

(7)单据:   实方只向买方提供以下单据:

a) 海运时, 海运提单; 空运时, 空运单; 铁路运输时, 货物承运单据;

b) 商业发票;

c)装箱单;

倘若需要其他单据, 如产地证、领事发票等, 卖方可以根据要求提供, 但费用应由买方承担。

Documents:   The Seller will only provide the Buyer with the following documents for the payment:

a)ocean bill of lading in case of shipment by sea or airway bill in case of shipment by air of cargo receipt in case of shipment by ral;

b)commerical invoice;

c)packing list;

If any additional document,such as certificate of origin,etc,is required,the Seller may provide as requested for the Buyer's account.

(8)风险:   货物的风险在以下时候转移至买方:

a)海运时在其越过船舷, 摘下挂钩时;

b)空运时在其移交空运送人或代理人保管时;

c) 铁路运输时在其己交铁路保管时。

Risk of loss:   The risk of the commodity shall transfer to the buyer:

a)when it has passed over the rail of the vessel and been released from tackle in case of shipment by sea.

b)when it has been delivered into the custody of the air carrier or agent in case of shipment by air.

c)when it has been delivered into the custody of the railway.

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

PRESIDENT

2 -3 300118ERUP05Y

(9) 品质/
数量异议：  如买方提出异议，凡属品质异议应于货到目的口岸之日20天内提出，凡属数量异议应于货到目的口岸之日起15天内提出，过期不受理。对所装货物所提任何异议属于保险公司、轮船公司、其它有关运输机构或邮递机构所负责者，卖方不负任何责任。理赔只限于卖方在收到买方所在地声誉良好的商检机构或商会出具的商品抽样检查报告，证明货物与合同不符后。对品质不符的货物按一比一更换或按照货物的疵劣程度和损坏的范围将货物贬值，对数量不符的货物给于补足。无论哪种情况下，买方均不对货物的可销性或适用性负责，也不对任何损失赔偿负责包括但又不限于直接的、间接的、附带的损失，如买方不能在合同规定的期限内将信用证开到或将预付款汇到，或者开未的信用证不符合合同规定，而在接到卖方通知后，不能按期办妥改证，卖方有权撤销合同或延期交货，并有权提出索赔。

**Objection to quality and quantity:**  Quality/Quantity Discrepancy: In case of quality discrepancy, claims shall be filed by the Buyer within 20 days after the arrival of the commodity at the port of destination, while for quantity discrepancy, claims shall be filed by the Buyer within 15 days after the arrival of the commodity at the port of destination. Otherwise no claim will be accepted. It is understood that the Seller shall not be liable for any discrepancy of the commodity shipped due to causes for which the insurance company, other transportation organization or post office are liable. The settlement of such claims is restricted to replacement of the non-conforming commodity on a one-to-one basis or devaluation of the commodity according to degree of inferiority and extent of damage in case of quality discrepancy or supply for the shortage in case of quantity discrepancy, after the Seller has received an inspection report on the commodity by sampling issued by a reputable inspection organization or chamber of commerce at the place where the Buyer is located, certifying the non-conformity thereof. In no event shall the Seller be held liable for the merchantability or fitness for any purpose, nor shall it have any liability or reponsibility for damages of any kind whatsoever, including but not limited to any direct, indirect or collateral damages. In case the L/C or the advance payment does not reach the Seller within the time stipulated in the Contract or does not correspond to the Contract terms and the Buyer fails to amend its terms within the time limit after being notified by the Seller, the Seller has the right to cancel the Contract or to delay the delivery of the commodity as well as to lodge claims against the Buyer.

(10)不可抗力:  本合同内所述全部或部分货物，如因不可抗力的原因，以致不能起动或不得延期交货，卖方不负责任。但需向买方提供证明。

**Force Majeure:**  The Seller shall not be held liable for failure or delay in delivery of the entire lot or a portion of the commodity under this Contract in consequence of any force majeure incidents. But the seller must be provide relevant proof to buyer.

