Bradley T. Cave, P.C. (Wyo. State Bar # 5-2792)
HOLLAND & HART LLP
2515 Warren Avenue, Suite 450
P.O. Box 1347
Cheyenne, WY 82001
Telephone: 307.778.4200
bcave@hollandhart.com

Yan Ge (admitted *pro hac vice*)
Michael Amberg (admitted *pro hac vice*)
Wenfeng Su (admitted *pro hac vice*)
KING & WOOD MALLESONS LLP
535 Middlefield Road, Suite 245
Menlo Park, CA 94025
Telephone: (650) 858-1285
geyan@us.kwm.com
michael.amberg@us.kwm.com
wenfeng.su@us.kwm.com

Bing Cheng (admitted *pro hac vice*)
KING & WOOD MALLESONS LLP
500 5th Ave #50
New York, NY 10036
Telephone: +86 (10) 5878-5187
chengbing@cn.kwm.com

COUNSEL FOR PETITIONER
WEIHAI TEXTILE GROUP IMPORT & EXPORT CO. LTD.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WEIHAI TEXTILE GROUP IMPORT & EXPORT CO., LTD., | ) <br> ) <br> ) |
| *Petitioner*, | ) <br> ) |
| v. | ) <br> ) Case No. 2:21-mc-00147-SWS <br> ) |
| ERUPTION HOLDINGS, INC., | ) <br> ) <br> ) |
| *Respondent*. | ) |

**PETITIONER WEIHAI TEXTILE GROUP IMPORT & EXPORT CO., LTD.'S MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY REGARDING RELATIONSHIP BETWEEN PETITIONER AND RESPONDENT ERUPTION HOLDINGS, INC.**

Petitioner Weihai Textile Group Import & Export Co., LTD. ("Weihai"), by and through undersigned counsel, respectfully move the Court for entry of an order granting Petitioner leave to conduct discovery limited to the issue of whether Respondent Eruption Holdings, Inc. ("Eruption") had entered into a legal relationship with Weihai, and staying further proceedings on Eruption's *Motion to Set Aside or Refuse Arbitral Award* ("Motion to Set Aside"), including the deadline for Petitioner's response, pending the limited-scope discovery. Weihai requests the Court to extend its deadline to file an opposition to the Motion to Set Aside to 28 days following conclusion of discovery. In the event the Court denies the request for limited-scope discovery, Weihai requests the Court to extend its deadline to file an opposition to the Motion to Set Aside for 14 days from when this motion is resolved. **Counsel for Weihai has conferred with Eruption's counsel regarding the relief requested in this motion, and has been notified that Eruption opposes this motion.**

In support of this motion, Weihai advises the Court as follows[1]:

**RELEVANT FACTS**

In mid-2018, Francis Liang ("Liang") was introduced to Weihai by Yun (York) Liu ("Liu"). Liu was a personal acquaintance of Tao (Elain) Yang ("Yang"), an employee of Weihai. Before returning to China, Liu once worked in the U.S. At one point, he and Liang worked for the same company. Subsequently, Liu left the U.S. for China and Liang left their former employer to work for Eruption. At all times during his dealings with Weihai, Liang held himself out as the person responsible for Eruption's business operations. Liu Dec. Ex. 1.

---

[1] Attached as Exhibit A to Weihai's motion is the Declaration of Ying Liu ("Liu Dec."), sworn to on September 8, 2021.

On August 1, 2018, Liang (francis@eruptioninc.com) emailed contract# ERP180801 to Liu. Liu Dec. Ex. 1. Yang revised the agreement, then Liang signed the revised version ("Contract 01Y") and emailed it back to Liu. Liu Dec. Ex. 1. In the same email, Liang attached an authorization letter appointing Liu as Eruption's "representative responsible for all business cooperation in China," and authorizing Liu "to negotiate and execute all cooperation on behalf of [Eruption]." Liu Dec. Ex. 1. The letter was printed on Eruption's letter head and signed by Liang. Liu Dec. Ex. 1.

Because Eruption was introduced to Weihai by Liu and Weihai never had a chance to visit Eruption in the U.S. to verify it as a client, Weihai requested Eruption to complete a payment test to (1) verify Eruption's identity and bank account and (2) help Weihai identify Eruption's account to avoid making mistakes in receiving and accepting future payments. Specifically, Weihai requested Eruption to wire a small amount ($300) to Weihai, to which Liang gladly agreed and arranged for the payment to made.

Subsequently, from October 10 to December 1, Eruption placed six more purchase orders with Weihai (the "Sales Contracts"). *Petition to Confirm An International Arbitral Award,* Dkt. 1 ("Petition"), Ex. 3 at Exs. 1-6. The Sales Contracts were labeled 300118ERUP02Y to 300118ERUP07Y. It is Eruption's failure to make payments under these contracts that led to the CIETAC arbitration and ultimately the instant recognition proceeding.

