Ryan L. Ford, WSB# 7-4667, rford@wpdn.net
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
PO Box 10700
Casper, WY 82602
(307) 265-0700

*Attorney for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WEIHAI TEXTILE GROUP IMPORT & EXPORT CO., LTD., ) ) ) | |
| *Petitioner,* ) | Case No.: 2:21-MC-00147-SWS |
| ) | |
| v. ) | |
| ) | |
| ERUPTION HOLDINGS, INC., ) | |
| ) | |
| *Respondent.* ) | |

## RESPONSE IN OPPOSITION TO
## MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY

Eruption Holdings, Inc. (hereinafter referred to as "Eruption"), by and through undersigned counsel, hereby submits its RESPONSE IN OPPOSITION TO MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY, opposing Petitioner's Doc. No. 17 (hereinafter referred to as the "Motion"), as follows:

### SUMMARY OF THE MATTER

Couched as an innocent request "to conduct discovery limited to the issue of whether [Eruption] had entered into a legal relationship with Weihai," the Motion is nothing more than a bold attempt to bootstrap an extension for a looming deadline - a cutoff date which it has now had ample time to address. By the allegations and exhibits presented with the Motion, Petitioner clearly had constructive and actual knowledge of Eruption's contentions as early as December of

2018 – nearly two years prior to the arbitration. This type of fishing expedition and bootstrapping does not pass judicial muster.

## ANALYSIS OF PERTINENT FACTS

Despite proving the presence of the third-party fraud by clear and convincing evidence, Petitioner now seeks the (not so) "limited" discovery of (i) deposing Mr. Legge to respond to a "fact-intensive" issue (ii) investigating the wire transfer of $300 to Weihai, (iii) investigating the alleged relationship between Eruption and Mr. Liang, (iv) reviewing all communications and interactions between Mr. Legge and Mr. Liang, if any and (v) determining if Mr. Legge had constructive possession of the allegedly forged authorization letters. Herein, Eruption addresses and dispenses each of Petitioner's four areas of concern.

### I.     *Provision of the Liang e-mail address and the wire transfer.*

First and foremost, Eruption did provide Mr. Liang with an e-mail address. Mr. Legge had intended for this gesture to assist with communications regarding Eruption's order with the Feimann Group in March of 2018. Nothing more. Was this a wise move? In hindsight, absolutely not. However, the simple provision of an e-mail address does not coincide with implied or express authority. Petitioner has already acknowledged this pertinent fact.   **Exhibit A**, Legge Affidavit, ¶ 1-4.

Within the Motion, it is clear Petitioner did not simply rely on the Liang e-mail address or correspondence. Rather, Petitioner first hung its hat upon the relationship between its employee and Mr. York (believed to be Mr. Liang's accomplice). Later, it relied upon the forged authorization letter – Eruption had no part in either of those dealings.

Like the e-mail address, the wire transfer of $300 to Petitioner should not be overly scrutinized. Mr. Liang made the request. Mr. Liang also provided the funds. As previously stated,

the request seemed innocent enough at the time. After that time, Eruption had no dealings with Feimann Group or Mr. Liang. Doc. 12, pg. 5.

Eruption's order (entirely unrelated and prior to this matter) with Feimann Group, the wire transfer, and the e-mail address constitute the entirety of the relationship between Eruption and Mr. Liang. No other relationship exists. Exhibit A, Legge Affidavit, ¶ 5-6. Despite these interactions, the fact remains Mr. Liang was never an authorized agent, an employee, an affiliate or a shareholder of Eruption. Doc. 12, pg. 6. This is not unfathomable to believe and the reasonableness of that understanding resonates in the Motion.

Petitioner realized Mr. Liang may not have been an authorized representative. This led to numerous requests that Mr. Liang's and Mr. York's original identifications and authorizations be provided by Eruption (and even from Mr. Legge's e-mail). See Doc. 17-1, pgs. 18, 21 and 30 (with dates ranging from November 9 through December 21, 2018). As early as August of 2018, Petitioner requested an authorization letter from Mr. Liang, prior to the execution of the contracts. Doc. 17-1, pg. 11. Petitioner acted without receipt of the requested information – Eruption should not now be punished or overly scrutinized for Weihai's reliance on its scheming relationships.

