

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| WEIHAI TEXTILE GROUP IMPORT & EXPORT CO., LTD., <br><br> Petitioner, <br><br> v. <br><br> ERUPTION HOLDINGS, INC., <br><br> Respondent. | Case No. 21-MC-147-SWS |

## ORDER GRANTING PETITIONER'S MOTION TO CONDUCT LIMITED DISCOVERY

Petitioner Weihai Textile Group is a Chinese company that imports and exports clothing and textiles. Respondent Eruption Holdings is a Wyoming corporation, formed in February 2016 and administratively dissolved in April 2019, that sold men's t-shirts to U.S. military members and veterans. Weihai says it entered into a total seven sales contracts with Eruption over a period of several months in late 2018 to supply Eruption with over half a million dollars' worth of various garments. Weihai asserts Eruption paid the first sales contract but very little after that. Weihai took the matter before a trade arbitration commission in China pursuant to an arbitration clause in each of the sales contracts. The arbitration commission awarded Weihai over $566,000 on the six unpaid sales contracts after Eruption failed to appear for the arbitration.

Weihai filed the instant action in U.S. federal court to request an order confirming the international arbitral award in order to enforce it against Eruption. (Doc. 1.)

Meanwhile, Eruption contends the arbitral award should be set aside or refused, arguing it never entered into the sales contracts which were the result of fraudulent conduct by a third party, it never had proper notice of the arbitration proceeding, and equity and public policy demand the arbitral award be set aside or refused. (Docs. 11, 12.) Immediately before the Court is Weihai's motion to conduct limited discovery concerning Eruption's defenses (Docs. 17, 20), and Eruption's resistance to any discovery (Doc. 19).

## BACKGROUND

Eruption was formed in 2016 by Mr. John Legge and his wife, Gwen, with the purpose of providing patriotic men's t-shirts to U.S. military and veterans. (Doc. 12-1 p. 2.) In 2017, Eruption desired to produce t-shirts with reflective ink. (*Id.* p. 3.) In late 2017, Mr. Legge was introduced to Mr. Francis Liang and his wife, Annie, who were operators of the Feimann Group, who could fulfill the reflective ink requirement. (*Id.* pp. 3-4.) In early 2018, Eruption purchased a relatively small order of t-shirts with reflective ink from Feimann Group at a cost of about $3,400, which was Eruption's only purchase from Feimann Group. (*Id.* p. 4.) Eruption was non-operational after August 2018. (*Id.* pp. 4-5.)

That was not the end of Eruption's interaction with Francis Liang and the Feimann Group, though. Eruption alleges Francis Liang contacted Mr. Legge in late August 2018 for a supposed favor.

> Eruption was asked by Mr. Liang to assist Feimann with its manufacturer relationships by wiring $300.00 to Weihai[.] Mr. Liang explained that he and/or Feimann would wire $350.00 to Eruption (with the extra $50.00 being provided to cover wiring expenses). Once Eruption received the wire, it was to wire the amount of $300.00 to Weihai.

(*Id.* p. 5.) Eruption complied because "[t]he request seemed innocent enough" and Mr. Legge wanted to help "a perceived partner in need[.]" (*Id.*) Eruption says it had no further dealings with Francis Liang or the Feimann Group. (*Id.*)

Francis Liang, supposedly working on behalf of Eruption, proceeded to enter into a total of seven sales contracts with Weihai for the purchase of a large number of garments, with the first contract dated August 1, 2018, the next three dated October 12, 2018, the next two dated November 11, 2018, and the last dated December 11, 2018. (Doc. 1 pp. 26-27.) Between the $300.00 that was wired by Eruption and later payments from the Feimann Group allegedly acting on Eruption's behalf, the first contract was paid in full. (*Id.*) Weihai shipped the garments to Los Angeles, as designated by Francis Liang/Feimann Group. (*Id.* pp. 27-28.) The remaining balance of over $566,000 was never paid by either Francis Liang/Feimann Group or Eruption. Pursuant to an arbitration clause in the sales contracts, Weihai pursued the unpaid balance in arbitration and received the foreign arbitral award at issue in this case.

Eruption sets forth three reasons enforcement of the arbitral award should be set aside or refused. First, it contends it was not a party to the sales contracts because Francis Liang/Feimann Group fraudulently entered into the sales contracts on Eruption's behalf without ever having the authority to do so. Second, Eruption says it never received notice of the arbitration proceeding in China and that it would have defended itself in that forum if it knew about the proceeding. And third, Eruption argues equity, justice, and public policy demand the arbitral award be refused so that Eruption is not wrongfully held to

answer for Francis Liang's fraud.