(11)仲裁条款:  在执行本合同中所产生的或者与合同有关的一切争执，由双方协商解决。如果协商后仍不能解决时，得提请仲裁。仲裁在中国进行，由中国国际经济贸易仲裁委员会，根据委员会仲裁程序暂行规则进行仲裁。仲裁决定为最终决定，买卖双方都应服从。除仲裁委员会另有决定外，仲裁费用由败诉一方负担。本合同或与本合同相关的法律纠纷适用中华人民共和国法律，本合同条款以中文文本为准。

**Independent Arbitration Clause:**  Any or all disputes arising from or in connection with the performance of the Contract shall be settled through negotiation by both parties, failing which they shall be submitted for arbitration. The arbitration shall tack place in China and shall be conducted by the China International Economic and Trade Arbitration Commission in accordance with the provisional rules of procedures of the sadi commission. The arbitration award shall be final and binding upon both Buyer and Seller. Unless otherwise awarded by the said arbitration commission, the arbitration fees shall be borne by the losing party. The Contract and all disputes concerning the contract shall be governed by laws of the People's Republic of China. And Contract in Chinese shall prevail.

(12)其他条款:  买方未付款时，货权仍然属于卖方所有。

Other Conditions: Before Buyer arrange the payment, the commodity still belong to Seller.

CONTRACTUAL TERMS AGREED BY BOTH SELLER & BUYER (PLEASE SIGN &E-MAIL TO

elain.yang@djshang.com

买方(BUYER PLEASE SIGN):

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

卖方(SELLER)   PRESIDENT

3 - 3  300118ERUP05Y

100

# Exhibit 5

21

威海纺织集团进出口有限责任公司
**WEIHAI TEXTILE GROUP IMPORT AND EXPORT CO.,LTD**
NO.16 SHICHANG AVENUE, WEIHAI, 264200 CHINA

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

PRESIDENT

TEL:   +86-631-5655381
FAX:   +86-631-5658088

销售合同 / **SALES CONTRACT**

BUYER:   **ERUPTION HOLDINGS INC.**
TEL:   307-222-8069
FAX:   307-222-8069
ADD:   1603 CAPITOL AVE SUITE 314-957 CHEYENNE ,WY 82001

CONTRACT NO:   300118ERUP06Y
DATE:   2018/11/9
   WEIHAI, CHINA

PAYS FREIGHT:   BUYER
EXIT FACTORY DATE:   15/01/2019
FIT SAMPLE DUE BY:   10 DAYS AFTER CONFIRM
T.O.P. DUE BY:   30 DAYS AFTER CONFIRM
MUST SUBMIT ALL TRIMS FOR APPROVAL
MUST SUBMIT ALL LAP DIPS FOR APPROVAL

经双方确认订立本合同,具体条款如下:
THIS SALES CONTRACT IS MADE OUT AS PER THE FOLLOWING TERMS AND CONDITIONS MUTUALLY CONFIRMED BY BOTH PARTIES