On November 9, 2018, Yang sent Liang two contracts for knitted products and asked for "the original identifications of [Liang] and York issued by John Legge ("Legge") from Eruption." Liu Dec. Ex. 2.

On November 30, 2018, Yang emailed Liang to acknowledge receipt of certain documents by UPS and once again pressed Liang for the signed authorization form from Legge to Liang and

Liu. Liu Dec. Ex. 3. In the same email, Yang indicated that the payment under Contract 01Y is still outstanding. Liu Dec. Ex. 3.

On December 1, 2018, Liang replied to Yang's email, stating that "John was scheduled to come to LA office next Wednesday. Will take care of the authorization letter by then." Liu Dec. Ex. 3.

On December 13, 2018, Liang emailed the request authorization letter to Yang. Liu Dec. Ex. 4. The letter was dated December 12, 2018 and was printed on Eruption's letter head. Liu Dec. Ex. 4. It provides:

> I John Legge, hereby give authorization to Mr. Francis Liang, to act on my behalf, representing Eruption Holdings, Inc., in dealing of Apparel Business with China. This Authorization letter also authorizes Feimann Group, Inc., a California registered corporation to act as the handling agent for Eruption Holdings, Inc. in regard to all logistics, warehousing and payment matters.

Liu Dec. Ex. 4. The letter was signed by Legge as the president of Eruption. Liu Dec. Ex. 4.

On the same day, Liang sent Yang the bank slip of a wire payment made under Contract 01Y. Liu Dec. Ex. 5. Right away, Yang noticed that the payment was being wired from the account of Feimann Group, not Eruption. Liu Dec. Ex. 5. Yang informed Liang of this issue and stated that since the payment was not coming from a party to the sales contract, it makes things difficult on his end. Liu Dec. Ex. 5. Yang demanded that future payments be made from Eruption's account as "basic trade rule." Liu Dec. Ex. 5.

On December 21, 2018, Yang requested Liang to have Legge send the authorization letter from his email address, and to send the original signed authorization letter to Yang by express mail. Liu Dec. Ex. 6. On December 25, Liang mailed the signed original to Yang by UPS and provided the tracking number to Yang. Liu Dec. Ex. 7.

3

On December 27, 2018, Yang emailed Liang to acknowledge receipt of the payments under Contract 01Y from Feimann Group. Liu Dec. Ex. 8. Yang informed Liang that this suspicious payment arrangement has been brought to the attention of Weihai's finance department and its insurance company. Liu Dec. Ex. 8. Yang further explained that minimizing risks is a top priority for international trade, and as a result, Weihai is requiring future payments for the Sales Contracts be wired from Eruption, not another company. Liu Dec. Ex. 8. Yang copied Legge on this email. Liu Dec. Ex. 8. Legge's email address is john@eruptioninc.com.

The next day, Liang confirmed to Yang that he had "discussed with John already," and that they "will make the payment thru Eruption bank account for any outstanding balance in the future." Liu Dec. Ex. 9. Liang copied Legge on this email. Liu Dec. Ex. 9.

On May 10, 2019, Brown and Joseph, LLC. ("B&J") reached out to Legge, at the same email address that was copied on Yang's December 27, 2018 email, to collect the $577,237.10 that Eruption owed Weihai under the Sales Contracts. Liu Dec. Ex. 11. B&J was retained by China Export & Credit Insurance Corporation ("Sinosure") on behalf Weihai. Liu Dec. Ex. 11. Legge replied on May 14, claiming that "Francis Liang is not authorized or a part of Eruption Holdings Inc." Liu Dec. Ex. 11. When questioned about the $300 wire transfer payment test, Legge claimed that he was "told by Francis Liang if [Legge] can please help him by sending this money to his factory," and that he had "no knowledge until now of any line of credit being opened under eruption's name is complete fraught." Liu Dec. Ex. 12.

On June 1, 2019, Weihai received $10,000 from Feimann Group. This was the only payment that Weihai has received under the Sales Contracts. Petition, Ex. 1 at 15.

Yang and her supervisor, Ning Cong, sent three emails to Legge on November 17, 2020, March 24, 2021, and April 15, 2021 respectively, urging Legge to settle the outstanding payments under the Sales Contracts. Liu Dec. Ex. 10.

On April 17, 2020, after two years of pressing Eruption for payment to no avail, Weihai initiated a CIETAC arbitration proceeding pursuant to the Independent Arbitration Clause in the Sales Contracts to seek payment on the goods sold. Petition, Ex. 1 at 4. The address of Eruption provided in the application for arbitration is 1603 Capitol Ave., Suite 314-957 Cheyenne, WY 82001, US, which is the same as that provided in the Sales Contracts.