## II.      *Eruption did not have constructive notice of the pending fraud.*

Petitioner attempts to claim Eruption should have been aware of the fraud based upon the December 28, 2018, e-mail. At best, this is conclusory.

Mr. Legge's e-mail address does not appear in the record until December 28, 2018. Unfortunately, Mr. Legge did not afford it any attention. **Exhibit A**, Legge Affidavit, ¶ 7-8. It is not unreasonable to believe an e-mail with Chinese writing may have been disregarded in a United States inbox. This is especially true when Eruption had no dealings or contracts in China.

Interestingly, there are no messages before the December 2018 correspondence. The next e-mails with Mr. Legge appear in November of 2020 (after the arbitration had commenced) and early 2021 (after the conclusion of the arbitration). Doc. 17-1, pgs. 40 and 41. These messages are also subsequent to Eruption's correspondence with Brown and Joseph (in 2019). It is incredulous to believe that one single e-mail chain in late 2018 would raise Eruption's suspicions.

Eruption was never a party to an agreement with Petitioner. The first time Eruption came to realize an issue was brewing was upon contact from Brown & Joseph. Doc. 12, pg. 5. Also see **Exhibit A**, Legge Affidavit, ¶ 9, the mailing envelope delivered to Mr. Legge's personal residence.

Moreover, the December 28, 2018, e-mail correspondence was provided only after the fraudulent contracts were in place and Petitioner had already begun shipping goods (which have never been received by Eruption). At the very least, it is disingenuous for Petitioner to claim Eruption had constructive notice based upon one e-mail message, when Petitioner encountered numerous red flags from the beginning. Even if these realizations do not amount to knowledge of the fraud (by either party), Eruption's response to the Brown and Joseph request certainly gave Petitioner constructive and actual knowledge of the willful and wanton acts at least 1.5 years prior to the arbitration. The weight of the evidence swings strongly in favor of Eruption.

### III.    *Eruption has not reviewed "new" materials.*

Petitioner finally claims Mr. Legge has obtained new or additional information regarding this matter. These allegations are misplaced. The purported additional files were those items previously provided in the Brown and Joseph mailing in mid-2019. No other "new" documents have been received. In 2019, Eruption reviewed the materials provided by Brown and Joseph. Doc. 12, pg. 5. In 2021, Eruption again reviewed those materials to respond to Petitioner's confirmation request. With the context of the litigation shedding a different light on the matter,

certain materials resonated differently with Eruption than they had in 2019. This is certainly understandable. **Exhibit A**, Legge Affidavit, ¶ 10-15.

Having promptly, truthfully and completely responded to the 2019 request, Eruption felt the matter was fully resolved after his response to Brown and Joseph and no further correspondence was received. *Id.*, ¶ 16.

If additional information is needed by Petitioner, it should start by collecting the information gathered by its agents (both send and received documents) in their investigation of this matter. Once completed, it will be apparent Eruption's story has remained steadfast since 2019. It is time for this matter to be concluded.

Eruption maintains its stance that, aside from the Brown and Joseph mailing (which was sent to and received at Mr. Legge's home address prior to the arbitration), no other mailings have been received in this matter. Despite the arbitrator's assertions, the only provided tracking number suggests the mailing remains in China. Moreover, despite the arbitration, Petitioner's e-mails to Eruption in 2021 do not address or identify the arbitration proceedings. Procedurally, Eruption had no notice.

In short, all of Eruption's cards are on the table. There is nothing to gain from additional discovery. As previously and repeatedly asserted, Eruption has never conducted business in China, was actually prohibited from utilizing foreign products, and has never authorized such actions. Most, if not all, of these matters have been addressed in Eruption's prior pleadings. Petitioner's request, and remiss delays, should be denied.

### GOVERNING LAW

Confirmation action under the New York convention "is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of

the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007).