In response, Weihai asks to conduct discovery on the subject of "whether Eruption is a party to the Sales Contracts signed by Francis Liang." (Doc. 17 p. 8.) In opposing Weihai's request to engage in discovery, Eruption asserts it "has met its burden to prove fraudulent conduct on the part of a third party, which has irreparably tainted the arbitration process." (Doc. 19 p. 9.)

## STANDARD FOR ENFORCING OR REFUSING ARBITRAL AWARDS

Weihai seeks to enforce the Chinese arbitral award under the 1958 U.N. Convention on the Recognition and Enforcement of Arbitral Awards, also known as the "New York Convention." (Doc. 1 p. 2.) "The New York Convention is a multilateral treaty that addresses international arbitration." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020). It "only applies to 'the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought' and to 'arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.'" *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 70 (2d Cir. 2017) (quoting New York Convention, art. I(1)). As relevant here, "the New York Convention applies to arbitral awards 'made' in a foreign country that a party seeks to enforce in the United States (known as foreign arbitral awards)[.]" *Id.* Chapter Two of the Federal Arbitration Act (FAA) incorporates the provisions of the New York Convention into United States domestic law. *See* 9 U.S.C. §§ 201–208. Both China, where

Weihai is based, and the United States, where Eruption is based, are signatories to the New York Convention.

The Court first notes it does not have the authority to "set aside" the arbitral award, as requested by Eruption. The arbitral award at issue here was made in China pursuant to the sales contracts which made China the forum nation for arbitration. Therefore, only China holds "primary jurisdiction" over the arbitral award under which the award can be set aside or modified. *CBF Industria de Gusa S/A*, 850 F.3d at 71. In contrast, this Court sits in "secondary jurisdiction" to the foreign arbitral award, "in which parties can only contest whether [the United States] should enforce the arbitral award." *Id.* (quoting *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 115 n.1 (2d Cir. 2007)). Thus, as a secondary jurisdiction, this Court's authority under the New York Convention (and FAA) is limited to deciding whether the foreign arbitral award should be recognized and enforced (i.e., confirmed) in the United States or refused.

In considering whether to confirm or refuse an arbitral award, "the standard of review of arbitral awards is among the narrowest known to law." *Brown v. Coleman Co.*, 220 F.3d 1180, 1182 (10th Cir. 2000) (quoting *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995)). That is, the Court must afford "'maximum deference' to the arbitrators' decisions." *CEEG (Shanghai) Solar Sci. & Tech. Co., Ltd v. LUMOS LLC*, 829 F.3d 1201, 1206 (10th Cir. 2016) (citing *ARW Exploration*, 45 F.3d at 1462); *see also Brown*, 220 F.3d at 1182 ("we must give extreme deference to the determination of the arbitration panel"). Indeed, the Court is "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on

misinterpretation of the contract," *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987), and "[a]n arbitrator's erroneous interpretations or applications of law are not reversible," *ARW Exploration*, 45 F.3d at 1463. "A court may not, therefore, independently judge an arbitration award." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001). Federal courts "employ this limited standard of review and exercise caution in setting aside arbitration awards because one purpose behind arbitration agreements is to avoid the expense and delay of court proceedings." *Id.* "By agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Brown*, 220 F.3d at 1182 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)). "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).

"Under the New York Convention, a court must 'confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *CEEG (Shanghai) Solar Sci.*, 829 F.3d at 1206 (quoting 9 U.S.C. § 207). The reasons for refusal set forth in the New York Convention include:

(1) Incapacity of a contracting party or a legally-invalid arbitration agreement;
(2) Improper or invalid notice to a party of the arbitration proceedings;
(3) The arbitral award exceeds the scope of those matters submitted for arbitration;
(4) The arbitration procedure or the composition of the arbitral panel violated the parties' arbitration agreement or applicable law;

> (5) The arbitral award was previously set aside or suspended by a competent authority;
> (6) The subject matter of the parties' disagreement cannot be submitted to arbitration under the law of this country; or
> (7) Recognizing and enforcing the arbitral award would violate the public policy of this country.

New York Convention, 21 U.ST. 2157, art. V(1)-(2). Additionally, there exist limited non-statutory bases for refusing an arbitral award, including "where there was a manifest disregard of law, a violation of public policy or the denial of a fundamentally fair hearing." *PeopleSoft, Inc. v. Amherst, L.L.C.*, 369 F. Supp. 2d 1263, 1267–68 (D. Colo. 2005) (citing *Sheldon v. Vermonty,* 269 F.3d 1202, 1206 (10th Cir. 2001)). "Courts construe these defenses 'narrowly, to encourage the recognition and enforcement of commercial arbitration agreements in international contracts.'" *CEEG (Shanghai) Solar Sci.*, 829 F.3d at 1206 (quoting *Karaha Bodas Co. v. Perusahaan*, 364 F.3d 274, 288 (5th Cir. 2004)).