| 款号 STYLE | 标唛 LABEL | 颜色 COLOR | 商品描述 DESCRIPTION | SIZE RATIO PER BOX | JUNIOR 7 2 | 8 4 | 9 4 | 10 6 | 11 6 | 12 4 | 13 4 | 14 2 | 单价 UNIT PRICE (USD) | 总价 TOTAL(USD) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 32PCS/BOX | | | | | | |
| KI19108 | KIZ | PINK | BATWING TEE | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.50 | $4,600.00 |
| | | RED | BATWING TEE | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.50 | $4,600.00 |
| | | CORAL | BATWING TEE | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.50 | $4,600.00 |
| | | YELLOW | BATWING TEE | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.50 | $4,600.00 |
| | | WHITE | BATWING TEE | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $6.50 | $5,200.00 |
| KI19204 | KIZ | PINK | SOFT JODPHER PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $6.50 | $5,200.00 |
| | | RED | SOFT JODPHER PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $6.50 | $5,200.00 |
| | | CORAL | SOFT JODPHER PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $6.50 | $5,200.00 |
| | | YELLOW | SOFT JODPHER PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $6.50 | $5,200.00 |
| | | WHITE | SOFT JODPHER PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $9.80 | $8,400.00 |
| KI19110 | KIZ | WHITE | ZIP FRNT HOODY | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $9.80 | $8,400.00 |
| | | BLACK | ZIP FRNT HOODY | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $9.80 | $8,400.00 |
| | | GREY | ZIP FRNT HOODY | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $9.30 | $7,440.00 |
| KI19111 | KIZ | WHITE | PULLOVER HOODY | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $9.30 | $7,440.00 |
| | | BLACK | PULLOVER HOODY | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $9.30 | $7,440.00 |
| | | GREY | PULLOVER HOODY | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.90 | $4,740.00 |
| KI19112 | KIZ | WHITE | CROP TEE | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.90 | $4,740.00 |
| | | BLACK | CROP TEE | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.90 | $4,740.00 |
| | | GREY | CROP TEE | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $9.00 | $7,200.00 |
| KI19113 | KIZ | WHITE | CROP ZIP FRNT HOODY | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $9.00 | $7,200.00 |
| | | BLACK | CROP ZIP FRNT HOODY | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | | |

1 - 4 300118ERUP06Y


101

22

| | | GREY | CROP ZIP FRNT HOODY | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $9.00 | $7,200.00 |
| | | | TOTAL | 17600 | | | | | | | | | | $132,340.00 |
| | | | (允许增减短装 QUANTITY ALLOWANCE +-3 %) | | | | | | | | | | | |

如按本合同条款运输工具由买方选订，卖方将在上述交货日期将货物备好，送至港口。

If a carrier is selected and booked by the Buyer itself in accordance with the terms of this contract, the seller will have the commodity ready for shipment

by such time of delivery .

(1) 装运标记： 按买方要求

SHIPPING MARK：As buyer require.

(2) 装运口岸： 工厂就近港口

LOADING PORT :nearby the facrory

(3) 目的口岸： 洛杉矶

DESTINATION PORT LOS ANGELES

(4) 付款条件： 发货后60天内电汇

PAYMENT : TT afer shipment 60days

(5) 包装： 按买方要求配比1-2-2-3-3-2-2-1,32件一箱, 箱规见附件,单独包装袋, 袋上有要求警语. 如果对包装其他要求, 买方应征得卖方同意并承担由此增加的一切额外费用.

Packing: As buyer required size Ratio: 1-2-2-3-3-2-2-1. case pack:32pcs. carton requirement see attachment.Individually poly-bagged with  child suffocation warning printed, if buyer want to add other request on packing ,pls inform seller,and  buyer wwill bear the additional costs thus incurred .

(6) 样板确认： 销方在双方签字合同生效后10天内提供试身样10码每款每色2件给买方; 30天内提供TOP样10码每款每色5件给买方, 所提供样衣为有偿提供, 数量并入大货数量. 一箱销售人员的样品用黄色胶带封箱发往美国作为TOP样. RN号码为: 156590

Sample approval: seller need to provide fit samples per style per col 2 pcs in 10 size to buyer  within 10 days after both sides signed in the contract;and  to provide TOP samples per style per col 5 pcs in 10 size to buyer within 30 days after both sides signed in the contract.All samples are provided for payment. This part will be paid together with the bulk goods. One box of salesman sample shall be included per style and concealed with yellow tapes and ship to USA as T.O.P  RN. code :156590

(7) 单据： 卖方只向买方提供以下单据：

a) 海运时, 海运提单; 空运时, 空运单; 铁路运输时, 货物承运单据;

b) 商业发票；

c) 装箱单；

倘若需要其他单据, 如产地证、领事发票等, 卖方可以根据要求提供, 但费用应由买方承担。

Documents: The Seller will only provide the Buyer with the following documents for the payment:

a)ocean bill of lading in case of shipment by sea or airway bill in case of shipment by air of cargo receipt in case of shipment by rail

b)commerical invoice;

c)packing list;

If any additional document,such as certificate of origin,etc,is required,the Seller may provide as requested for the Buyer's account.