On May 6, 2020, CIETAC sent by express mail the arbitration notice, arbitration rules, and list of arbitrators to the parties at their respective addresses provided in the application for arbitration. *Id.* This package was delivered on July 14, 2020. *Id.*

On September 24, 2020, CIETAC sent a notice of formation of the Arbitral Tribunal, the arbitrator's declaration, and a notice of hearing to the parties by express mail service. This package was delivered on September 30, 2020. *Id.*

On November 30, CIETAC mailed Weihai's post hearing submission to Eruption along with a letter summarizing the hearing at which Eruption failed to appear. This package was delivered on December 7, 2020. *Id.* at 5.

On January 15,2021, the tribunal issued the arbitral award (the "Award"). The Award ordered Eruption to pay Weihai $566,937.10 which is the total amount outstanding under the Sales Contracts plus interests, among other things. *Id.* at 20.

On January 15, CIETAC mailed the Award to Eruption. This mail was delivered on January 22, 2021. Petition, Ex. 2 at 5.

## PROCEDURAL HISTORY

On June 15, 2021, Weihai filed its Petition to Confirm an International Arbitral Award under the Federal Arbitration Act to confirm the Award. Petition, Dkt. 1. On August 6, 2021, Eruption filed the Motion to Set Aside," a brief in support of the motion, and a 104-page affidavit with exhibits by its co-founder and Vice-President, Legge. Dkt. 11, 12. On August 19, 2021, Weihai requested for the first time an extension to oppose the Motion to Set Aside. Dkt. 15. The court granted Weihai's request the next day and ordered Weihai to file its opposition by September 10, 2021. Dkt. 16.

## DISCUSSION AND LEGAL AUTHORITY

Where the discovery sought is relevant and necessary to the determination of an issue raised by an application to confirm in a post-arbitration judicial proceeding, a district court may award further discovery. *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 261 (D.D.C. 2013) (refusing to grant limited discovery when the discovery sought "appear to either duplicate or substantially overlap with discovery requests already addressed by the arbitral Tribunal"). "The district court is empowered to act in arbitration confirmation proceedings with respect to discovery." *Empresa Constructora Contex Limitada v. Iseki, Inc.*, 106 F.Supp.2d 1020, 1024 (C.D.Cal. 2000) (citation omitted).

> In judging discovery requests in this context of an arbitration award confirmation proceeding, the court must weigh the asserted need for hitherto undisclosed information and assess the impact of granting such discovery on the arbitral process. The inquiry is an entirely practical one, and is necessarily keyed to the specific issues raised by the party challenging the award and the degree to which those issues implicated factual questions that cannot be reliably resolved without some further disclosure.

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004) (citations omitted) (refusing to grant discovery in action to recognize a foreign

arbitral award under the New York Convention because respondent failed to show that the discovery it sought would have created disputed fact issues material to determining whether it received a fundamentally fair hearing in the arbitration).

Weihai seeks discovery to resolve precisely the type of factual questions that "cannot be reliably resolved without some further disclosure." *See id.* Weihai requests leave to conduct limited discovery to obtain documents from Eruption and take the deposition of Legge to respond to a fact-intensive threshold issue raised by Eruption—whether Eruption is a party to the Sales Contracts signed by Francis Liang.[2] Discovery is needed because Weihai has no access to any records of communications between Eruption and Liang, or any document that may shed any light on their relationship, except for the authorization letters that Eruption has claimed to be forged. Moreover, this issue was not arbitrated in the CIETAC arbitration.

Yet, the extent of the relationship between Eruption and Liang is critical on the merits: 9 U.S.C. § 202 and the New York Convention would not apply to the Petition unless there was a legal relationship between Weihai and Eruption. Therefore, Weihai would be unfairly prejudiced if it must respond to Eruption's version of the facts without the benefit of a limited-scope discovery when issues with contract formation should have been raised and arbitrated in the CIETAC arbitration.[3]

---

[2] Eruption's other grounds for denying recognition consist of a procedural argument and a policy argument. Procedurally, contradicting the arbitral tribunal's express statement in the Award that at least four separate notices or mailings were sent to Eruption and that their delivery had been verified, Eruption claims none of them has been delivered. Motion to Set Aside, Dkt. 12 Ex. A ¶¶ 55-58. Eruption further claims that as a matter of public policy, it should not be held responsible where there has been a fraud at some point in the chain of events which ultimately led to the issuance of the arbitral award against Eruption. Id., Dkt. 12 at 22.