## LEGAL ARGUMENT

### I.   *The fraud was known prior to (and during) the Arbitration.*

Petitioner litters the Motion with allegations it already knew were in play, negating its demand for discovery. In *ARMA, S.R.O. v. BAE Sys. Overseas*, 961 F. Supp. 2d 245 (D.D.C. 2013), the court noted, "when the requested discovery relates to allegations of fraud…[the] court should only entertain a movant's request if the alleged fraud was not discoverable during the arbitration itself." *Id.* at 261.

There is sufficient evidence Petitioner was aware of Mr. Liang's fraudulent conduct before and during the arbitration process. Mr. Liang's behavior was riddled with irregularities which should have (and did) put Petitioner on notice of fraud. These include, but are not limited to, the type of merchandise ordered, the visible lack of any acknowledgement or affirmation by Mr. Legge of correspondence (despite Petitioner's requests that he do so), questionable financial transactions in violation of Petitioner's own trade and finance procedures, and other irregularities which Mr. Legge was not aware of, but which are readily apparent by a sophisticated international trading entity such as Weihai.

This was all discoverable leading up to the arbitration. At the very least, Petitioner discovered these facts when Brown & Joseph reached out to Eruption to investigate the alleged transactions. Mr. Legge was prompt and forthcoming about the facts and the fraud. Eruption's story was the same in 2019 as it is today. Eruption's response (stating the authorization of Mr. Liang was forged, no authorization was given and no purchase orders were issued in China – see

Doc. 17-1, pgs. 48-49) was more than enough to put Petitioner on notice at least one and one-half years prior to and during the arbitration process. Additional discovery should not be awarded.

## II.    Weihai's "Need" Is not enough to Compel Further Discovery

On one hand, Petitioner claims its request is limited and designed to decide the matter on its merits. On the other, Petitioner's anticipated discovery is entirely aimed at identifying and resolving complex factual determinations. This flies in the face of *Zeiler* and should not be permitted.

While a "district court may award further discovery in a post-arbitration vacatur proceeding," it may only do so "where such discovery is 'relevant and necessary to the determination of an issue raised by such an application.'" *ARMA,* 961 F. Supp. 2d 245 at 261 (citing *Frere v. Orthofix, Inc.*, 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000).

Weihai also cites *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305 (5th Cir. 2004) for the proposition that courts "weigh the need for hitherto undisclosed information" noting the impact on the arbitration process. Absent from Petitioner's argument for additional discovery is the differential treatment courts use when assessing need in a post-arbitration proceeding. The opinion in *Frere* clarifies:

> [I]n view of the narrowness of the grounds on which an arbitral award may be challenged, the need for discovery is typically not nearly as acute as in other civil lawsuits. Necessarily, then, **the liberality that normally attends discovery in civil litigation is not appropriate in this context**.

*Frere v. Orthofix, Inc.*, 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000) (internal citations omitted) (emphasis added).

Petitioner has not demonstrated the requested discovery is "relevant and necessary" to the issues raised in Eruption's motion (Doc. 12). Even having not conducted prerequisite discovery, the need for discovery in these cases, in light of *Frere*, is far more stringent than in other civil

lawsuits. It should follow that Petitioner must demonstrate something more than what is required in other suits, and the court should take into account the diminished level of discovery in cases such as this, far below the liberal standard attending normal discovery in civil suits.

The rationale behind these holdings is logical. The relief afforded under the convention is very limited. When no legal relationship exists or fraud is present (particularly in the context of third-party fraud versus fraud between the actual parties), why drag an innocent party through discovery? Why continue to burden Eruption after it has demonstrated the lack of a relationship and fraud by clear and convincing evidence issued from an independent expert? Under the convention and the governing case law, such a needless task can be avoided. As such, Petitioner's motion should be denied. It can cite no specific need, other than alleged minute factual disputes, based on the un-contradicted evidence presented by Eruption.