Finally, the party challenging the enforceability of an arbitral award, as Eruption does here, "has the burden of sustaining such an attack." *Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1147 (10th Cir. 1982). And that "burden is a heavy one, as 'the showing required to avoid summary confirmance is high,'" *Guang Dong Light Headgear Factory Co. v. ACI Int'l, Inc.*, 521 F. Supp. 2d 1153, 1166 (D. Kan. 2007) (quoting *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005)).

## **DISCOVERY IN AN ARBITRAL AWARD CONFIRMATION PROCEEDING**

Allowing the parties to conduct discovery is rare in a proceeding to confirm an arbitral award. "A confirmation action under the New York Convention 'is a summary proceeding in nature, which is not intended to involve complex factual determinations,

other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1287 (10th Cir. 2020) (quoting *Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007)), *cert. denied sub nom. Grupo Cementos de Chihuahua v. Compania de Inversiones*, No. 20-1033, 2021 WL 2519105 (U.S. June 21, 2021). Thus, the Court begins this analysis presuming post-award discovery is not warranted. Nonetheless, the decision rests within the Court's discretion. *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 898 (2d Cir. 1991). Discovery is appropriate in post-award proceedings "where relevant and necessary to the determination of an issue raised by such an application." *Frere v. Orthofix, Inc.*, No. 00-cv-01968 (RMB) (MHD), 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000). The Court should consider "the asserted need for hitherto undisclosed information and assess the impact of granting such discovery on the arbitral process." *Id.* at *5. "The inquiry is an entirely practical one, and is necessarily keyed to the specific issues raised by the party challenging the award and the degree to which those issues implicate factual questions that cannot be reliably resolved without some further disclosure." *Id.* (citing *Sanko Steamship Co. v. Cook Industries*, 495 F.2d 1260, 1263 (2d Cir. 1973)). On the other side of the equation is the "interest of ensuring that this enforcement proceeding remain 'summary' in nature[.]" *Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144, 157 (D.D.C. 2018).

## DISCUSSION

The Court finds some discovery is appropriate in this proceeding. Even after considering the exhibits filed by the parties and the affidavits of Mr. John Legge (owner of

Eruption), the Court is not nearly as convinced as Eruption that it has proven fraudulent conduct by Francis Liang, at least not at this time.

Eruption says Francis Liang never had authority to bind Eruption to the sales contracts. Yet Mr. Legge admits he provided Francis Liang an email address at Eruption's business domain (francis@eruptioninc.com) (Doc. 19-1 ¶ 2), which Francis Liang used to communicate with Weihai (e.g., Doc. 17-1 p. 18). From the outside, this appears to demonstrate Francis Liang was some sort of employee or representative of Eruption. Mr. Legge says he did this only "to assist with communications regarding Eruption's order with the Feimann Group in March of 2018. Nothing more." (Doc. 19-1 ¶ 3.) Absent more, this response is nonsensical, as there is nothing to suggest that providing an email address to an employee of a different company is normally done in the usual course of business. At best, this response raises at least as many questions as it answers.

Further, Mr. Legge was copied on at least two of the emails between Francis Liang and Weihai. (Doc. 17-1 pp. 35-37 (email from Elain Yang at Weihai to francis@eruptioninc.com copied to john@eruptioninc.com, and response email from francis@eruptioninc.com also copied to john@eruptioninc.com).) These emails, dated December 28, 2018, were in English and warned that while Weihai had accepted the partial payments from Feimann Group on Eruption's behalf, future payments needed to come directly from Eruption, and Francis Liang confirmed that future payments would be made "thru Eruption bank account." (*Id.*) Mr. Legge asserts, "Unfortunately, I did not afford this message any attention as neither I nor Eruption had dealings in China or with a China-based provider." (Doc. 19-1 ¶ 8.) Again, absent more, the Court finds this explanation

rather unconvincing, particularly considering that Mr. Legge was no newcomer to the business world, with past successful endeavors as a "pilot, diver, patent holder, inventor, software engineer, nanotech developer, and as CEO/CFO of numerous business ventures, including Eruption." (Doc. 12-1 p. 2.) For the same reason, the Court agrees with Weihai that it is hard to understand Mr. Legge's reasoning in relation to the $300.00 wired from Eruption to Weihai, allegedly as a favor to Francis Liang.