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.LTD

PRESIDENT

2 -4 300118ERUP06Y

102

(8)风险: 货物的风险在以下时候转移至买方:
a)海运时在其越过船舷,摘下挂钩时;
b)空运时在其移交空运承运人或代理人保管时;
c)铁路运输时在其已交铁路保管时。

Risk of loss: The risk of the commodity shall transfer to the buyer:
a)when it has passed over the rail of the vessel and been released from tackle in case of shipment by sea.
b)when it has been delivered into the custody of the air carrier or agent in case of shipment by air.
c)when it has been delivered into the custody of the railway.

(9) 品质/数量异议: 如买方提出异议,凡属品质异议应于货到目的口岸之日20天内提出,凡属数量异议应于货到的口岸之日起15天内提出,过期不受理。对所装货物所提任何异议属于保险公司、轮船公司、其它有关运输机构或邮递机构所负责者,卖方不负任何责任。理赔只限于卖方在收到买方所在地产省良好的商检机构或商会出具的商品抽样检查报告、证明货物与合同不符后,对品质不符的货物按一比一更换或按照货物的疵劣程度和损坏的范围将货物贬值,对数量不符的货物给予补足。无论哪种情况下,买方均不对货物的可销性或适用性负责,也不对任何损失赔偿负责包括但又不限于直接的、间接的、附带的损失,如买方不能在合同规定的期限内将信用证开到或将预付款汇到,或者开来的信用证不符合合同规定,而在接到卖方通知后,不能按期办法更改证,卖方有权撤销合同或延期交货,并有权提出索赔。

Quality/Quantity Discrepancy: In case of quality discrepancy, claims shall be filed by the Buyer within 20 days after the arrival of the commodity at the port of destination, while for quantity discrepancy, claims shall be filed by the Buyer within 15 days after the arrival of the commodity at the port of destination. Otherwise no claim will be accepted. It is understood that the Seller shall not be liable for any discrepancy of the commodity shipped due to causes for which the insurance company, other transportation organization or post office are liable. The settlement of such claims is restricted to replacement of the non-conforming commodity on a one-to-one basis or devaluation of the commodity according to degree of inferiority and extent of damage in case of quality discrepancy or supply for the shortage in case of quantity discrepancy, after the Seller has received an inspection report on the commodity by sampling issued by a reputable inspection organization or chamber of commerce at the place where the Buyer is located,certifying the non-conformity thereof. In no event shall the Seller be held liable for the merchantability or fitness for any purpose, nor shall it have any liability or reponsibility for damages of any kind whatsoever, including but not limited to any direct, indirect or collateral damages. In case the L/C or the advance payment does not reach the Seller within the time stipulated in the Contract or does not correspond to the Contract terms and the Buyer fails to amend its terms within the time limit after being notified by the Seller, the Seller has the right to cancel the Contract or to delay the delivery of the commodity as well as to lodge claims against the Buyer.

Objection to quality and quantity

(10)不可抗力: 本合同内所述全部或部分货物,如因不可抗力的原因,以致不能照约或不得不延期交货,卖方不负责任。但需向买方提供证明。

Force Majeure: The Seller shall not be held liable for failure or delay in delivery of the entire lot or a portion of the commodity under this Contract in consequence of any force majeure incidents.But the seller must be provide relevant proof to buyer.