[3] "When the requested discovery relates to allegations of fraud . . . a district court should only entertain a movant's request if the alleged fraud was not discoverable during the arbitration itself." *ARMA, S.R.O.*, 961 F. Supp. 2d at 261. Here, case requested discovery is indeed related to allegations of fraud, but because Eruption never appeared in the arbitration, the alleged fraud was therefore not discoverable during the arbitration.

Weihai seeks discovery to address disputed fact issues material to determining whether Eruption was a party to the Sales Contracts. Based on facts presented in the Award, the materials submitted by Eruption, and emails that Weihai retrieved from its email server, Weihai has identified at least four specific issues that warrant further investigation and clarification. First, on August 29, 2018, Legge wired $300 to Weihai through the account of Eruption. Motion to Set Aside, Dkt. 12 Ex. A ¶¶ 33, 34. Legge alleges that he did so at the request of Liang to "assist Feimann with its manufacturer relationships." *Id*. It is difficult to understand the reasoning here, especially when given the international trade context. Weihai would like to review records of any communications between Legge and Liang leading up to or relating to the wiring of the $300 to Weihai.

Next, while Eruption and Legge allege that Liang "was never considered as an authorized agent, an employee, an affiliate or a shareholder of Eruption," Liang had an email address (francis@eruptioninc.com) with Eruption's email domain. Motion to Set Aside, Dkt. 12, Ex. A ¶ 50, Ex. 5. And Liang had been using this email address to communicate with Weihai. Weihai finds it incomprehensible that a non-employee and non-agent would have been assigned a company email address. Accordingly, Weihai would like to conduct discovery to find out how Liang managed to acquire his @eruptioninc.com email address.

Third, Legge did not first learn about Eruption's business with Weihai from B&J as he alleged. Legge was informed of the Sales Contracts and Eruptions outstanding payments under them by December 27, 2018 at the latest, when he was copied on Yang's email to Liang in which Yang demanded Liang to confirm that the payments for the Sales Contracts will be paid from Eruption's account. Liu Dec. Ex. 8. Liang replied the next day, assuring Yang that he had "discussed with John already," and that they "will make the payment thru Eruption bank account

for any outstanding balance in the future." Liu Dec. Ex. 9. Legge was copied on Liang's reply as well. Liu Dec. Ex. 9. Weihai needs to conduct discovery to determine whether this discussion indeed took place, what was discussed Liang, if Legge not only knew about but had authorized the business with Weihai all along.

Last but not least, Legge had constructive possession of the allegedly forged authorization letters. According to Legge, he first "discovered" the December 12, 2018 authorization letter after receiving the correspondence from B&J and before responding. Motion to Set Aside, Dkt. 12 Ex. A ¶ 42. Later, Legge "came across" the July 25 authorization letter "[i]n reviewing additional files. *Id.*, Ex. A ¶ 50. Based Legge's affidavit, it appears that he was able to uncover these documents on his own, although he did not explain the exact steps he took which led to the discovery of the letters. Weihai would like to conduct discovery on this issue.

## **CONCLUSION**

For the foregoing reasons, Weihai requests that the Court issue an Order granting Petitioner leave to conduct discovery limited to the issue of whether a legal relationship existed between Weihai and Eruption, and staying further proceedings on the Motion to Set Aside, including the deadline for Weihai's response, pending the limited-scope discovery. In the event the Court denies the request for limited-scope discovery, Weihai requests the Court to extend the briefing time to oppose the Motion to Set Aside for 14 days from when this motion is resolved.

Dated September 8, 2021.

        By: */s/ Bradley T. Cave*
        Bradley T. Cave

        Bradley T. Cave, P.C. (Wyo. State Bar # 5-2792)
        HOLLAND & HART LLP
        2515 Warren Avenue, Suite 450
        P.O. Box 1347
        Cheyenne, WY 82001
        Telephone: 307.778.4200
        bcave@hollandhart.com

        Yan Ge (admitted *pro hac vice*)
        Michael Amberg (admitted *pro hac vice*)
        Wenfeng Su (admitted *pro hac vice*)
        KING & WOOD MALLESONS LLP
        535 Middlefield Road, Suite 245
        Menlo Park, CA 94025
        Telephone: (650) 858-1285
        geyan@us.kwm.com
        michael.amberg@us.kwm.com
        wenfeng.su@us.kwm.com

        Bing Cheng (admitted *pro hac vice*)
        KING & WOOD MALLESONS LLP
        500 5th Ave #50
        New York, NY 10036
        Telephone: +86 (10) 5878-5187
        chengbing@cn.kwm.com

        COUNSEL FOR PETITIONER
        WEIHAI TEXTILE GROUP
        IMPORT & EXPORT CO. LTD.