### III.     *Weihai's Request is Rarely Awarded and Unprecedented for a Party Seeking to Enforce an Arbitration*

As noted by Petitioner, *it is more common for district courts to deny discovery* than it is to award discovery. In both *ARMA* and *Karaha Bodas*, discovery was denied. District courts within the Tenth Circuit have likewise shown a reluctance to award additional discovery in post-arbitration proceedings. See, for example, *Amicorp v. Gen. Steel Domestic Sales, LLC*, 2007 WL 2890089 (D. Colo. 2007), *Cricket Comm'ns, Inc. v. All You Can Talk Partners, Inc.*, 2011 WL 4597487 (D. Utah 2011), and *Thomason v. Citigroup Glob. Mkts.*, 2006 WL 149046 (D. Utah 2006) (all denying a party's request for leave to conduct discovery).

Conspicuously absent from the case law are situations in which the party seeking extended discovery is the one seeking to *confirm* the award. It is almost always the party seeking to set aside or vacate an arbitration award that seeks further discovery. When a party seeks to confirm, it

stands to reason they have conducted the requisite discovery to bring relevant and necessary issues to light prior to the confirmation. Such is not the case here.

At best, Petitioner missed numerous opportunities to discover the fraudulent conduct of Mr. Liang. At worst, it was willfully blind. Petitioner's inactivity, in the face of actual and constructive knowledge, should not be rewarded by extending time (both in discovery and in response to Eruption's motion for denial). Eruption has met its burden to prove fraudulent conduct on the part of a third party, which has irreparably tainted the arbitration process. As Petitioner cannot bring any evidence to the contrary after the arbitration award, it cannot hit rewind and do so now.

## IV.     *Petitioner has failed to demonstrate good cause for an extension.*

Via its most recent request to the Court, Petitioner attempts to bootstrap an extension to its looming response deadline – a cutoff date which it has now had ample time to fulfill. Despite the previously provided extension (which was understandably and reasonably in excess of the extension generally granted under the local rules), Petitioner's Motion demonstrates it has done little to respond to Eruption, aside from scrutinizing points and details it has now known for years. Petitioner has failed to show good cause for the granting of any extension in this matter and the same should be summarily denied.

## CONCLUSION

The presented request is a slippery slope – if granted, Eruption will undoubtedly need to conduct its own independent and limited discovery to determine (i) the policies and procedures of Weihai in opening new accounts, (ii) the extent of the relationships between Liang, York and Weihai, (iii) the outcome of the investigation by Brown and Joseph, and (iv) whether Weihai has assigned its interest in this matter to Sinosure. At that point, the parties may as well be in actual

litigation versus a confirmation. Such an outcome undermines the intent and protections afforded under the convention.

The Motion should be identified for what it is - nothing more than bootstrapping for an extension to respond to Eruption's logical and compelling arguments. As the Petitioner, Weihai had ample opportunity (approximately 2.5 years) to create its case prior to seeking the Court's involvement. Undeniably, Petitioner had direct and indirect knowledge of the allegations asserted by Eruption in this matter – knowledge which extended well before the instigation of the arbitration proceedings. Despite that fact, Petitioner put its head in the sand and is now asking the Court to make Eruption bear the brunt and the expense of a fact-finding fiasco. Petitioner's motion and argument must not be permitted.

Wherefore, Eruption respectfully requests the Court deny Petitioner's request, and award Eruption its fees and costs in responding to this request.

**RESPECTFULLY SUBMITTED this 10th day of September, 2021.**

ERUPTION HOLDINGS, INC.,
a Wyoming Corporation,

*Plaintiff.*

By: ____/s/ Ryan L. Ford_____
Ryan L. Ford, WSB# 7-4667
rford@wpdn.net
WILLIAMS, PORTER, DAY & NEVILLE, P.C.
PO Box 10700
Casper, WY 82602
(307) 265-0700
(307) 266-2306 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF System, sending notification of such filing to the following:

**Bradley T Cave**
HOLLAND & HART
bcave@hollandhart.com


**Yan Ge** (*pro hac vice*)
**Michael Amberg** (*pro hac vice*)
**Wenfeng Su** (*pro hac vice*)
KING & WOOD MALLESONS
geyan@us.kwm.com
michael.amberg@us.kwm.com
wenfeng.su@us.kwm.com


**Bing Cheng** (*pro hac vice*)
KING & WOOD MALLESONS
chengbing@cn.kwm.com


*By:*   /s/ Ryan L. Ford
Ryan L. Ford, WSB# 7-4667