The Court also finds questions surround Eruption's claim that it never received notice of the Chinese arbitration proceeding. In the arbitral award, the arbitrator reported it sent an arbitration notice and a copy of the evidence submitted by Weihai to Eruption, and the arbitrator "confirmed that the said mail to the Respondent was delivered on July 14, 2020." (Doc. 1 p. 18.) The arbitral award also notes the arbitrator sent notice of the arbitration hearing to Eruption, and "[i]t has been confirmed that the said documents sent to the Respondent were delivered on September 30, 2020." (*Id.*) And finally, the arbitral award said a notice that the hearing had occurred and request for any objections or "justified cause for a subsequent hearing" was delivered to respondent on December 7, 2020. (*Id.* p. 19.) It appears the arbitrator relied on mail tracking through China Express and EMS for these findings. (*See* Doc. 1 pp. 65-66, 72.) In response, Eruption conducted mail tracking with China Post, the U.S. Postal Service, and EMS, which together appear to suggest the package(s) have not been delivered and have not yet left China. (*See* Doc. 12-1 pp. 103-04.) Under these apparent mail-tracking contradictions, the Court cannot readily say Eruption has carried its burden of sustaining its challenge to proper notice. At least for now, Eruption's improper notice claim does not protect it from Weihai's discovery request.

Finally, Eruption's plea to equity, justice, and public policy also does not warrant denying Weihai's discovery request. Based on the exhibits and affidavits filed by both parties, the Court cannot say at this time that Eruption is any more entitled to a decision in its favor based on equity, justice, and public policy than is Weihai. According to what Mr. Legge asserts, Weihai may be just as much a victim of any fraud by Francis Liang/Feimann Group as Eruption. At least at this time, Eruption's claim of equity does not nullify Weihai's request for discovery.

## CONCLUSION AND ORDER

Under the New York Convention and applicable caselaw, the Court starts from the position that an arbitral award is valid and should be confirmed and enforced. Absent some limited discovery here, it is unlikely the Court would find Eruption has carried its burden of proving the arbitral award should be refused and not enforced in the United States. Weihai's request for discovery on the following limited matters will be allowed:

(1) The $300.00 wire transfer from Eruption to Weihai, including any communications between Legge/Eruption and Liang/Feimann before and after the wire transfer relating to the wire transfer;

(2) Legge/Eruption's decision to provide Francis Liang with an eruptioninc.com email address, including any communications between Legge/Eruption and Liang/Feimann before and after the email address was provided to Liang relating to provision of the email address;

(3) Legge/Eruption's knowledge of the December 28, 2018 emails between francis@eruptioninc.com and Weihai on which john@eruptioninc.com was copied, including any communications between Legge/Eruption and Liang/Feimann before and after the December 28, 2018 emails relating to the emails and topics addressed within the emails (including any discussions between Legge and Liang about future payments coming from Eruption's bank account rather than through the Feimann Group); and

      (4)      Legge/Eruption's knowledge of and possession, constructive or otherwise, of two letters on Eruption letterhead (both of which were allegedly forged), the first of which was dated July 25, 2018, and allegedly assigned Francis Liang as Eruption's representative "in dealing of Apparel Business with China," and the second, dated December 12, 2018, which allegedly appointed Yun (York) Liu as Eruption's business representative in China.

Weihai may propound written interrogatories and requests for production on Eruption and/or take Mr. John Legge's deposition (and/or Mr. Francis Liang's deposition, if he can be found) to conduct its discovery on these four topics. Absent further order from the Court, Weihai may not conduct additional discovery outside the scope of these four topics.

In its opposition to Weihai's request for discovery, Eruption warns that it "will undoubtedly need to conduct its own independent and limited discovery" on certain topics if Weihai's discovery request is granted. (Doc. 19 p. 9.) If Eruption believes its own limited discovery is now warranted, it may file a motion requesting such.

**IT IS THEREFORE ORDERED** Petitioner's Weihai's Motion for Leave to Conduct Limited Discovery Regarding Relationship Between Petitioner and Respondent (Doc. 17) is **GRANTED**. Weihai may conduct limited discovery as set forth above.

**IT IS FURTHER ORDERED** that Weihai's limited discovery shall be completed **on or before December 17, 2021**. Weihai's response to Eruption's Motion to Set Aside or Refuse Arbitral Award shall be filed **on or before January 7, 2022**, with Eruption's reply due **no later than 14 days** after the response is filed.

DATED: September 29th, 2021.

                                                    Scott W. Skavdahl
                                                    United States District Court Judge