(11)仲裁条款: 在执行本合同中所产生的或者与合同有关的一切争执,应由双方协商解决。如果协商后仍不能解决时,得提请仲裁。仲裁在中国进行,由中国国际经济贸易仲裁委员会,根据委员会仲裁程序暂行规则进行仲裁。仲裁决定为最终决定,买卖双方都应服从。除仲裁委员会另有决定外,仲裁费用由败诉一方负担。本合同或与本合同相关的法律纠纷适用中华人民共和国法律,本合同条款以中文文本为准。

Independent Arbitration Clause: Any or all disputes arising from or in connection with the performance of the Contract shall be settled through negotiation by both parties, failing which they shall be submitted for arbitration.The arbitration shall tack place in China and shall be conducted by the China International Economic and Trade Arbitration Commission in accordance with the provisional rules of procedures of the sadi commission. The arbitration award shall be final and binding upon both Buyer and Seller. Unless otherwise awarded by the said arbitration commission, the arbitration fees shall be borne by the losing party. The Contract and all disputes concerning the contract shall be governed by laws of the People's Republic of China. And Contract in Chinese shall prevail.

3 -4 300118ERUP06Y

24

(12)其他条款：    买方未付款时，货权仍然属于卖方所有。

Other Conditions: Before Buyer arrange the payment,the commodity still belong to Seller.

CONTRACTUAL TERMS AGREED BY BOTH SELLER & BUYER(PLEASE SIGN &E-MAIL TO elain.vang@dishang.com

买方(BUYER PLEASE SIGN):

卖方(SELLER):

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

PRESIDENT

4 -4 300118ERUP06Y

# Exhibit 6

威海纺织集团进出口有限责任公司

**WEIHAI TEXTILE GROUP IMPORT AND EXPORT CO.,LTD**

NO.16 SHICHANG AVENUE, WEIHAI, 264200 CHINA

TEL:      +86-631-5655381
FAX:      +86-631-5658088

## 销 售 合 同 / SALES CONTRACT

| | | | |
|---|---|---|---|
| BUYER:   ERUPTION HOLDINGS INC. | CONTRACT NO:300118ERUP07Y  (FMGSP2019F—DS) | PAYS FREIGHT: | BUYER |
| TEL:     307-222-8069 | DATE:2018/12/1 | EXIT FACTORY DATE: | 25/01/2019 |
| FAX:     307-222-8069 | SIGNED ADDRESS:WEIHAI . SHANDONG | FIT SAMPLE DUE BY: | 10 DAYS AFTER CONFIRM |
| ADD:     1603 CAPITOL AVE SUITE 314-957 CHEYENNE ,WY 82001 | | T.O.P. DUE BY: | 30 DAYS AFTER CONFIRM |

经双方确认立本合同，具体条款如下：
THIS SALES CONTRACT IS MADE OUT AS PER THE FOLLOWING TERMS AND CONDITIONS MUTUALLY CONFIRMED BY BOTH
PARTIES

MUST SUBMIT ALL TRIMS FOR APPROVAL

MUST SUBMIT ALL LAP DIPS FOR APPROVAL

| 款号 STYLE | 标牌 LABEL | 颜色 COLOR | 商品描述 DESCRIPTION | SIZE RATIO PER BOX | 7 1% 2% | 8 3% 4% | 9 2% 2% | JUNIOR 10 3% 6% | 11 3% 16% | 12 2% 4% | 13 2% 4% | 14 1% 2% | 单价 UNIT PRICE (USD) | 总价 TOTAL(USD) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | 32PCS/BOX | | | | | | |
| ZQ201 | KIZ | WHITE | SHORT PANTS | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.65 | $4,520.00 |
| | | BLACK | SHORT PANTS | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.65 | $4,520.00 |
| | | GREY | SHORT PANTS | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $5.65 | $4,520.00 |
| ZQ202 | KIZ | WHITE | MOTO PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $8.30 | $6,640.00 |
| | | BLACK | MOTO PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $8.30 | $6,640.00 |
| | | GREY | MOTO PANT | 800 | 50 | 100 | 100 | 150 | 150 | 100 | 100 | 50 | $8.30 | $6,640.00 |
| | | | TOTAL | 4800 | | | | | | | | | | $33,480.00 |
| | | | (允许溢短装 QUANTITY ALLOWANCE +3%) | | | | | | | | | | | |

如按本合同条款运输工具由买方选订，卖方将在上述交货日期将货物备好，送至港口。

If a carrier is selected and booked by the Buyer itself in accordance with the terms of this contract, the seller will have the commodity ready for shipment
by such time of delivery .

(1) 装运标记:    按买方要求
SHIPPING MARK: As buyer require.
(3) 目的口岸:    洛杉矶
DESTINATION PORT LOS ANGELES
(4) 付款条件:    发货后60天内电汇

   PAYMENT :    TT afer shipment 60days

(2) 装运口岸:    工厂就近港口
LOADING PORT :nearby the facrory

1 -3 300118ERUP07Y

27

(5)包装:
按买方要求配比1-2-2-3-3-2-2-1,32件一箱,箱规见附件,单独包装袋,袋上有要求警语,如果对包装其他要求,买方应征得卖方同意并承担由此增加的一切额外费用.

Packing:
As buyer required size Ratio: 1-2-2-3-3-2-2-1. case pack:32pcs. carton requirement see attachment.Individually poly-bagged with  child suffocation warning printed, if buyer want to add other request on packing ,pls inform seller,and  buyer wwill bear the additional costs thus incurred .

销售方在双方签字合同生效日10天内提供试身样10码每款每色2件给买方;30天内提供TOP样10码每款每色5件给买方,所提供样衣为有偿提供,数量并入大货数量.一箱销售人员的样品用黄色胶带封箱发往美国作为TOP样。 RN号码为: 156590

(6) 样板确认:
Sample approval:
seller need to provide fit samples per style per col 2 pcs in 10 size to buyer  within 10 days after both sides signed in the contract;and to provide TOP samples per style per col 5 pcs in 10 size to buyer within 30 days after both sides signed in the contract.All samples are provided for payment. This part will be paid together with the bulk goods. One box of salesman sample shall be included per style and concealed with yellow tapes and ship to USA as T.O.P  RN : code :156590

(7)单据:
卖方只向买方提供以下单据:

a)海运时,海运提单:空运时,空运单;铁路运输时,货物承运单据;

b)商业发票;

c)装箱单;

倘若需要其他单据,如产地证、领事发票等,卖方可以根据要求提供,但费用应由买方承担.

Documents:
The Seller will only provide the Buyer with the following documents for the payment:

a)ocean bill of lading in case of shipment by sea or airway bill in case of shipment by air of cargo receipt in case of shipment by ral;

b)commerical invoice;

c)packing list;

If any additional document,such as certificate of orignin,etc,is required,the Seller may provide as requested for the Buyer's account.

(8)风险:
货物的风险在以下时候转移至买方:
a)海运时在其越过船舷,摘下挂钩时;
b)空运时在其移交空运承运人或代理人保管时;
c)铁路运输时在其交铁路保管时.

Risk of loss:
The risk of the commodity shall transfer to the buyer:
a)when it has passed over the rail of the vessel and been released from tackle in case of shipment by se
b)when it has been delivered into the custody of the air carrier or agent in case of shipment by air.
c)when it has been delivered into the custody of the railway.

WEIHAI TEXTILE GROUP
IMPORT & EXPORT CO.,LTD

PRESIDENT

(9) 品质/
数量异议:
如买方提出异议,凡属品质异议应于货到目的口岸之日起20天内提出,凡属数量异议应于货到目的口岸之日起15天内提出,过期不受理。对所发货物所提任何异议属于保险公司、轮船公司、其它有关运输机构或邮递机构所负责者,卖方不负任何责任。理赔只限于卖方在收到买方所在地产销良好的商检机构或商会出具的商品抽样检查报告,证明货物与合同不符后,对品质不符的货物按一比一更换或按照货物的疵劣程度和损坏的范围将货物贬值,对数量不符的货物给予补足。无论哪种情况下,买方均不对货物的可销性或适用性负责,也不对任何损失赔偿负责包括但又不限于直接的、间接的、附带的损失,如买方不能在合同规定的期限内将信用证开到或将预付款汇到,或者开来的信用证不符合合同规定,而在接到卖方通知后,不能按期办妥改证,卖方有权撤销合同或延期交货,并有权提出索赔。

2 -3 300118ERUP07Y

28

**Objection to quality and quantity**

Quality/Quantity Discrepancy: In case of quality discrepancy, claims shall be filed by the Buyer within 20 days after the arrival of the commodity at the port of destination, while for quantity discrepancy, claims shall be filed by the Buyer within 15 days after the arrival of the commodity at the port of destination. Otherwise no claim will be accepted. It is understood that the Seller shall not be liable for any discrepancy of the commodity shipped due to causes for which the insurance company, other transportation organization or post office are liable. The settlement of such claims is restricted to replacement of the non-conforming commodity on a one-to-one basis or devaluation of the commodity according to degree of inferiority and extent of damage in case of quality discrepancy or supply for the shortage in case of quantity discrepancy, after the Seller has received an inspection report on the commodity by sampling issued by a reputable inspection organization or chamber of commerce at the place where the Buyer is located, certifying the non-conformity thereof. In no event shall the Seller be held liable for the merchantability or fitness for any purpose, nor shall it have any liability or reponsibility for damages of any kind whatsoever, including but not limited to any direct, indirect or collateral damages. In case the L/C or the advance payment does not reach the Seller within the time stipulated in the Contract or does not correspond to the Contract terms and the Buyer fails to amend its terms within the time limit after being notified by the Seller, the Seller has the right to cancel the Contract or to delay the delivery of the commodity as well as to lodge claims against the Buyer.

(10)不可抗力： 本合同内所述全部或部分货物，如因不可抗力的原因，以致不能履约或不得不延期交货，卖方不负责任。但需向买方提供证明。

**Force Majeure:**

The Seller shall not be held liable for failure or delay in delivery of the entire lot or a portion of the commodity under this Contract in consequence of any force majeure incidents.But the seller must be provide relevant proof to buyer.

(11)仲裁条款： 在执行本合同中所产生的或者与合同有关的一切争执，由双方协商解决。如果协商后仍不能解决时，得提请仲裁。仲裁在中国进行，由中国国际经济贸易仲裁委员会，根据委员会得仲裁程序暂行规则进行仲裁。仲裁决定为最终决定，买卖双方都应服从。除仲裁委员会另有决定外，仲裁费用由败诉一方负担。本合同或与本合同相关的法律纠纷适用中华人民共和国法律，本合同条款以中文文本为准。

**Independent Arbitration Clause:**

Any or all disputes arising from or in connection with the performance of the Contract shall be settled through negotiation by both parties, failing which they shall be submitted for arbitration.The arbitration shall tack place in China and shall be conducted by the China.International Economic and Trade Arbitration Commission in accordance with the provisional rules of procedures of the sadi commission. The arbitration award shall be final and binding upon both Buyer and Seller. Unless otherwise awarded by the said arbitration commission, the arbitration fees shall be borne by the losing party. The Contract and all disputes concerning the contract shall be governed by laws of the People's Republic of China. And Contract in Chinese shall prevail.

(12)其他条款： 买方未付款时，货权仍然属于卖方所有。

Other Conditions: Before Buyer arrange the payment,the commodity still belong to Seller.

CONTRACTUAL TERMS AGREED BY BOTH SELLER & BUYER (PLEASE SIGN &E-MAIL TO

elain. vang@dishang. com

买方(BUYER PLEASE SIGN):

卖方(SELLER):





110

3 -3 300118ERUP07Y